743 P.2d 459

STATE of Idaho, Plaintiff-Respondent,

v.

Eric Roy EDMONSON,
Defendant-Appellant,

and

Bill J. Blackmon, Defendant.

STATE of Idaho, Plaintiff-Respondent,

v.

Eric Roy EDMONSON,
Defendant-Appellant.

No. 16332.

Supreme Court of Idaho.

May 29, 1987.

Rehearing Denied Sept. 30, 1987.

Ned A. Cannon of Smith & Cannon, Lewiston, and John S. Ransom (argued), of Ransom, Blackman & Simson, Portland, Or., for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol.Gen. (argued), Boise, for plaintiff-respondent.

DONALDSON, Justice.

Eric Roy Edmonson was indicted by a grand jury in Latah County on the following charges: racketeering; grand theft; conspiracy to engage in racketeering; conspiracy to engage in grand theft; and the falsification of corporate books and records. Edmonson filed a barrage of motions raising a number of constitutional and procedural arguments alleging error in the grand jury indictment and requesting the indictment be set aside. After a hearing, the district court issued an opinion denying the motions. Permission to appeal by certification was granted.

On appeal Edmonson raises five specific arguments, as to why dismissal of the indictment is required. They are:

1. The prosecutor's use of the grand jury to indict was not based on any systematic set of criteria and therefore violates the Equal Protection Clause of the Idaho Constitution.

2. The prosecutor's use of hearsay evidence is contrary to I.C. § 19–1105 and I.C.R. 6(f).

3. The prosecutor's comments on the evidence infringed on the grand jury's ability to exercise its independent judgment and therefore violates the due process clause of the Idaho Constitution.

4. Contrary to statute, unauthorized personnel were present during the grand jury sessions.

5. I.C. § 18–1905 (the falsification of corporate book statute) is unconstitutional on its face.

We reject all of Edmonson's contentions and affirm the trial court's findings. We will discuss each argument separately and any additional facts as necessary.

I

**Equal Protection**

Edmonson contends that the use of a grand jury in this case deprived him of the equal protection of the laws in violation of art. 1, § 2 of the Idaho Constitution. Essentially, relying on several Oregon Supreme Court cases, he argues that the system used in Idaho allowing the prosecutor unfettered discretion to initiate criminal proceedings by indictment or information without regard to any systematic or coherent policy violates a defendant's right to equal protection. Here, two other co-defendants were charged by information rather than by indictment. Since the prosecutor did not have any systematic coherent policy to decide when to proceed by indictment or information, but rather arbitrarily made that decision, Edmonson contends that he was denied the same rights as his co-defendants, namely the right to a preliminary hearing.

■ Art. 1, § 8 of the Id. Const. provides:

"§ 8. **Prosecutions only by indictment or information.**—No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate, except in cases of impeachment, in cases cognizable by probate courts or by justices of the peace, and in cases arising in the militia when in actual service in time of war or public danger; provided, that a grand jury may be summoned upon the order of the district court in the manner provided by law, and provided further, that after a charge has been ignored by a grand jury, no person shall be held to answer, or for trial therefor, upon information of the public prosecutor."

Thus, the prosecutor can use either a grand jury proceeding or a preliminary hearing before an impartial magistrate to initiate criminal proceedings. However, the rights afforded the accused in these proceedings are different. A proceeding initiated by information entitles the accused the right to a preliminary hearing before an impartial magistrate to determine whether a crime has been committed and whether there is probable cause to believe that the accused committed it. Id. Const., art. 1, § 8; I.C. § 19–804; I.C.R. 5.1(b); *State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973). The accused has the right to assistance of counsel, (I.C. § 19–801); the right to produce evidence, (I.C. § 19–809), *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971); and the right to cross-examine adverse witnesses, (I.C. § 19–808). These procedures allow an accused to contest the prosecutor's evidence and the right to a finding of probable cause by an impartial and detached judicial officer.

■ In contrast, an indictment by a grand jury does not afford the accused a right to a preliminary hearing. *State v. Taylor*, 59 Idaho 724, 87 P.2d 454 (1939). Only the prosecutor and witnesses under examination may be present during the grand jury proceeding. I.C.R. 6(d). Further, the grand jury is not bound to hear evidence presented by the defendant; however, it is required to weigh all evidence submitted to it, and can require additional evidence when necessary. I.C.R. 6(g).

Edmonson relies on a series of Oregon cases starting with *State v. Clark*, 291 Or. 231, 630 P.2d 810 (1981), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 640, 70 L.Ed.2d 619 (1981), continuing with *State v. Edmonson*,

291 Or. 251, 630 P.2d 822 (1981), and *State v. Freeland*, 295 Or. 367, 667 P.2d 509 (1983), to support his argument that a prosecutor must afford all similarly situated defendants equal treatment of the laws. In *Clark* and *Edmonson*, the defendants were charged by indictment and not afforded a preliminary hearing. They did not request a preliminary hearing, but on appeal argued that a denial of a preliminary hearing violated their rights to equal protection of the laws because other potential defendants charged with the same crime could be charged by an information and allowed a preliminary hearing. The Oregon Supreme Court rejected this contention, noting that its constitution provides for alternative charging methods (information with a preliminary hearing or indictment without one) which are capable of valid administration. However, the court held that a choice between indictment and information must "rest on meaningful criteria that indeed make the privileges of a preliminary hearing equally available to all persons similarly situated...." *Edmonson, supra*, 630 P.2d at 823. In other words, the equal protection clause of the Oregon constitution prevents the prosecutor from arbitrarily chosing to proceed by indictment or information, but instead, requires the choice be made on a coherent, systematic basis. The court upheld the indictments because both *Clark* and *Edmonson* failed to show that other defendants in the same situation would be afforded a preliminary hearing.

In *Freeland*, the defendant was indicted by a grand jury and then requested a preliminary hearing. After it was denied, he filed a motion asking for a hearing in which to show that the denial of the preliminary hearing did not meet the *Clark* and *Edmonson* standards. At the hearing, the district attorney stated that the decision to proceed by indictment or information was left up to the individual trial deputy. The trial court then held that such an ad hoc procedure did not meet the constitutional requirements as set forth in *Clark* and *Edmonson*. The Oregon Supreme Court affirmed. The court framed the test as "whether a prosecutor's use of the two charging procedures adheres to sufficiently consistent standards to represent a coherent, systematic policy, even when not promulgated in the form of rules or guidelines." *Freeland, supra* 667 P.2d at 515.

In summary, the Oregon Constitution, like the Idaho Constitution, provides for alternative charging procedures, either by indictment or by information. If an information is used, the defendant has a right to a preliminary hearing. Like the Idaho Constitution, the Oregon Constitution does not, on its face, place any limitation on the prosecutor's choice to proceed by either alternative. In Oregon, however, the state Supreme Court has ruled that the state's equal protection clause does require the prosecutor to treat similarly situated defendants equally. This is best accomplished by a pre-established, "coherent, systematic policy" under which the prosecutor will be limited in the choice to proceed by indictment or information.

Edmonson urges us to adopt the reasoning of the Oregon Supreme Court. We refuse to do so.

■ We note that Edmonson did not request a preliminary hearing. He simply argued that the prosecutor must have a systematic set of criteria to base a decision on in order to proceed by indictment or information. As noted above, however, one substantive difference in the indictment and information procedures is the right to a preliminary hearing when an information is used. Edmonson's failure to request a preliminary hearing is dispositive of this case. However, based on the important constitutional issues at stake, we will address the arguments raised by Edmonson.

■ It is a well settled rule that an equal protection analysis comes into play when a statute—a legislative enactment—creates two classes of individuals who are treated differently. *See Stucki v. Loveland*, 94 Idaho 621, 495 P.2d 571 (1972). In this case, we have two constitutional provisions that need to be construed together, Art. 1, § 8 allows for alternative charging procedures which are of equal dignity. *In*

*re Winn,* 28 Idaho 461, 154 P. 497 (1916). Art. 1, § 2 guarantees equal rights, privileges and immunities to all persons within the state. *Fisher v. Masters,* 59 Idaho 366, 83 P.2d 212 (1938). The appellant argues that art. 1, § 2 is a limitation of art. 1, § 8. We disagree. When construing separate constitutional provisions, the general principles of statutory construction apply. *Lewis v. Woodall,* 72 Idaho 16, 236 P.2d 91 (1951). Statutes must be construed, if at all possible, consistently and harmoniously. *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984). Either of the two alternative charging procedures can be used, but will be subject to an equal protection analysis.

Edmonson will have us require that a prosecutor establish charging criteria to insure that similarly situated defendants are treated equally. He argues, that in this case, because he was charged by indictment whereas several other co-defendants were charged by information, he was arbitrarily and systematically excluded from the right to a preliminary hearing.

First we note that the United States Supreme Court has held that a state's refusal to afford a criminal defendant a preliminary hearing does not violate the fourteenth amendment through the fifth amendment. *Lem Woon v. Oregon,* 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed.2d 1340 (1913). In a slightly different context (whether a person arrested and held for trial is entitled to a judicial determination of probable cause for detention), the Supreme Court also has held the fourth amendment did not apply. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). As the Court stated in *Gerstein:*

"The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime 64–109 (1969). This is not to say that the confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause." *Id.* at 121–122, 95 S.Ct. at 867 (footnotes omitted).

Even an informal procedure in which an accused is not given the right to contest the state's evidence, or even put on his own evidence is not per se constitutionally infirm. *See Lem Woon, supra; Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). The primary purpose of a grand jury proceeding is to also determine probable cause. *State v. Beck,* 56 Wash.2d 474, 349 P.2d 387 (1960), *aff'd. Beck v. Washington, supra.*

We are fully cognizant that Edmonson urges us to require prosecutors to adopt policies guaranteeing equal protection for all similarly situated criminal defendants. In essence, cloaked under an equal protection challenge, we are asked to place a limit on prosecutorial discretion. This, the Oregon Supreme Court has done, but in this context we cannot do.

The grand jury is an accusing body and not a trial court. Its functions are investigative and charging. The purpose of both a grand jury proceeding and a preliminary hearing is to determine probable cause. Any advantage that a preliminary hearing affords a defendant is purely incidental to that purpose. The independent grand jury's function would be duplicated by requiring a subsequent preliminary hearing.

Professors LaFave and Israel have discussed prosecutorial discretion and noted many valid reasons why a prosecutor may choose to proceed by either alternative:

"As a general rule, prosecutors in information jurisdictions make infrequent use

of their authority to avoid preliminary examinations by utilizing the indictment alternative. The tradition in most information jurisdictions is to prosecute by information in all but a very small group of cases that require the grand jury's investigative authority. Prosecutors in several information states do make more frequent use of the grand jury, but even in those jurisdictions most prosecutors use the information in over 90% of their felony cases. In most information states, when a prosecutor uses the indictment process his basic objective is not to avoid the preliminary hearing, but to utilize some other feature of the indictment process. The mooting of the preliminary hearing is simply an incidental byproduct of an unrelated objective that required pre-arrest indictment.

"But prosecutors in other information jurisdictions have been known to use the indictment alternative in certain cases mainly because they want to avoid the preliminary hearing. Grounds typically advanced for avoiding the hearing in those cases, notwithstanding the prosecutor's usual preference for prosecution by information, include: (1) the desire to save time where the preliminary hearing would be protracted due to the number of exhibits or witnesses or the number of separate hearings that would have to be held for separate defendants (the grand jury could save time in such situations due to the absence of cross-examination, less stringent application of evidentiary rules, and its capacity to consider a series of related cases in a single presentation); (2) the desire to preclude the defense discovery inherent in a preliminary hearing, particularly where a key witness is an informer whose identity should be shielded until trial; and (3) the desire to limit the number of times that a particular complainant (*e.g.*, a victim of a sex offense) will be required to give testimony in public." 2 LaFave and Israel, *Criminal Procedures* § 14.2 (1984).

There are a number of other factors which may influence the prosecutor's choice of indictment or information. Uncertainty of the law, credibility of witnesses, the winds of public opinion, the nature of the offense, publicity surrounding the crime and the resources of investigation are just some of these factors. We accept the above reasoning as persuasive and hold that a prosecutor may proceed by either alternative—indictment or information.

However, this holding is not as broad as it seems. Edmonson contends that, as to him, the law was applied unequally. For Edmonson to prevail on this point, he must show a deliberate and intentional plan of discrimination against him, based on some unjustifiable or arbitrary classification. *State v. Bowman*, 104 Idaho 39, 655 P.2d 933 (1982). Selective discrimination is difficult to prove.

"Selective enforcement, without more, does not comprise a constitutional violation under either the Idaho or United States Constitutions. [Citations omitted.] The United States Supreme Court and Idaho Supreme Court are in perfect accord in their requirement that, in order to establish an instance of discriminatory application of the law such that equal protection standards have been violated, there must first be shown a deliberate plan of discrimination based on some unjustifiable classification such as race, sex, religion, etc." *Henson v. Department of Law Enforcement*, 107 Idaho 19, 23, 684 P.2d 996, 1000 (1984).

Edmonson has not shown, nor even contended discriminatory intent by the prosecutor in respect to the charging selection. The prosecutor did choose to allow similarly situated defendants a preliminary hearing, but without more evidence of a deliberate and intentional plan to discriminate, we cannot conclude that the equal protection clause was violated.

In a similar context, a prosecutor has some discretion in deciding when to charge an accused. As LaFave and Israel points out, "[t]he notion that the prosecuting attorney is vested with a broad range of discretion in deciding when to prosecute and when not to is firmly entrenched in American law." 2 LaFave and Israel, *Criminal Procedures* § 13.2 (1984). The prosecutor's exercise of discretion as to

whom and when to prosecute does not constitute unlawful discrimination. *State v. Bowman, supra; State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980). There is a distinction between the permissible "conscious exercise of some selectivity in enforcement" and an impermissible selection "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). We do not see any constitutional distinction between deciding whom to charge and how to charge. The immense number and variety of factual situations involved preclude a constitutional requirement forcing the prosecutor to adopt policies that predetermine the use of an indictment or an information.

## II

### Presentment of Hearsay Evidence to the Grand Jury

Edmonson, relying on I.C. § 19–1105 and I.C.R. 6(f), argues that the indictment should be dismissed because hearsay evidence was presented to the grand jury. I.C. § 19–1105 provides in part:

"The grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence, ..."

Similarly, I.C.R.6(f) places like restrictions upon the nature and quality of evidence the grand jury can receive. The trial court found that hearsay evidence had been presented to the grand jury but that "exclusive of the hearsay there was adequate evidence to support the grand jury's determination that there was probable cause to believe an offense had been committed and the accused committed it." Edmonson

does not challenge this finding. Thus, the issue that we face today is whether the grand jury's receipt of hearsay evidence demands a dismissal of an indictment even where the probable cause finding is based on otherwise legally sufficient evidence.[1]

Several states have rules similar to Idaho, thereby excluding hearsay evidence before a grand jury. *See* for example, *Giacomazzi v. State,* 633 P.2d 218 (Alaska 1981); *State v. Miyazaki,* 64 Hawaii 611, 645 P.2d 1340 (1982); *State v. Terrell,* 283 N.W.2d 529 (Minn.1979); *People v. Backus,* 23 Cal.3d 360, 152 Cal.Rptr. 710, 590 P.2d 837 (1979); and *Franklin v. State,* 89 Nev. 382, 513 P.2d 1252 (1973). However, the presentation of hearsay evidence is not necessarily a fatal error. The indictment will be sustained if, after excluding the inadmissible evidence, there remains sufficient admissible evidence to indict. *Giacomazzi, supra; Miyazaki, supra; Terrell, supra; Franklin, supra. See also, People v. Meegan,* 60 A.D.2d 961, 401 N.Y.S.2d 602 (1978), *People v. Skelton,* 109 Cal.App.3d 691, 167 Cal.Rptr. 636 (1980), *cert. denied, Curtin v. U.S.,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981); and *State v. Waste Management of Wisconsin, Inc.,* 81 Wis.2d 555, 261 N.W.2d 147 (1978), *cert. denied,* 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 175 (1978).

The rationale used by these courts is readily apparent. The purpose of a grand jury proceeding is to determine whether sufficient probable cause exists to bind the defendant over for trial. The determination of guilt or innocence is saved for a later day. As long as the grand jury has received legally sufficient evidence which in and of itself supports a finding of

---

1. We note that the United States Constitution, through the fifth amendment, does not require a dismissal of an indictment based exclusively on hearsay evidence. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The Court in *Costello* was concerned about judicial expediency:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that

before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Id.,* 350 U.S. at 363, 76 S.Ct. at 408.

In Idaho, anytime hearsay evidence is used before a grand jury, the mini-trial concern of *Costello* becomes a reality. Despite the rule we announce today, prosecutors should endeavor to preclude any hearsay evidence from grand jury proceedings.

probable cause it is not for an appellate court to set aside the indictment. Therefore, we reject Edmonson's argument and hold that where legally sufficient evidence will sustain an indictment, improperly admitted hearsay evidence will not overturn the indictment.

## III

### Outrageous Conduct of the Prosecutor

· Edmonson argues that the prosecutor's conduct before the grand jury was so "outrageous" that dismissal of the indictment is required. Apparently, Edmonson takes exception to the prosecutor's comments regarding the credibility of witnesses and the weight and sufficiency of the evidence. Further, he alleges that the prosecutor argued the case fervently before the grand jury.

▆▆▆ The trial court acknowledged that the prosecutor commented on the sufficiency of the evidence and on the credibility of the witnesses, but "the prosecutor's conduct did not infringe on the grand jury's decision-making function." Thus, we must decide whether the prosecutor's misconduct crossed the line from acceptable to unacceptable. Generally, prosecutorial misconduct will require dismissal only when it reaches the level of a constitutional due process violation. *Maldonado v. State*, 93 N.M. 670, 604 P.2d 363 (1979); *State v. Hall*, 235 N.W.2d 702 (Iowa 1975), appeal after remand, 249 N.W.2d 843 (Iowa 1977), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). In order to be entitled to dismissal of an indictment on due process grounds, the defendant must affirmatively show prejudice caused by the misconduct. *State v. Kruse*, 100 Idaho 877, 606 P.2d 981 (1980); *Hall, supra*. We note that dismissal is a drastic remedy and should be exercised only in extreme and outrageous situations, and therefore, the defendant has a heavy burden.

In the sense of a grand jury proceeding, "prejudicial effect" means the defendant would not have been indicted but for the misconduct. *Hall, supra; People v. Jackson*, 64 Ill.App.3d 307, 21 Ill.Dec. 238, 381 N.E.2d 316 (1978). To determine whether misconduct gives rise to a dismissal, a reviewing court will have to balance the gravity and the seriousness of this misconduct with the sufficiency of the evidence supporting the probable cause finding. At one extreme, the misconduct can be so outrageous that regardless of the extent of probable cause evidence, dismissal will be required. At the other extreme, the misconduct may be so slight, that it becomes unnecessary to question the independent judgment of the grand jury. In the middle of these extremes, the court must examine the totality of the circumstances to determine whether the indictment should be dismissed. As stated above, the burden rests with the criminal defendant to make an initial showing that the misconduct rises to the level of prejudice. Absent the showing of prejudice, a reviewing court will not second guess the grand jury. However, once the defendant does affirmatively prove prejudice, the court must dismiss.

▆▆▆ A review of the alleged misconduct leads us to conclude that the prosecutor's actions and comments, though inappropriate is so insignificant that we do not need to inquire into the strength of the probable cause evidence. Edmonson argues that the prosecutor's statements regarding the evidence are misconduct. Some of these statements are:

"So, you're going to treat or you're going to view a person who is in a position of responsibility, a supervisor, a director, a department head, significantly different (than an hourly employee)."

"What he's doing, he is stealing the money himself ... Once again, this is a situation where he stole from a corporation in the State of Idaho and caused an effect in the State of Idaho."

"Not a lot of events happened prior to mid-January of 1983, and a lot of these events, while in and of themselves are not illegal, they are, when taken as a whole, significant. Particularly in light of your instructions on conspiracy. Okay? No we have to start with the point of departure that there was a desire on the part of Mr. Blackmon and a

desire on the part of Mr. Edmonson as early as July of 1982, to seat a progressive board of directors. You have to start with that article of faith in order for this to work, I think."

"So, Mr. Edmonson is at least down in Oklahoma City with some money in his pocket buying some money orders and then either sending or bringing those money orders back to Moscow for submission for memberships."

"You have Mr. Scott's transcript. Judge for yourself his credibility and his veracity as far as that event is concerned."

"If in fact Eric was putting the touch on all of the department heads to generate money to satisfy what I'm going to call *his scheme*, then why didn't he bring in Mister Milk toast."

"He conspired with Eric to commit racketeering and that's exactly what they did with that club. They went around the country committing crimes in a variety of states, spreading their activity throughout each voting region with the exception of territory two and they took control of that club. And they did it ... they did it by using the funds of the club itself."

We do not disagree with Edmonson that some of these statements are impermissible. The American Bar Association standards provide that the prosecutor, in his appearances before the grand jury, "should not make statements or efforts to influence grand jury action in a manner which would be impermissible at trial before a petit jury." 1 A.B.A. Standards for Criminal Justice, § 3–3.5 (Second Ed.1980). However, simply because some of these comments are impermissible, does not automatically require dismissal. Keeping in mind the standard of prejudicial effect, we note that impermissible statements can only rise to this level when they are designed to appeal to juror prejudice or prod a reluctant jury into voting for indictment. *See State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975); *State v. Good,* 10 Ariz. 556, 460 P.2d 662 (1969). Grand jurors realize that the case is being presented precisely because the prosecutor believes the grand jury should indict. They realize that the prosecutor will make statements on the evidence.

The comments alleged to be prejudicial were directed to the grand jury over a period of several days. In our perception, the prosecutor, by the use of these statements, was attempting to explain the law to the jurors. The prosecutor is expected to act as the grand jury's legal advisor, and as such, may appropriately explain the law and express an opinion on the legal significance of the evidence but should give due deference to [the grand jury's] status as an independent legal body." *People v. Meyers,* 617 P.2d 808, 812 (Colo.1980), *quoting* ABA Standards Relating to the Prosecution Function § 3–3.5(a) (1979). While we deem the prosecutor's intent laudable, he overstepped the bounds of permissible conduct. However, we cannot conclude that these statements acted to prejudice the grand jury in any way or infringed upon their independent thought process.

Further, without even considering the evidence used to find probable cause, we note that the prosecutor directed the grand jury that it should not indict unless all the elements of an alleged crime are proven beyond a reasonable doubt. This is a much higher standard than is required by Idaho law. On balance, we conclude that no prejudicial conduct occurred.

## IV

### Unauthorized Persons

I.C. § 19–1111 and I.C.R.6(d) provide that no person other than the grand jurors may be present during deliberations and voting, while only the jurors, prosecutor, witnesses under examination, and an interpreter, if necessary, may be present during any other portion of the proceedings. These sections break down the grand jury proceedings into two parts, deliberative sessions—sessions where the grand jurors are expressing opinions or voting—and nondeliberative sessions—sessions where the evidence is being presented.

Edmonson seeks dismissal of the indictments because admittedly, during some nondeliberative sessions two individuals not

authorized by the statute and rule were present—a deputy clerk of the district court and an attorney with the Idaho Department of Law Enforcement. Edmonson argues that I.C. § 19–1111 and I.C.R.6(d) were violated, and therefore, the indictment must be dismissed.

The purpose of I.C. § 19–1111 and I.C.R.6(d) is quite clear. It is designed to guard the secrecy of the grand jury proceedings and assure that the jurors are free from undue influence and intimidation thereby allowing them to make an independent determination of probable cause. Accordingly, the presence of any unauthorized person which impedes these important functions will require dismissal. However, if an unauthorized person is present, but the grand jury proceedings are free from undue influence, an indictment must be sustained.

Recently the United States Supreme Court case addressed a violation of F.R.C. P.6(d) (the federal counterpart to I.C.R.6(d)) and held that any violation of the rule which is harmless will not require dismissal of the indictment. In *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), two government witnesses were simultaneously present and testified before the grand jury. This error was not discovered until the actual trial proceedings at which the defendants were convicted. After conviction, the defendants argued that the indictment should be set aside because of the error in the original grand jury proceeding. The United States Supreme Court disagreed, holding that any error from the violation of Rule 6(d) was corrected in the subsequent jury conviction. The Court held that the jury's verdict of guilt beyond a reasonable doubt demonstrated that there was probable cause to charge the defendants with the offenses for which they were convicted. The Court stated:

> "We hold only that however diligent the defendants may have been in seeking to discover the basis for the claim violation of rule 6(d), the petit jury's verdict rendered harmless any conceivable error in

the charging decision that might have flowed from the violation. In such a case, the societal costs at retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." *Id.*, 475 U.S. at 72–73, 106 S.Ct. at 943.

Thus, under the federal rule, the presence of an unauthorized person will not render an indictment invalid, if there is sufficient evidence to support a probable cause finding by the grand jury acting independently and free from undue influence. In Idaho, the rule is similar. The presence of unauthorized personnel does not constitute grounds for attacking the validity of an indictment, absent a showing of prejudice. *State v. Barber*, 13 Idaho 65, 88 P. 418 (1907); *Gasper v. District Court*, 74 Idaho 388, 264 P.2d 679 (1953). We must inquire whether these two individuals were unauthorized, and if so, whether their presence amounted to prejudice Edmonson.

Edmonson contends that the presence in and of itself of both the deputy clerk and the attorney constitutes grounds for dismissing the indictments. He argues that their presence removes from the grand jury the ability to operate in the neutral and detached atmosphere that is required; the subtle influence of the presence of court and state personnel would necessarily affect the ability of the grand jury to calmly and dispassionately consider the case. Here, the deputy clerk was needed to operate the electronic recording equipment, to mark and keep track of exhibits and to perform other administrative and clerical functions. Edmonson has not alleged with any specificity how the court clerk prejudiced the independence and secrecy of the grand jury proceedings. Nor, can we foresee any situation in which the presence of a person marking exhibits would be grounds for overturning a probable cause finding made by the grand jury. Thus, we conclude that the deputy clerk's mere presence will not necessitate dismissal.[2]

2. As here, most grand jury proceedings need to be recorded to preserve a record for a reviewing

■ The attorney with the Department of Law Enforcement was present to assist the Latah County prosecutor in the proceedings before the grand jury. The state, contends, relying on *State v. Taylor,* 59 Idaho 724, 87 P.2d 454 (1939) that his presence was justified. In *Taylor,* the indicted defendant challenged the presence of a deputy attorney general during the course of grand jury proceedings. The Court first examined several statutes which authorized the attorney general to exercise supervisory powers over prosecuting attorneys. Relying on these statutes, the Court held that the attorney general's presence before a grand jury would not invalidate an indictment. *Id., supra* at 731–32, 87 P.2d 454. The attorney general is an extension of the prosecutor, and in effect, an authorized person within the meaning of I.C. § 19–1111 and I.C.R.6(d). Therefore, the presence of the state attorney general will not require a dismissal of the indictment.

## V

### Constitutionality of I.C. § 18–1905

Edmonson was indicted on the crime of falsification of corporate books in violation of I.C. § 18–1905. The punishment provision of this statute provides:

"is punishable by imprisonment in the state prison not less than three (3) nor more than ten (10) years, or by imprisonment in a county jail not exceeding one (1) year or a fine not exceeding $500, or by both such fine and imprisonment."

I.C. § 18–111 distinguishes a felony from a misdemeanor.

"A felony is a crime which is punishable with death or by imprisonment in the state prison.... Every other crime [except infractions] is a misdemeanor. When a crime punishable by imprisonment in the state prison is also punishable by a fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

Edmonson contends that I.C. § 18–1905 violates the fourteenth amendment to the United States Constitution for two reasons. First, the statute does not delineate between the type of conduct punishable as a felony or a misdemeanor. Second, the statute gives the prosecutor unfettered discretion to charge either a misdemeanor or a felony. In support of his contentions, he relies on two Oregon Supreme Court cases. In *State v. Pirkey,* 203 Or. 697, 281 P.2d 698 (1955), the court struck down as violative of the fourteenth amendment an Oregon statute which gave the grand jury or the magistrate unlimited discretion to charge either a felony or a misdemeanor for certain bad check violations. In *State v. Cory,* 204 Or. 235, 282 P.2d 1054 (1955), the same court held unconstitutional an Oregon statute which granted to the district attorney unfettered discretion to determine whether or not to file an habitual offender charge against one who had theretofore been convicted of a felony not involving personal violence, whereas under another subsection of the same statute, he was required to file habitual offender information against a defendant previously convicted in cases of crimes involving violence. Edmonson's argument is misplaced.

I.C. § 18–1905, unlike the statutes declared unconstitutional in *Pirkey* and *Cory* does not grant the prosecuting attorney or a grand jury unbriddled discretion to charge Edmonson either with a felony or with a misdemeanor. In both *Pirkey* and *Cory,* the applicable statute clearly endowed the grand jury, magistrate or the district attorney with such charging discretion. I.C. § 18–1905 is silent on the issue of whether this provision is a charging decision or a sentencing decision. However, I.C. § 18–1905 must be read in conjunction with I.C. § 18–107 which empowers a court to determine punishment:

court to pass upon any alleged defects in the proceedings (for example hearsay evidence). A deputy court clerk or court reporter operating recording equipment is essential to satisfy this function. Obviously, in such cases, a deputy court clerk or a court reporter must be considered an authorized person.

"Whenever, in this code, the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case, must be determined by the court authorized to pass sentence within such limits as may be prescribed by this code."

The legislature in enacting I.C. § 18–1905 gave the sentencing court a sentencing range. A sentencing court has discretion to impose any sentence within the statutory maximum and minimum so long as it is reasonable. *State v. Snapp*, 110 Idaho 269, 715 P.2d 939 (1986); *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982).

 Edmonson's attack on I.C. § 18–1905 is without merit because it allows for *sentencing* discretion and not *charging* discretion. We do not imply that should the facts indicate a statute allows for a charging discretion, we would follow the reasoning of the Oregon Supreme Court.[3] That question, should it arise, is better left for a later day.

## VI

### Conclusion

We have considered all of Edmonson's challenges, both constitutional and statutory, to the grand jury indictment. While errors occurred in the proceedings, none rise to a level which would require dismissal. Therefore, we affirm the district court and remand back for trial.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, C.J., and BAKES, J., concur.

HUNTLEY, Justice, concurring specially and dissenting in part.

I concur in the result reached by the majority and dissent only from the equal protection analysis of Part I of the majority opinion.

With respect to the equal protection issue, I agree with the California Supreme

Court in its incisive analysis in *Hawkins v. Superior Court*, 22 Cal.3d 584, 150 Cal. Rptr. 435, 586 P.2d 916, which opinion is reproduced in full in the dissent herein of Justice Bistline.

I further believe the trial judge, Judge Bengtson, was correct when he wrote:

Had the defendant in the case at bar sought, following the return of the indictment and before or at the time of the entry of his plea, an order granting him a postindictment preliminary hearing (as the defendants did in both *Hawkins* and *Freeland*) and had the State been unable to demonstrate a coherent, systematic policy relating to the selection of the indictment process for the prosecution of the above entitled cases and refused to conduct a preliminary hearing upon defendant's motion or application, it is likely that the indictments in these cases would have been dismissed by this Court.

BISTLINE, Justice, dissenting.

The majority opinion correctly reprints art. 1, § 8 of our Idaho Constitution. It reads now as it did when ratified in 1889. *A fortiori*, it reads now as it did in 1947, 1948, about which time Justice Donaldson and myself were studying criminal procedure at the College of Law in Moscow. The majority is also to be commended for correctly assessing the prosecutor's conduct as impermissible. There is little else in the majority opinion which will be of much benefit in the future and, to the contrary, will be detrimental.

Chapter 8, Title 19 of the Idaho Code, captioned "Examination of Case and Discharge or Commitment of Accused," provides now, as has been so since 1864, for a probable cause hearing. Under I.C. § 19–814, the magistrate must dismiss where he finds no public offense committed, or not sufficient cause to believe the defendant guilty of a public offense.

On the other hand, I.C. § 19–815 provides:

---

3. *Pirkey, supra*, and *Cory, supra*, were both overruled in *City of Klamath Falls v. Winters*, 289

Or. 757, 619 P.2d 217 (1980).

**19–815. Holding defendant to answer.**—If, after hearing the evidence adduced at the preliminary examination, the magistrate finds that a public offense has been committed, and that there is probable or sufficient cause to believe the defendant guilty thereof, the magistrate shall enter an order holding the defendant to answer to said public offense, which order shall be substantially as follows: "It appearing to me that the offense set forth in the complaint (or any offense, according to the evidence presented at the preliminary examination, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A.B. guilty thereof, I order that he be held to answer the same."

The 1864 Territorial Criminal Practice Act, § 160, read almost identically:

**Sec. 160.** If, however, it appears from the examination that a public offence has been committed, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate shall, in like manner, endorse on the depositions and statement an order signed by him to the following effect: "It appearing to me, by the within depositions and statement (if any), that the offence therein mentioned, (or any other offence according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A.B. guilty thereof, I order that he be held to answer the same."

In law school, what we were not told was that in territorial days, *all* prosecutions after commitment were by grand jury indictment. There was *no* alternative provision for prosecution upon a prosecutor's information. Sections 173 through 216 provided the procedure for impaneling a grand jury, and for a committed defendant to mount any challenge, either to the grand jury as a whole, or to any individual juror. The defendants, in jail or out on bail, were aware that a grand jury would convene, and would consider the case of each. In fact, the function of the grand jury was primarily to consider indictments of ac-

cused defendants who were either in jail or out on bail. Only if the grand jury returned an indictment would those defendants be put on trial. Sections 201 and 209 required that the grand jury inquire into all public offenses committed or triable within the jurisdiction of the court, *and that a grand juror, knowing or having reason to believe that an offense has been committed within the court's jurisdiction, must so inform his fellow jurors, and the grand juror will investigate.*

What comes out of this documented history is that the grand jury is *accusatory* only as to charges which have been already heard by a magistrate, and a commitment made, and investigatory as to other public offenses brought to its attention, but which have not been heard by a magistrate: "An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense. Criminal Practice Act, § 202 (1864). Today, 127 years later, I.C. § 9–1102 is exactly the same as § 202 enacted in 1864. It is upon that accusation of a grand jury, *i.e.,* that a defendant is put on trial.

Similarly, as to the grand jury's investigatory function under §§ 201 and 209 of the 1864 Act, a presentment may flow from the investigation. A presentment is as defined in the 1864 Act, § 203, and to this day in, I.C. § 19–1105:

**19–1105. Presentment defined.**—A presentment is a formal statement in writing, by the grand jury, representing to the court that a public offense has been committed which is triable in the county, and that there is reasonable ground for believing that a particular individual named or described therein has committed it.

A presentment did not and does not result in putting the accused to a trial. Rather,

If the court deem that the facts stated in the presentment constitute a public offence, triable within the county, it shall direct the clerk to issue a bench warrant for the arrest of the defendant.

Crim.Prac.Act, § 220 (1864).

If the facts stated in the presentment constitute a public offense, triable in the county, the court must direct the clerk to issue a bench warrant for the arrest of the defendant.

I.C. § 19–1203.

Whereupon, as in 1864, and to this very day 127 years later, the defendant is arrested and taken before a magistrate:

The magistrate, when the defendant is brought before him, shall proceed to examine the charge contained in the presentment, and hold the defendant to answer the same, or discharge him therefrom, in the same manner in all respects, as upon a warrant of arrest on complaint.

Crim.Prac.Act, § 224 (1864).

The magistrate, when the defendant is brought before him, must proceed upon the charges contained in the presentment, in the same manner as upon a warrant of arrest on an information.

I.C. § 19–1207.

It is thus seen that the magistrate will, following a presentment and a district court arrest warrant based thereon, decide whether there is probable cause to hold a "presentmented" defendant for jury trial on felony charges. It is thus seen on close perusal that in territorial days, and after, that, unlike the federal system, there is no procedure for secret grand jury proceedings which can result in an indictment. A presentment, yes, but an indictment, no.

On beginning this historical review, it was expected that this would be so. How else is there any reasonable explanation for the statutory provisions—127 years continuously—providing the defendant with the right to make challenge to the grand jury panel, and to individual jurors?

Nothing has been changed over the years as to the procedure under which a person may be charged and brought to trial by use of an indictment.

To prosecution under indictment the Constitutional Convention, after considerable debate, added that a committed defendant could also be charged and tried in district court by a prosecutor's information. The discussion at the Convention is enlightening. It was largely between members who were lawyers and, accordingly, knowledgeable in the working of grand jury proceedings in the days since the territory was created.

Although art. 1, § 8 of the Idaho Constitution is not identical to art. 1, § 8 of the 1879 California Constitution, it is virtually the same. Both provisions allow for prosecution of offenses by information of the public prosecutor, or by indictment. Mr. Standrod of Oneida County in speaking for the use of an information, as an alternative to an indictment, after first expounding on the paucity of crime and the cost to the counties of grand juries,[1] specifically re-

1. MR. STANDROD. As a member of the committee on the Bill of Rights, I desire to say that this matter was discussed among that committee and it was submitted to a great many members of this convention coming from different parts of the country. We thought it was better that this clause in this section should be placed there. In many of the counties of this territory, there is but little crime committed. In the county from which I come, there are perhaps one or two criminal actions during the year, and I believe for the last two years there has only been one criminal prosecution in the county upon the indictment of the grand jury. There is sometimes a case that a slight felony has been committed in the county—not a heinous offense—not an offense of any great moment, yet it requires, in order to prosecute the criminal that he should be presented by indictment, and in order to do that, it will require, before that matter can be brought before a court and tried, an expenditure, in order to obtain the grand jury to indict him, of at least five or six hundred and from that to a thousand dollars. All this talk about this section being unconstitutional is bosh, and gentlemen here say that this committee dared to come here and confront this convention with a section of this kind directly in contravention of the constitution of the United States, and are attempting to bring before this convention an innovation that was never heard of before. I say this is not true.

. . . .

. . . Furthermore, this clause does not abolish the grand jury system. If the district attorney of the county or the district should get to play too high a hand, if he should undertake to prosecute men where there was no evidence against them, and for the mere purpose of prosecuting them, most assuredly the judge of that district under this section has control of all that matter. He can at any time he thinks the district attorney is not performing his duty, call a grand jury under this section, and it is very

ferred the Convention to what he called the California success: "and in California, that great state, where the survival of the fittest is a maxim that has been put into practical use, instead of theory, they have adopted this plan and the prosecutions of this state have been successful and they are conducted under a section of this kind." Constitutional Convention, p. 263 (1889). Mr. Claggett also spoke favorably of the California constitutional provision.

While I do note that the majority opinion correctly observes that the functions of a grand jury are investigatory and accusatory (charging), such seems to be about as deep as the majority has explored the problem. Nowhere in the majority is the state of California and its development in jurisprudence given any mention. This is exceedingly strange where it is beyond cavil that all of us who hold this office are and have been well aware that most of our criminal law and criminal procedure statutes were taken directly from California. Our territorial statutes did not materialize out of thin air.

We have in this Supreme Court building a copy of the laws of the State of California, passed at the second session of the legislature in January of 1851, which session was held at the Pueblo de San Jose. Pertinent to our inquiry here, California at that time, prior to the 1879 Constitutional Convention, provided only that public offenses be prosecuted by indictment. § 177, p. 232. Formation of the grand jury, and powers of the grand jury, appear to be exactly those which the Idaho Territorial Legislature enacted in 1864 in the Criminal Practice Act. The interested, and perhaps the doubting, reader will find attached hereto the 1851 California statutes, and the 1864 Idaho statutes. (Attachments 1 and 2.)

The rule of law in this jurisdiction which applies to such circumstances was recently stated by Justice Bakes in *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1981):

This court has consistently held that "[a] statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction." *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979). *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976); *Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969).

It is submitted that with Idaho's adoption, and 127 years' retention, of California statutes, and the Idaho Constitutional Convention accepting an art. 1, § 8 provision patterned after California's earlier ratified art. 1, § 8, there should be some interest on the part of this Court's membership when the same issue arose in California. In truth, I fear that there may be some who worry that a result-oriented majority would be naturally curious to know what California's court may have done, and on finding the answer, has purposefully forgotten that a great deal of our Idaho law, inclusive of more than the criminal code, came to us from California.

Much as the majority opinion in our case notes that "the rights afforded the accused in these [grand jury or a preliminary hearing] proceedings are different," the California Supreme Court opened its discussion with a similar statement:

It is undeniable that there is a considerable disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment.

likely the grand jury would be called once a year, or once in two years, as it became necessary. But I believe this will save the money of the counties of this territory, hundreds and hundreds of dollars a year in the prosecution of such crimes as horse stealing and cattle stealing and things of that nature that require to be presented by indictment. I believe there is no innovation in it that will be disastrous to the laws of this territory or to the enforcement of the, or whereby any party will be injured. And, coming from the section of country I do, and having seen this matter tested, I believe that it will save to my county alone hundreds of dollars a year. I trust this convention will adopt the section as it has been reported by this committee.

Constitutional Convention, pp. 262–65 (1889).

*Hawkins v. Superior Court, Etc.,* 22 Cal.3d 584, 150 Cal.Rptr. 435, 436, 586 P.2d 916, 917 (1978) (footnote omitted). Having said that, the California court proceeds to rationally and soundly justify its conclusion that an accused is denied equal protection of the law when prosecuted by indictment and deprived of a preliminary hearing and the concomitant rights which attach when prosecution is by information:

"The defendant accused by information 'immediately becomes entitled to an impressive array of procedural rights, including a preliminary hearing before a neutral and legally knowledgeable magistrate, representation by retained or appointed counsel, the confrontation and cross-examination of hostile witnesses, and the opportunity to personally appear and affirmatively present exculpatory evidence. (Pen.Code, § 858 et seq.; *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304....)' (*Johnson v. Superior Court* (1975) 15 Cal.3d 248, 256, 124 Cal. Rptr. 32, 37, 539 P.2d 792, 799 (conc. opn. by Mosk, J.).)

 In vivid contrast, the indictment procedure omits *all* the above safeguards: the defendant has no right to appear or be represented by counsel, and consequently may not confront and cross-examine the witnesses against him, object to evidence introduced by the prosecutor, make legal arguments, or present evidence to explain or contradict the charge. Penal Code section 939.7 captures the spirit of the proceeding by declaring as a matter of law, 'The grand jury is not required to hear evidence for the defendant....' If he is called to testify, the defendant has no right to the presence of counsel, even though, because of the absolute secrecy surrounding grand jury proceedings, he may be completely unaware of the subject of inquiry or his position as a target witness.[2] This remarkable lack of even the most basic rights is compounded by the absence from the grand jury room of a neutral and detached magistrate, trained in the law, to rule on the admissibility of evidence and insure that the grand jury exercises its indicting function with proper regard for the independence and objectivity so necessary if it is to fulfill its purported role of protecting innocent citizens from unfounded accusations, even as it proceeds against those who it has probable cause to believe have committed offenses.

"The Attorney General recognizes, as he must, that vastly different procedures attend these alternative modes of prosecution, but maintains that such differences are "more apparent than real." This startling claim is premised on the availability to the accused of judicial review of the grand jury's probable cause determination. (Pen. Code, §§ 995, 999a.) The defendant in either case, it is urged, is entitled to a judicial determination that the evidence is sufficient to require trial.[3]

"The foregoing argument depends on two erroneous assumptions. It assumes first that the only benefit derived by a defendant from an adversarial preliminary hearing lies in obtaining a judicial determination of probable cause. Yet whatever may be the Legislature's intent in establishing such a hearing, it serves a number of pragmatic functions for the accused. The United States Supreme Court catalogued some of them in *Coleman v. Alabama* (1970) 399 U.S. 1, 9–10, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387, holding the Alabama preliminary hearing at issue therein to be 'a "critical stage" of the State's criminal process' at which the defendant had a right to 'the guiding hand of counsel.'[4] The court observed that a 'skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial.' It went on to recognize the important discovery function served by an adversarial preliminary hearing; such a hearing will assuredly provide the defense with valuable information about the case against the accused, enhancing its ability to evaluate the desirability of entering a plea or to prepare for trial. The court also noted a less obvious advantage to the defendant accorded a preliminary hearing: his counsel may immediately argue before a judge on such matters as the

necessity for an early psychiatric examination or setting bail.

"These benefits to the defense which inhere in an adversarial preliminary hearing are either completely denied to a defendant charged in a secret, nonadversarial grand jury proceeding, or ultimately realized by such a defendant only to a limited extent. It cannot be seriously argued that an indicted defendant enjoys a comparable opportunity to discover the state's case and develop evidence because he later obtains a transcript of grand jury proceedings. (Pen.Code, §§ 938.1, 995a.) Such a transcript will invariably reflect only what the prosecuting attorney permits it to reflect; it is certainly no substitute for the possibility of developing further evidence through a probing cross-examination of prosecution witnesses—a possibility foreclosed with the denial of an adversarial proceeding. There is no other effective means for the defense to compel the cooperation of a hostile witness (see *People v. Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 143 Cal.Rptr. 609, 574 P.2d 425); in the unlikely event that all the prosecution witnesses agree to submit to defense interviews, the defense still must incur unnecessary expense and hardship which may be substantial.

"The Attorney General further assumes, in asserting that the differences between indictment and information procedures are "more apparent than real," that the likelihood of a probable cause finding is substantially the same whether the screening function is performed by the grand jury with subsequent judicial review or by a magistrate at a preliminary hearing. This assumption reflects the idealistic concept that the grand jury is an independent body of citizens, standing as a buffer between the state and the individual and protecting the innocent from unfounded accusations of crime. Unfortunately, grand jury proceedings today are structured in a manner that renders fulfillment of the ideal unattainable.

"The prosecuting attorney is typically in complete control of the total process in the grand jury room: he calls the witnesses, interprets the evidence, states and applies the law, and advises the grand jury on whether a crime has been committed. (See Judicial Council of Cal., Annual Rep. (1974) p. 58; Kranitz, *The Grand Jury: Past—Present—No Future* (1959) 24 Mo.L.Rev. 318, 328; Calkins, *Abolition of the Grand Jury Indictment in Illinois,* 1966 U.Ill. L.F. 423, 431.) The grand jury is independent only in the sense that it is not formally attached to the prosecutor's office; though legally free to vote as they please, grand jurors virtually always assent to the recommendations of the prosecuting attorney, a fact borne out by available statistical and survey data. (See Morse, *A Survey of the Grand Jury System* (1931) 10 Ore.L. Rev. 101, 153–154, 304, 325–326; Note, *Some Aspects of the California Grand Jury System* (1956) 8 Stan.L.Rev. 631, 653–654; Note, *Evaluating the Grand Jury's Role in a Dual System of Prosecution: An Iowa Case Study* (1972) 57 Iowa L.Rev. 1354, 1369.) Indeed, the fiction of grand jury independence is perhaps best demonstrated by the following fact to which the parties herein have stipulated: between January 1, 1974, and June 30, 1977, 235 cases were presented to the San Francisco grand jury and indictments were returned in all 235.

"The pervasive prosecutorial influence reflected in such statistics has led an impressive array of commentators to endorse the sentiment expressed by United States District Judge William J. Campbell, a former prosecutor: 'Today, the grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody, at any time, for almost anything, before any grand jury.' (Campbell, *Eliminate the Grand Jury* (1973) 64 J.Crim.L. & C. 174.) Another distinguished federal jurist, Judge Marvin E. Frankel, put it this way: 'The contemporary grand jury investigates only those whom the prosecutor asks to be investigated, and by and large indicts those whom the prosecutor wants to be indicted.' (Frankel & Naftalis, The Grand Jury: An Institution on Trial (1977) p. 100.) (Also see Antell, *The Modern Grand Jury: Benighted Supergovernment* (1965) 51 A.B.A.J. 153, 154–155; Alexander & Portman, *Grand Jury Indict-*

ment Versus Prosecution by Information—An Equal Protection—Due Process Issue (1974) 25 Hastings L.J. 997; Graham & Letwin, The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations (1971) 18 UCLA L.Rev. 635, 680–681; Moley, The Initiation of Criminal Prosecutions by Indictment or Information (1931) 29 Mich.L.Rev. 403, 414–415, 430; Weinberg & Weinberg, The Congressional Invitation to Avoid the Preliminary Hearing: An Analysis of Section 303 of the Federal Magistrate Act of 1968 (1969) 67 Mich.L.Rev. 1361, 1380; Meshbesher, Right to Counsel Before Grand Jury (1966) 41 F.R.D. 189, 189–190; Coates, The Grand Jury, The Prosecutor's Puppet, Wasteful Nonsense of Criminal Jurisprudence (1962) 33 Pa.B.A.Q. 311, 314–315; Comment, The Illinois Constitution, Article I, Section 7—Seeking a Rational Determination of Probable Cause (1975) 24 De Paul L.Rev. 559, 561–565; Note, A Constitutional Right to Preliminary Hearings for All Pretrial Detainee's [sic] (1974) 48 So.Cal.L.Rev. 158, 170–173; Boudin, The Federal Grand Jury (1972) 61 Geo.L.J. 1, 35; Shannon, The Grand Jury: True Tribunal of the People or Administrative Agency of the Prosecutor? (1972) 2 N.M.L.Rev. 141, 142; Foster, Grand Jury Practice in the 1970's (1971) 32 Ohio St. L.J. 701, 702; Schwartz, Demythologizing the Historic Role of the Grand Jury (1972) 10 Am.Crim.L.Rev. 701, 703; Tigar & Levy, The Grand Jury as the New Inquisition (1971) 50 Mich.St.B.J. 693, 694; Comment, Federal Grand Jury Investigation of Political Dissidents (1972) 7 Harv.C.R.–C.L. L.Rev. 432, 438–443; Wise, Criminal Law and Procedure (1974) 20 Wayne L.Rev. 365, 377–378; Gerstein & Robinson, Remedy for the Grand Jury: Retain but Reform (1978) 64 A.B.A.J. 337, 340.) Justice Douglas put the matter succinctly when he wrote: "It is, indeed, common knowledge that the grand jury, having been conceived as a bulwark between the citizen and the Government, is now a tool of the Executive." (United States v. Dionisio (1973) 410 U.S. 1, 23, 93 S.Ct. 764, 777, 35 L.Ed.2d 67 (dis. opn.).)

"The domination of grand jury proceedings by the prosecuting attorney no doubt derives at least in part from the grand jury's institutional schizophrenia: it is expected to serve two distinct and largely inconsistent functions—accuser and impartial factfinder. (See Comment, The Preliminary Hearing Versus the Grand Jury Indictment: 'Wasteful Nonsense of Criminal Jurisprudence' Revisited (1974) 26 U.Fla.L.Rev. 825, 836–838, 842–843; Note, Criminal Law—Grand Juries, Exemplars and Prosecutors (1973) 22 De Paul L.Rev. 737, 749–750.) In one role, 'Basically the grand jury is a law enforcement agency' (United States v. Cleary (2d Cir.1959) 265 F.2d 459, 461, and cases cited), participating in the prosecutorial task of discovering criminal conduct and the perpetrators thereof; putting on its other hat, the grand jury is expected to be a neutral body, protective of the individual against prosecutorial abuses. It seems self-evident that to the extent it succeeds at one function it must fail at the other. Almost all observers of the system conclude that this conflict of roles has prevented the grand jury from being objective, generally to the detriment of indicted defendants.

"The problem of excessive prosecutorial influence is not solved by the availability of judicial review, for the same lack of objectivity, however inadvertent, which affects the grand jurors when they vote to indict infects the record for purposes of review. Excluded from the grand jury room, the defense has no opportunity to conduct the searching cross-examination necessary to reveal flaws in the testimony of prosecution witnesses or to expose dubious eyewitness identifications.[5] This lack of defense participation in the development of the reviewable record creates a heavy bias in favor of a finding that the grand jury indictment was based on probable cause. For example, in United States v. Boberg (8th Cir.1977) 565 F.2d 1059, the federal appellate court emphasized that the prosecutor's interrogation of the defendant as a witness before the grand jury consisted 'almost entirely of leading questions,' and the ensuing indictment rested on the defendant's 'cryptic responses' to such ques-

tions. The court admonished that 'This kind of interrogation always creates a great risk that the witness will misunderstand the questions or that the prosecutor will put words in the witness' mouth,' and warned all prosecutors that it would 'strictly scrutinize for fairness' any similar indictment obtained thereafter. (*Id.* at pp. 1062–1063.)

"It is clear from the foregoing that a defendant charged by indictment is seriously disadvantaged in contrast to a defendant charged by information. (See also Dash, *The Indicting Grand Jury: A Critical Stage?* (1972) 10 Am.Crim.L.Rev. 807, 814–815; Judicial Council of Cal., Annual Rep. (1974) pp. 47, 52–55.) Indeed, current indictment procedures create what can only be characterized as a prosecutor's Eden: he decides what evidence will be heard, how it is to be presented, and then advises the grand jury on its admissibility and legal significance. In sharp contrast are information procedures in which the defendant is entitled to an adversarial, judicial hearing that yields numerous protections, including a far more meaningful probable cause determination. Yet the prosecuting attorney is free in his completely unfettered discretion to choose which defendants will be charged by indictment rather than information and consequently which catalogue of rights, widely disparate though they may be, a defendant will receive. He may act out of what he believes to be proper law enforcement motives, or he may act whimsically; no case law or statutory guidelines exist to circumscribe his discretion. We examine below the constitutionality of permitting the prosecuting attorney to make such discriminatory classifications.

## II

■ Under the traditional two-tier test of equal protection, a discriminatory legislative classification that impairs fundamental rights will be subjected to strict scrutiny by the courts, and the state will be required to bear the heavy burden of proving not only that it has a compelling interest which justifies the classification but also that the discrimination is necessary to promote that interest. (See, e.g., *Serrano*

*v. Priest* (1976) 18 Cal.3d 728, 761, 135 Cal.Rptr. 345, 557 P.2d 929, and cases cited.)

■ For the reasons stated in Part I, *ante*, the denial of a postindictment preliminary hearing deprives the defendant of 'such fundamental rights as counsel, confrontation, the right to personally appear, the right to a hearing before a judicial officer, and the right to be free from unwarranted prosecution. These guarantees are expressly or impliedly grounded in both the state and federal Constitutions and must by any test be deemed "fundamental." ' (*Johnson v. Superior Court* (1975) supra, 15 Cal.3d 248, 266, 124 Cal.Rptr. 32, 44, 539 P.2d 792, 804 (conc. opn. by Mosk, J.).)

"The Attorney General fails to discharge his burden of proof under this test. His sole attempt to do so is to list in his brief a few tactical advantages gained by the prosecutor who chooses to use the indictment procedure.[6] But none of these reasons amounts to a constitutionally compelling state interest that justifies depriving an indicted defendant of the above-discussed fundamental rights guaranteed to him in a preliminary hearing. Nor, indeed, does the Attorney General make any effort to show that this discrimination is constitutionally 'necessary' to preserve any such advantages.

■ We conclude that the denial of a postindictment preliminary hearing deprived defendants herein of equal protection of the laws guaranteed by article I, section 7, of the California Constitution.[7]

## III

■ The appropriate remedy for the constitutionally infirm treatment of indicted defendants is not to eliminate or alter radically the general indicting function of the grand jury; indeed, that function is explicitly sanctioned in the California Constitution (art. I, §§ 14, 23) and specifically implemented by the Legislature (Pen.Code, § 888 et seq.). Until such time as the Legislature may prescribe other appropriate procedures, the remedy most consistent

with the state Constitution as a whole and least intrusive on the Legislature's prerogative is simply to permit the indictment process to continue precisely as it has, but to recognize the right of indicted defendants to demand a postindictment preliminary hearing prior to or at the time of entering a plea. If the defendant makes a timely request for such a preliminary hearing, at the direction of the court the prosecuting attorney shall refile the indictment as a complaint, thus activating the procedures set forth in the Penal Code (see Pen.Code, § 859 et seq.).[8]

■ The state constitutional provision recognizing the grand jury's indicting function—article I, section 14—is no bar to our holding herein. It provides, 'Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information.' The term 'law,' of course, encompasses judicial decisions as well as legislative enactments. (Cf.Evid.Code, § 160.) Thus, while the Constitution authorizes the use of grand juries to indict criminal defendants, it leaves to the Legislature and the courts the task of developing procedures, consistent with other state constitutional provisions, for implementing that mode of initiating prosecutions.[9]

■ Because of previous reliance by the bench and bar on the validity of current postindictment procedures, the rule announced herein shall apply only to the present case and to those indicted defendants who have not entered a plea at the time this opinion becomes final. (See, e.g., *People v. Cook* (1978) 22 Cal.3d 67, 99, fn. 18, 148 Cal.Rptr. 605, 583 P.2d 130, and cases cited.)

Let a peremptory writ of mandate issue directing the trial court to proceed in accordance with the views expressed herein.

"TOBRINER, MANUEL and NEWMAN, JJ., concur.

"[BIRD, J., specially concurred.]

"[2] As one observer put it, a grand jury room with no judge present to protect unrepresented witnesses or prospective defendants is 'a threatening physical environment'; it 'possesses coercive characteristics that are analogous to a police interrogation room, which the court found to be inherently coercive in *Miranda*.' (Note, *Federal Grand Juries: The Plight of the Target Witness* (1977) 11 U.S.F.L.Rev. 672, 685.)

"[3] Simultaneously, and inconsistently, the Attorney General argues that the grand jury indicting function is not a critical stage in the criminal process, that it is merely investigative. We emphasize that we are not here concerned with the true investigative role of the grand jury. In that capacity—citizens probing into and exposing governmental ineptitude and inefficient practices—the grand jury serves a valuable and productive purpose.

"[4] Although only four members of the court joined the opinion of the court on this issue, a fifth, Justice Black, agreed in his concurring opinion with the conclusion that a constitutional right to assistance of counsel obtained in the Alabama preliminary hearing.

"[5] One advocate has described as follows the value of cross-examination: it 'permits disclosure of contradictions, inconsistencies, unsupported conclusions, bizarre descriptions of events, favoritism in testimony, motive, bias, slanting of facts, absence of proof, and in some cases even perjury.' (Werchick, Cal. Preparation and Trial (2d ed. 1974) p. 727.)

"[6] 'A prosecutor may proceed by indictment for valid reasons: the prospective defendant cannot be found; witnesses may fear testifying in court; the case may have potential for prejudicial pretrial publicity; publicity may jeopardize a continuing investigation; a preliminary examination may involve prolonged delay because of the number of defendants or the complexity of the case.'

"[7] While we held to the contrary in *People v. Sirhan* (1972) 7 Cal.3d 710, 746–747, 102 Cal. Rptr. 385, 497 P.2d 1121, the issue was treated cursorily and was neither argued nor decided in relation to the California Constitution. As we have previously stated, '[I]n criminal actions, where life or liberty is at stake, courts should not adhere to precedents unjust to the accused. It is never too late to mend.' (*People v. Aranda* (1965) 63 Cal.2d 518, 530, 47 Cal. Rptr. 353, 360, 407 P.2d 265, 272, quoting from *United States v. Delli Paoli* (2d Cir.1956) 229 F.2d 319, 323 (dis. opn. of Frank, J.).) To the extent it is contrary to the views herein expressed, *Sirhan* is overruled.

"[8] In *People v. Duncan* (1972), 388 Mich. 489, 201 N.W.2d 629, the Supreme Court of Michigan held that defendants are entitled to a postindictment preliminary hearing. As a result of *Duncan* the general procedure we recommend here was codified in Michigan Court Rule 788 and is now accepted practice in that state.

"[9] Current section 14 represents a streamlined version, not intended to introduce substantive changes, of former article I, section 8, which provided: 'Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, *as may be prescribed by law*.' (Italics added.)

Plainly this predecessor section also left to the Legislature and the courts the task of formulating indictment procedures that do not diminish other constitutional guarantees.

"The Attorney General argues that this court is without power to rule invalid indictment procedures, no matter how drastically or unreasonably such procedures may undermine other constitutional provisions. This position is remarkable in light of long-standing American principles recognizing the role of courts in a constitutional system. The principal support cited by the Attorney General is legislative history which is said to leave the development of indictment procedures to legislative control. Of course the Legislature in the first instance prescribes procedures for grand jury indictments; it is no revelation that history so provides. But the cited legislative history does not purport to strip California courts of the power to invalidate a scheme that interferes unreasonably—and unnecessarily—with other fundamental constitutional guarantees."

*Hawkins, supra,* 150 Cal.Rptr. at 436–41, 586 P.2d at 917–22.

Not reflecting too creditably upon the majority opinion, it is observed that the district court, the Honorable John H. Bengtson, in addition to analyzing the Oregon case of *State v. Freeland,* 295 Or. 367, 667 P.2d 509 (1983)—which analysis the majority opinion appears to have utilized—confronted the *Hawkins* case:

In *Hawkins vs Superior Court, etc.* (Cal., 1978) [22 Cal.3d 584, 150 Cal.Rptr. 435], 586 P.2d 916, the Supreme Court of California, while recognizing that it is undeniable that there is a considerable disparity in the procedural rights afforded defendants charged by the prosecutor by means of an information and defendants charged by the grand jury in an indictment (which, as in Idaho, are the two methods for initiating a felony prosecution under the California Constitution) and "that a defendant charged by indictment is seriously disadvantaged in contrast to a defendant charged by information," nevertheless did not dismiss the indictment against the defendant. The Court concluded *not* that the defendant was deprived of equal protection because he had been charged by indictment rather than by the filing of an information, but rather that it was the "denial of a *postindictment preliminary hearing*" that deprived defendants of equal protection of the laws guaranteed by the California Constitution. The Court stated:

"The appropriate remedy for the constitutionally infirm treatment of indicted defendants is not to eliminate or alter radically the general indicting function of the grand jury; indeed, that function is explicitly sanctioned in the California Constitution ... and specifically implemented by the Legislature....

Until such time as the Legislature may prescribe other appropriate procedures, the remedy most consistent with the State Constitution as a whole and least intrusive on the Legislature's prerogative is simply to permit the indictment process to continue precisely as it has, but to recognize a right of indicted defendants to demand a post-indictment preliminary hearing prior to or at the time of entering a plea. If the defendant makes a timely request for such a preliminary hearing, at the direction of the Court the prosecuting attorney shall refile the indictment as a complaint, thus activating the procedures set forth in the Penal Code...."

No cases have been brought to the attention of the Court by the parties, nor has the Court unearthed any cases, in which an indictment has been dismissed based upon any equal protection argument, *except* where an indicted defendant has sought, subsequent to the indictment but before or at the time of entry of his plea, an order which would afford him the right to a preliminary hearing.

The Idaho Constitution in *Article 1, Section 8,* clearly authorizes the prosecution of a felony to be commenced by either indictment or by information (after the defendant had been afforded the right to a preliminary hearing). This choice of alternative proceedings is also authorized by the California and Oregon Constitutions which governed, respectively, *Hawkins* and *Freeland.*

Had the defendant in the case at bar sought, following the return of the indictment and before or at the time of the entry of his plea, an order granting him a postindictment preliminary hearing (as

the defendants did in both *Hawkins* and *Freeland*) and had the State been unable to demonstrate a coherent, systematic policy relating to the selection of the indictment process for the prosecution of the above entitled cases and refused to conduct a preliminary hearing upon defendant's motion or application, it is likely that the indictments in these cases would have been dismissed by this Court.

However, defendant Edmonson, represented at all stages thus far by exceptionally able counsel, has not chosen to follow the procedures employed by the defendants in *Hawkins* and *Freeland* by seeking an order of this Court directing that the State provide him with preliminary hearings on any of the charges set forth in the indictments. This Court is therefore of the opinion that he has waived whatever right the law affords him to a postindictment preliminary hearing and that it is unnecessary for this Court to rule upon the basic constitutional issue raised by the Equal Protection Motions, and such motions should be denied.

Parenthetically, the Court opines that *issues such as those raised by these Equal Protection Motions could be avoided in the future if the Legislature of the State of Idaho would enact a law, or the Supreme Court of Idaho would adopt a rule which would clearly provide a defendant charged by indictment with a postindictment preliminary hearing if the same is requested by him at or before the entry of his plea.*

R., pp. 48–50.

The only question which I mount as to the validity of Judge Bengtson's learned written decision, which entails *all* of the issues discussed in the Court's majority opinion (and well might have been adopted as the opinion for the majority), is his statement that "it is likely that the indictments in these cases would have been dismissed by this Court" had the defendant sought "following the return of the indictment ... an order granting him a post indictment preliminary hearing...." From that stance, Judge Bengtson concluded that the defendant thereby waived such a right, and

accordingly it was unnecessary to rule upon the constitutional issues. Although today's majority agreed with Judge Bengtson, it still opted to do the constitutional bit. I agree with Judge Bengtson that it is an unnecessary exercise and would think such should have been avoided.

Judge Bengtson's only misperception in this area, which I see, is his ready and unquestioning acceptance as gospel that the so-called "indictment" is indeed an indictment because it is labeled an indictment. However, it is not an indictment simply because it has been so captioned. In this jurisdiction, we do not exalt form over substance, and the clue in this case occurred at oral argument when Justice Donaldson inquired of the solicitor-general as to the difference between an indictment and a presentment:

JUSTICE DONALDSON: Now, tell me the difference between a presentment by the grand jury and an indictment by the grand jury, and the standard of proof and what happens, say if a presentment is made by the grand jury?

MR. THOMAS: I am not sure that I really understand what the difference between a presentment is. I know that an indictment is clearly a charge of criminal violation. It then results in a trial.

JUSTICE DONALDSON: I understand that proof required for an indictment is against the presentment?

MR. THOMAS: My understanding of the standard of proof, the burden of proof, for an indictment is the same as for a preliminary hearing—probable cause to believe that a crime has been committed and that the defendant committed it.

JUSTICE DONALDSON: I was just reading the statute on presentment, and it says here: "A presentment is a formal statement in writing by the grand jury representing to the court that a public offense has been committed which is triable in the county and that there is reasonable ground for believing the particular individual named or described thereon has committed it." And then for "indictment" it says, "The grand jury ought to find an indictment where all evidence

before them taken together if unexplained or uncontradicted would in their judgment warrant a conviction by a trial or jury." To me it seems that there might be a different standard of proof involved. There are no cases that I know of on it, and we, as you know, we very seldom have any cases on the use of a grand jury in Idaho. Other states and federal governments, of course, are quite different. I was just trying to see if you had any further light on that.

MR. THOMAS: Well, it certainly I suppose could be argued that the suggestion in the part of the statute relating to indictments that to the grand jury should return an indictment, if it thought a conviction might ensue could be read to suggest that there should be proof beyond a reasonable doubt.

JUSTICE DONALDSON: Of course, that's the standard that the prosecuting attorney used throughout this grand jury was that they had to find beyond a reasonable doubt. Which is the same standard that the regular jury does.

MR. THOMAS: That's correct. But, I would argue against interpreting the statute in that fashion.

JUSTICE DONALDSON: I am wondering if he was correct in his assumption.

MR. THOMAS: I think he was not.

It would seem that if the solicitor-general, who to my knowledge is involved exclusively with criminal law and no other field whatever, was wholly unaware of the difference between an indictment and a presentment, there is very good reason to believe that Judge Bengtson, who has to be involved in the many complex fields of civil and domestic law, and occasionally criminal law and procedure as well, was equally not aware that a presentment is not an indictment—but has for 127 years of statutory existence played an entirely separate and distinct part in grand jury proceedings. At the same time, Justice Donaldson was not putting the solicitor-general through an academic exercise, but sensed a difference between the two, and wanting to be informed from a person from the attorney general's office, received no enlightenment whatever.

On the other hand, if the solicitor-general did know the difference, he would have had to explain that a presentment arises out of a grand jury's investigatory function, and, on being delivered to the district court, results in a warrant for arrest made returnable before a magistrate:

A presentment is an informal statement in writing, but the grand jury, representing that a public offense has been committed, which is triable within the county, and that there is reasonable grounds for believing that a particular individual, named or described, has committed it.

I.C. § 19–1102 (1864 Crim.Prac.Act § 203).

The presentment, when found, must be presented by the foreman, in presence of the grand jury, to the court, and must be filed with the clerk.

I.C. § 19–1202 (1864 Crim.Prac.Act § 217).

If the facts stated in the presentment constitute a public offense, triable in the county, the court must direct the clerk to issue a bench warrant for the arrest of the defendant.

I.C. § 19–1203 (1864 Crim.Prac.Act § 220).

I.C. § 19–1205 sets forth the form of the bench warrant, which recites the presentment, and commands any peace officer in the state to arrest the person named forthwith and take him before a named magistrate of the county, "or in case of his inability to act or absence, before the nearest and most accessible magistrate in this county."

This statute, too, carried over from the 1864 Criminal Practice Act, § 222.

The magistrate, when the defendant is brought before him, must proceed upon the charges contained in the presentment, in the same manner as upon a warrant of arrest on an information.

I.C. § 19–1207.

The annotation to this section refers to the proceedings under I.C. § 19–801 *et seq.*, and requires first that "the magistrate must immediately inform him of the charge

against him, and of his right to the aid of counsel in every stage of the proceedings," following which there must be a preliminary examination to determine if there is probable cause. I.C. § 19–804.

Knowing all of this, if he did, the solicitor-general had to know in turn that the grand jury had not presented the district court with an indictment, but with a presentment, and that the defendant, *as a matter of law*, had to be advised of his right to counsel and afforded a preliminary hearing. No demand was necessary.

It is all as it should be. Forever there has been in Idaho always the involvement of a neutral and detached magistrate standing between the citizenry and the prosecutor. On an indictment, that involvement comes before the grand jury considers indicting an accused defendant. On a presentment, however, there is no accused *defendant* (either in jail or out on bail) simply because there has been no arrest and no preliminary examination. The statutory procedure spells out very clearly that the district judge, if satisfied with the content of the presentment, will issue an arrest warrant which requires the arresting officer to take the individual named to a certain named or nearest magistrate. Then the neutral and detached magistrate becomes involved and conducts a preliminary examination. The procedure, if not understood by the solicitor-general, is not likely well understood by anyone—which is to be expected in view of the little use of grand juries in Idaho, and no knowledge of the function of an indictment *vis a vis* a presentment.

What is extremely clear, I repeat, is that Idaho, and California, too, and most western states, have forever respected the interposition of a magistrate between the prosecutor and an accused.

The majority opinion, however, shows little awareness of the involvement of a magistrate—as is well demonstrated by its declaration that "an informal procedure in which an accused is not given the right to contest the state's evidence, or even put on his own evidence is not per se constitution[ally] infirm"—said to be predicated

upon *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, a 1975 case from which the majority excerpts a lengthy quote, p. 234, 743 P.2d p. 463. Regrettably, the majority is not aware that *Gerstein*'s discussion is not of a preliminary hearing or of a grand jury proceeding, but a probable cause hearing of some sort which is better than no hearing of any kind. Under Florida law, a *prosecutor's* assessment of probable cause had in Florida been held sufficient for extended pretrial detention. Other than in capital cases, where indictments were required, prosecutors were allowed to charge all other crimes by information, without a prior preliminary. The holding of the Supreme Court of the United States had naught to do with grand juries, with indictments, or with presentments. The clearly stated holding in the case was *that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest*. Not having the time to review our own decisions since 1975, I am reasonably certain that either Justice Bakes or myself, or both, have written relative to *Gerstein*, and this Court should be better aware of what that case was about. The excerpt quoted was merely in explanation that a probable cause hearing before a magistrate as a prerequisite to detaining (confining) an accused is *not* a preliminary hearing, and appointment of counsel is not required for indigent defendants as required under *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). In short, *Gerstein* has nothing to do with the case before us, and the majority ill-serves the trial bench and bar by interposing the *Gerstein* excerpt with loose language that suggests a grand jury is an informal procedure, the purpose of which is to also determine probable cause. A grand jury is, in my mind, at least, anything but an informal procedure; the statutory provisions governing its conduct are all-encompassing, leaving little for doubt.

But, if I err in my assessment that the document in question is a presentment, I am nevertheless unable to fathom any rea-

son for not according indicted defendants a preliminary hearing.

In days not too long ago, accused defendants were taken to preliminary hearings, and, if indigent, had no representation. Only on going to trial was counsel appointed for the indigent accused, who often waived the right. I cannot remember of a case where, prior to trial, the district court ever denied appointed counsel's motion to turn back the clock and give the defendant a preliminary hearing. In fact, personally, I can remember clients of mine who were allowed that right. Everyone involved seemed to be interested in seeing that justice was served.

A preliminary hearing for *indicted* defendants who request the same is not spelled out in the Code. For *presented* defendants, it is spelled out. Who is the more in need of a preliminary hearing—the indicted defendant who has already been held to answer by a magistrate, or the *presented* defendant who has not, and was not even aware that his activities were under investigation in secret proceedings?

Then, too, think of the cost—not much. At a preliminary hearing, the prosecutor need not put his entire case, but only so much as will result in the defendant being held to answer. Then, too, think of the time delay which has ensued where a preliminary was not given, but the question certified for appeal—consuming more valuable time which this Court could better expend on other cases.

There is, too, here, good reason to believe that the prosecutor far overstepped his prescribed rule. So much so that I for one, who has read the available transcripts, believe a poor precedent is set by the imprimatur of this Court's stamp of approval—even though it reluctantly agrees with my own view.

Grand juries are impaneled in Idaho pursuant to I.C. § 2–501, by order of the court filed with the clerk, and shall be summoned from a master list which is open to public examination. I.C. § 2–206. The court directs the jury commission to draw and assign from the master jury wheel the number of qualified jurors for a grand jury.

I.C. § 210(2), and the clerk in turn notifies the drawn jurors when to report. Sixteen person constitute a grand jury, twelve of whom constitute a quorum.

After the drawn grand jurors assemble and are sworn, the jury is charged *by the court*. I.C. 19–1013. "In doing so, the *court* must give them such information as it may deem proper, or as is required by law, as to their duties, and as to charges for public offenses returned to the court or likely to come before the grand jury." I.C. § 19–1013. These statutes have governed Idaho grand juries since 1864. The grand jury must then retire to a private room and inquire into the offenses cognizable by them. I.C. § 19–1014. I.C. § 19–1111 provides that the jury may ask the advice of the court, or judge thereof, or of the prosecuting attorney. As to the prosecuting attorney, the section is specific "that he may at all times appear before them for the purpose of giving them information or advice, and may interrogate witnesses before them whenever he or the jury think it necessary."

The record before us does not contain the court's charge to the jury. When the jury convened on November 13, 1984, at Moscow, Idaho, only present were the prosecutor and the jurors. The prosecutor's statement indicated that the court may have charged the jury when the prosecutor remarked: "As the judge has indicated, Mr. McCoy has been designated the foreman ..." and again, "As you recall, one of the instructions that Judge Maynard read to you is that you have to keep track of the votes on the indictments and what have you." The prosecutor, apparently before the jury retired to their room, had already exposed his case against the individuals for whom he asked indictments—as witnessed by the remark, "And when I mentioned in my preparatory remark *in the courtroom* that you would be looking at a wide scope of people from the executive category all the way down to the wage and hour category."

Nothing else in that transcript is remarkable other than that the prosecutor told the jurors that they were a "quotient verdict"

in that although it took twelve to indict, "there's nothing that compels all of you to be here as long as there's always twelve." Tr., p. 25. He explained a theory for that statement which is most unusual: "Because it's a quotient jury, the theory is that you rely on the good memories and the wisdom of your fellow jurors in asking them about certain things." Tr., p. 25. This "tag-team" theory of jury attendance is not, in my view, within the letter of the law. Clearly, this was additional grounds invalidating the grand jury proceeding. The transcript demonstrates that at least two of the jurors were interested in not even serving.

The jury apparently received testimony of the witnesses between November 13, 1984 and January 8, 1985. We do not have this testimony, and have no way of knowing the extent of the prosecutor's involvement in the interrogations—nor is it anything we need to know to decide the issue before us.

On January 8, 1985, presumably the testimony and exhibits, if any, were all before the jury when it assembled at 10:50 a.m. that day. The proceedings of that day commenced with the prosecutor handing out to everyone present a set of 20 numbered instructions, presumably drawn by him. He then passed out to each of the jurors one of his proposed and prepared indictments. He explained: "The indictments that you will be dealing with are the indictments that after viewing the evidence from—from *my standpoint*, I have proposed." Tr., p. 5. He went on to explain the reasoning behind *his* selective selection of indictees:

> There are a number of other events that maybe have occurred during the presentation of this case that would or could technically be of a level—evidentiary level to warrant an indictment. There may or may not be reasons—or there certainly are reasons why those indictments *are not being requested.* The reasons may vary from the sublime to the very complex. One reason that indictments are not requested in many grand jury cases against certain people is that you want to keep those people in a state of legal

limbo. A state of legal limbo for purposes of possibly utilizing them as witnesses against other people.

> Also, there are instances in which if you have a weak case against a person, technically sufficient but presentationally weak, then you generally do not want to indict that person because tactically in a multi-defendant case that one will invariably be the first one to go to trial. And in a series of trials you don't want to start out with the worst case, the lawyers for all of the other defendants are sitting in the courtroom while you're doing the first case. So if you have a weak case, then tactically that works to your disadvantage.

> So there are a variety of reasons why there may be some events that you have detected that merit some sort of sanction *that the indictments are not proposed for.*

Tr., pp. 5–6 (emphasis added).

He told the jurors that: "There are also instances in which indictments are not drawn that very simply legally do not merit an indictment." Tr., p. 6. He named an example from those being investigated.

From that point on, until almost 4:00 p.m. that day, the prosecutor argued his instructions and the testimony of the witnesses as *he* viewed it and as he told the jurors that they should believe it. We are not favored with the set of instructions with which the prosecutor handed the jurors, so the content of each of the 20 instructions is an unknown. We can, however, read from the prosecutor's comment that his instruction No. 2 invited the jurors to key in on certain people:

> So you're going to treat or you're going to view a person who is in a position of reponsibility, a supervisor, a director, a department head, significantly different. You're going to view his activities or her activities significantly different than you are the key punch operator sitting out on the floor who makes four dollars an hour and who just does what comes through the basket. And that's essentially what instruction number *two* indicates.

Tr., pp. 14–15.

He provided the jurors with a history of the grand jury system and explained that "the grand jury system in this country and in all countries that have a grand jury system, remains an inquisitorial device." After remarking that "in a true inquisitorial system, you are guilty until you prove yourself innocent," the prosecutor also correctly and properly told them: "So *if you are given an indictment, for instance* the one you have before you, _____'s grand theft indictment, then that jeopardies out Mr. _____ on grand theft.

Early in his long presentation, on page 18 of 153 pages, the prosecutor suggested to the jurors what the evidence showed:

During the process of presenting the evidence in the case, I think as I mentioned before, you probably detected that there were a lot of things going on surrounding this case that just didn't seem quite right. And that people were playing fast and loose. People were not very honest. People were trying to be high rollers in a small pond—a mixed metaphor—and they in the end came to no good end for it.

Tr., p. 18.

People who commit crimes of passion, they very physically exhibit what they do. But people who are fraudulent and people who conspire don't. And—because that's the nature of the crime. You don't go out and announced that you're in the middle of a conspiracy. There are conspiracies of silence. There are conspiracies that are effectuated just through—through covert power. The best example of that is the military when a person in command says, "I would like something taken care of", it gets taken care of without any further explanation from—by the person in command. People can make their desires known in a certain way without actually having to express in specific detail what they want done. Conspiracies are like that. With a look, with a wink, with a nod. With an understanding of unified objectives things can be accomplished. That's why conspiracies are so tough to prosecute and so tough to prove, because you can't

find an eye witness. You can't find any real evidence. Conspiracies all occur in minds of people and in the interaction between the two conspirators or the three conspirators of the four conspirators. And unless you get a confession from one, you have a very difficult time ever proving a conspiracy.

For that purpose the law has developed an entire body of conspiracy law and *if you look back at instruction number eighteen* you'll find what has developed in this country as being the common sense but again legalistic expression of how you can produce evidence to show conspiracy. Most people think in a conspiracy you have to have this conspiratorial scenario in which people slink down the street and slide into darken doorways and then sit down in a room with a bare light bulb hanging there and plot to do things. Or that drug dealers sit in villas in Miami and plot how to do things over the telephone. That's not particularly so. A conspiracy can be formed and take place in a matter of seconds. ... Conspiracy as *the instructions* indicate to you on *number sixteen* is nothing more than an agreement between two or more people to commit a criminal offense. Okay? Each person has to know in order for it to be a conspiracy that they're participating in an agreement. They must have intent. Conspiracy is a specific intent crime. And then if any one of them commits an overt act in furtherance of that conspiracy, then the conspiracy is a fait d'acompli. It is a completed crime at that time.

Tr., pp. 23–25.

In *instruction seventeen* I think in very brief form most of what I have indicated to you is detailed there in that particular instruction.

Now the *instruction number nineteen* is the final conspiracy instruction and it is, once again, a very common sense instruction, a very common sense objective of the law, because it is the unique conspiracy participant instruction.

Tr., p. 30 (emphasis added).

At page 32, he mentioned having brought in, supposedly as a witness, a Mr. Donesley who lectured the jurors on the RICO statutes. The Idaho statutes, however, are explicit that only the court and the prosecutor can given legal advice to the jurors. His recapitulation of the RICO statutes and purposes encompassed at least ten pages.

His *Instruction No. 6* explained the difference between circumstantial and direct evidence, according to his statement of it. Tr., p. 43. His *Instruction No. 8* apparently dealt with credibility of witnesses. Tr., pp. 43–45. His Instruction No. 9 apparently told the jury as being an aider or abettor, of which he said was confusing to people, and then explained it, and in doing so lectured the jurors on Idaho's newly enacted comprehensive theft statute.

Following a break, the prosecutor laboriously perused with the jury his proposed indictments together with *his* recollection and views of the evidence. One could write on and on forever, but enough has been written to establish that the prosecutor's summation in this grand jury proceeding was purely that of an advocate pursuing *his* own goals, wholly unfettered in a totally nonadversarial setting which left him at liberty to lead the jury to do his bidding— albeit it is true, from time to time, he told the jurors that they were not bound by his views, and whether they would agree to *his proposed indictments* was up to them.

What I read is fully convincing that this grand jury proceeding was *not* in compliance with statutory proceedings—not by a long shot. It is the function of this office to call things as they are, by which it is meant to convey the thought that what is written is not to be taken as critical of the prosecutor. As I see it, there simply is no established body of case law in Idaho which is available as guidelines for the convening and conducting of grand juries. The prosecutor without doubt thought that the grand jury was a prosecutorial device for the benefit of prosecutors—much as the special inquiry judge—which the prosecutor had already utilized, and from which proceeding had gathered most of the leads upon which he followed through with the grand jury.

The solicitor-general even after writing his brief and doing the necessary research work for that effort, did not know at oral argument the difference between an indictment and a presentment.

The solicitor-general at oral argument told us that the prosecutor had been flatly in error in telling the grand jurors that the evidence before them had to convince them *beyond a reasonable doubt.*

My present perception as to whether the members of this Court are any more knowledgeable in this area of the law, and especially with the statutes which govern such proceedings, leaves me not at all persuaded that the collective knowledge of this Court is any better or any worse than the prosecutor's and the solicitor-general's. What the trial bench and bar may well fear is that this Court issues its opinion this day without being properly informed, which is to be much regretted.

As mentioned earlier, reason and practicality dictate that the district court be directed to allow the defendants the preliminary hearing which they seek. For the life of me I cannot understand the solicitor-general's objection. The preliminary hearing could have been held and over months ago, and the case pursued in district court.

In due time, perhaps the trial bar, absent any help from this Court, might deem it wise to reflect upon the grand jury system and examine for adequacy and suffering those statutes which have been on the books, unchallenged, sine 1864. In that year, we copied California's 1851 statutes, and we still had them when we became a state in 1889, and still have them. And, we have a constitutional provision, art. I, § 8, patterned after California's art. I, § 8, and we have a 5–2 California opinion which holds that indicted defendants are entitled to a preliminary hearing. A preliminary examination has been part and parcel of Idaho law ever since there has been an Idaho. Unless I am much mistaken, the jury returned presentments, although the prosecutor called his proposed bills indictments. Under the law, if such are present-

ments, the statutes require the district court to order the accused to be arrested and taken before a magistrate for a preliminary examination—perhaps to be held to answer for jury trial.

A final word, how disturbing it must be to counsel for the defendants to read Part III of the majority opinion. The majority commendably sets forth some of the prosecutor's comments to the grand jurors, pp. 237–238, 743 P.2d pp. 466–467, and having done so, declares "that these statements are impermissible," and cites the reader to the American Bar Association Standards for Criminal Justice. The majority states that such impermissibility is irrelevant unless those statements are prejudicial—meaning in the majority mind that "they are designed to appeal to jury prejudices or prod a reluctant jury into voting for indictment." Then, philosophizes the majority:

> Grand jurors realize that the case is being presented precisely because the prosecutor believes the grand jury should indict. They realize that the prosecutor will make statements on the evidence.
>
> The comments alleged to be prejudicial were directed to the grand jury over a period of several days. In our perception, the prosecutor, by the use of these statements, was attempting to explain the law to the jurors.

Majority op., p. 238, 743 P.2d p. 467.

The majority finds the prosecutor's intent laudable, and that the grand jurors were wholly unaffected by it. In that manner, the majority, speaking for the highest court in Idaho, put the stamp of approval on a grand jury procedure wholly not in conformance with the statutes of Idaho, nor with the ABA Standards, and much like a coach of a football team, says: "Good going, deemed laudable, way to go in the future. Breaking the rules is okay if you are just over-zealous, and do not possess any intent to exert influence over the jurors."

Other courts have performed better, as reflected in a very recent case where the same issue was involved. This case, al-

though cited and quoted in the defendants' brief, apparently does not fit into the majority's glossing over concededly impermissible prosecutorial conduct. The name of the case is *United States v. Hogan*, 712 F.2d 757 (2d Cir.1983), heard before Lumbard, Cardamone, and Zomporo. The latter two names are new to me, but Judge Lumbard is well known as one of the most outstanding jurists in the United States. The opening paragraph of the opinion in that case should have been the opening paragraph of the opinion the Court should be issuing this date:

> On this appeal our principal concern is directed not at the jury trial where the accused were found guilty, but at earlier events—those that transpired before the grand jury which indicted the appellants. More than in other cases, the minutes of the grand jury proceedings in this case reveal what can happen when the prosecutor is too determined to obtain an indictment. The temptations to cut corners, to ignore the rights of an accused, and to toss fair play to the winds gain ascendancy. Prosecutors presenting cases to grand juries are firmly subject to due process limitations and bound by ethical considerations. While we fully recognize that a court's power to dismiss an indictment following a conviction at trial rarely is exercised, the prosecution so violated these limitations and obligations as to mandate this indictment's dismissal. Here prosecutorial zeal only illuminates anew the insight of the old adage that the ends cannot justify the means.

*Id.* at 757–58.

It would be difficult to say that the prosecutorial conduct in the *Hogan* case was more excessive than that which we see in this case. The difference in outcome is the difference in courts. Any person interested in getting grand jury proceedings on proper track will want to read *Hogan*.

The least, the very bottom of the barrel least, this Court might do this day would not be to look the other way, but, if a dismissal is not within its perception, then to award the defendants a preliminary

hearing, and call it a sanction—which, of course, it is not. But it is something.

## ADDENDUM

Since the foregoing was written, at the cost of considerable time and effort, the majority opinion, p. 234, 743 P.2d p. 463, has been rewritten to correctly observe that *Gerstein* involved, as I wrote, that the probable cause type of hearing there involved was to justify any pretrial detention. I appreciate the change.

ATTACHMENT I

222 LAWS OF THE STATE OF CALIFORNIA.

procuring, promoting, aiding in, or being accessory to the commission of the offence, or in abetting the parties therein concerned.

**For bigamy or incest.** § 91. When the offence either of bigamy or incest is committed in one county and the defendant is apprehended in another, the jurisdiction shall be in either county.

**For burglary, &c.** § 92. When property feloniously taken in one county by burglary, robbery, larceny, or embezzlement, has been brought into another, the jurisdiction of the offence shall be in either county. But if at any time before the conviction of the defendant in the latter he be indicted in the former country, the Sheriff of the latter county shall, upon demand, deliver him to the Sheriff of the former county, upon being served with a copy of the indictment, and upon receipt, endorsed thereon by the Sheriff of the former county, of the body of the offender, and shall on filing the copy of the indictment and receipt, be exonerated from all liability in respect to the custody of the offender.

**Against accessory.** § 93. In the case of an accessory before or after the fact in the commission of a public offence, the jurisdiction shall be in the county where the offence of the accessory was committed, notwithstanding the principal offence was committed in another county.

**Acquittal out of State, a bar to indictment.** § 94. When an act charged as a public offence is within the jurisdiction of another State or territory as well as of this State, a conviction or acquittal thereof in such State or territory shall be a bar to a prosecution therefor in this State.

**Acquittal in one county, a bar to an indictment.** § 95. When an offence is within the jurisdiction of two or more counties, a conviction or acquittal thereof in one county shall be a bar to a prosecution or indictment therefor in another.

## TITLE II.

*Of the time of commencing Criminal Actions.*

**No limitation for murder.** § 96. There shall be no limitation of time within which a prosecution for murder must be commenced. It may be commenced at any time after the death of the person killed.

**Limitation for felony.** § 97. An indictment for any other felony than murder must be found within three years after its commission.

**For misdemeanor** § 98. An indictment for any misdemeanor must be found within one year after its commission.

**Term of absence not reckoned.** § 99. If when the offence is committed the defendant be out of the State, the indictment may be found within the term herein limited after his coming within the State, and no time during which defendant is not an inhabitant of, or usually resident within the State, shall be a part of the limitation.

**When indictment found.** § 100. An indictment is found within the meaning of this Title, when it is duly presented by the Grand Jury in open court, and there received and filed.

## TITLE III.

*Of the Complaint and Proceedings thereon, to the Commitment inclusive.*

### CHAPTER I.

*The Complaint.*

§ 101. The complaint is the allegation made to a Magistrate that a person has been guilty of some designated offence.

<span style="float:right">Complaint defined.</span>

§ 102. A Magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offence.

<span style="float:right">Magistrate defined.</span>

§ 103. The following persons are Magistrates :

<span style="float:right">Who are magistrates</span>

 1st. The Justices of the Supreme Court ;

 2d. The District Judges ;

 3d. The County Judges ;

 4th. Justices of the Peace ;

 5th. The Recorders of Cities ; and,

 6th. The Mayors of Cities, upon whom are conferred by law the powers of Justices of the Peace.

### CHAPTER II.

*Warrant of Arrest.*

§ 104. When a complaint is laid before a Magistrate of the commission of a public offence, triable within the County, he must examine on oath the complainant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

<span style="float:right">Magistrate to examine complainant, &c., on oath.</span>

§ 105. The deposition must set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the offence and the guilt of the defendant.

<span style="float:right">Depositions, what to contain.</span>

§ 106. If the Magistrate be satisfied therefrom that the offence complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he shall issue a warrant of arrest.

<span style="float:right">Warrant to arrest defendant.</span>

§ 107. A warrant of arrest is an order in writing in the name of the people, signed by a Magistrate, commanding the arrest of the defendant, and may be substantially in the following form :

<span style="float:right">Warrant of arrest defined.</span>

<span style="float:right">Its form.</span>

 County of

The People of the State of California to any Sheriff, Constable, Marshal, Policeman in this State, or the County of.

a complaint upon oath having been this day laid before me, by A. B., that the crime of (designate it) has been committed, and accusing C. D. thereof, you are therefore commanded forthwith to arrest the above named C. D. and bring him before me at (naming the place) or in case of my absence or inability to act, before the nearest and most accessible Magistrate in this County.

 Dated at this day of 18

§ 108. The warrant must specify the name of the defendant, or if it be unknown to the Magistrate, the defendant may be designated therein by any name. It must also state the time of issuing it, and the County, City, or Town where it is issued, and be signed by the Magistrate with his name of office.

*Defendant's name, how stated.*

§ 109. The warrant must be directed to and executed by a Peace officer.

*Warrant, by whom to be executed.*

§ 110. Peace officers are Sheriffs of Counties, and Constables, Marshals, and Policemen, of cities and towns respectively.

*Peace officers enumerated.*

§ 111. If a warrant be issued by a Justice of the Supreme Court, District Judge, or County Judge, it may be directed generally to any Sheriff, Constable, Marshal, or Policeman, in this State, and may be executed by any of those officers to whom it may be delivered.

*Warrant, to whom directed.*

§ 112. If it be issued by any other Magistrate, it may be directed generally to any Sheriff, Constable, Marshal, or Policeman, in the County in which it is issued, and may be executed in that County, or if the defendant be in another County it may be executed therein upon the written direction of a Magistrate of that County, endorsed upon the warrant signed by him, with his name of office, and dated at the county, city, or town where it is made to the following effect. This warrant may be executed in the County of or as the case may [be].

*The like.*

*Endorsement on warrant.*

§ 113. The endorsement mentioned in the last section shall not however be made, unless the warrant be accompanied with a certificate of the County Clerk, under the seal of this Court, as to the official character of the Magistrate, or unless upon the oath of a creditable witness in writing, endorsed on or annexed to the warrant proving the handwriting of the Magistrate by whom it was issued. Upon such proof the Magistrate endorsing the warrant shall be exempted from the liability to a civil or criminal action, though it afterwards appear that the warrant was illegally or improperly issued.

*Endorsement, when it may be made.*

§ 114. If the offence charged in the warrant be a felony, the officer making the arrest must take the defendant before the Magistrate who issued the warrant, or some other Magistrate of the same county, as provided in section one hundred and eighteen.

*Proceedings on arrest for felony.*

§ 115. If the offence charged in the warrant be a misdemeanor, and the defendant be arrested in another county, the officer must, upon being so required by the defendant, bring him before a Magistrate of such county, who shall admit the defendant to bail.

*The like for misdemeanor.*

§ 116. On admitting the defendant to bail the Magistrate shall certify on the warrant the fact of his having done so, and deliver the warrant and recognizance to the officer having charge of the defendant. The officer shall forthwith discharge the defendant from arrest, and shall without delay deliver the warrant and recognizance to the Clerk of the Court at which the defendant is required to appear.

*Fact of admitting to bail to be certified on warrant, and defendant discharged.*

§ 117. If on the admission of the defendant to bail, as provided in

*Defendant to be*

section one hundred and fifteen, or if bail be not forthwith given, the officer shall take the defendant before the Magistrate who issued the warrant, or some other Magistrate of the same county, as provided by the next section.

*taken before magistrate.*

§ 118. When by the preceding sections of this chapter the defendant is required to be taken before the Magistrate who issued the warrant, he may, if the Magistrate be absent or unable to act, be taken before the nearest or most accessible Magistrate in the same county. The officer shall, at the same time, deliver to the Magistrate the warrant with his return, endorsed and subscribed by him.

*Before what magistrate to be taken.*

§ 119. The defendant must in all cases be taken before the Magistrate without unnecessary delay.

*To be without delay.*

§ 120. If the defendant be brought before a Magistrate in the same county other than the one who issued the warrant, the affidavits on which the warrant was granted, if the defendant insist upon an examination, shall be sent to such Magistrate, or if they cannot be procured, the prosecutor and his witnesses shall be summoned to give their testimony anew.

*When defendant demands a hearing.*

§ 121. When a complaint is laid before a Magistrate of the commission of a public offence, triable within some other county of this State, but showing that the defendant is in the county where the complaint is laid, the same proceedings shall be had as prescribed in this chapter, except that the warrant shall require the defendant to be taken before the nearest or most accessible Magistrate of the county in which the offence is triable, and the depositions of the complainant or prosecutor, and of the witnesses who may have been produced, shall be delivered by the Magistrate to the officer to whom the warrant is delivered.

*Proceedings on complaint for offence triable in another county*

§ 122. The officer who executes the warrant shall take the defendant before the nearest or most accessible Magistrate of the County in which the offence is triable, and shall deliver to such Magistrate the depositions and the warrant with his return endorsed thereon, and such Magistrate shall proceed in the same manner as upon a warrant issued by himself.

*The like.*

§ 123. If the offence charged in the warrant issued pursuant to section one hundred and twenty-one be a misdemeanor, the officer shall, upon being so required by the defendant, take him before a Magistrate of the County in which the said warrant is issued, who shall hold the defendant to bail, and immediately transmit the warrant, depositions, and recognizance, to the Clerk of the Court in which the defendant is required to appear.

*The like*

## CHAPTER III.
### Arrest by an Officer under warrant.

§ 124. Arrest is the taking of a person into custody that he may be held to answer for a public offence.

*Arrest defined.*

**By whom.** § 125. An arrest may be either :

 1st. By a peace officer under a warrant.

 2d. By a peace officer without a warrant; or,

 3d. By a private person.

**Who to aid arrest.** § 126. Every person shall aid an officer in the execution of a warrant, if the officer require his aid, and be present and acting in its execution.

**Arrest for felony.** § 127. If the offence charged be a felony, the arrest may be made on any day, and at any time of the day or night. If it be a misdemeanor, the arrest shall not be made at night, unless upon the direction of the Magistrate endorsed upon the warrant.

**Arrest, how made.** § 128. An arrest shall be made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer.

**No unnecessary restraint.** § 129. The defendant shall not be subjected to any more restraint than is necessary for his arrest and detention.

**Officer to state his authority, &c.** § 130. The officer shall inform the defendant that he acts under the authority of the warrant, and shall also show the warrant if required.

**Flight or resistance, after arrest.** § 131. If after notice of intention to arrest the defendant, he either flee or forcibly resists, the officer may use all necessary means to effect the arrest.

**Power of officer.** § 132. The officer may break open any outer or inner door or window of a dwelling-house, to execute the warrant, if, after notice of his authority and purpose, he be refused admittance.

**The like.** § 133. An officer may break open any outer or inner door or window of a dwelling-house, for the purpose of liberating a person who, having entered for the purpose of making an arrest, is detained therein, or when necessary for his own liberation.

## CHAPTER IV.

### *Arrest by an Officer without a warrant.*

**When officer may arrest without warrant.** § 134. A peace officer may, without a warrant, arrest a person :

 1st. For a public offence, committed or attempted in his presence.

 2d. When the person arrested has committed a felony, although not in his presence.

 3d. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

 4th. On a charge made upon a reasonable cause of the commission of a felony by the party arrested.

**Power to break doors, &c.** § 135. To make an arrest, as provided in the last section, the officer may break open any outer or inner door or window of a dwelling-house if, after notice of his office and purpose, he be refused admittance.

**May arrest at night.** § 136. He may also at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest, though it afterwards appear that a felony had not been committed.

§ 137. When arresting a person without a warrant the officer must inform him of his authority, and the cause of the arrest, except when he is in the actual commission of a public offence, or when he is pursued immediately after an escape. *Officer to state authority, &c.*

§ 138. He may take before a Magistrate any person, who, being engaged in a breach of the peace, is arrested by a bystander and delivered to him. *Persons arrested while breaking the peace.*

§ 139. When a public offence is committed in the presence of a Magistrate he may, by a verbal order, command any person to arrest the offender, and may thereupon proceed as if the offender had been brought before him on a warrant of arrest. *Offence committed in presence of magistrate.*

## CHAPTER V.

### *Arrest by a private Person.*

§ 140. A private person may arrest another: First, for a public offence committed or attempted in his presence. Second, when the person arrested has committed a felony, although not in his presence. Third, when a felony has been in fact committed and he has reasonable cause for believing the person arrested to have committed it. *When a private person may make an arrest.*

§ 141. He must before making the arrest inform the person to be arrested of the cause thereof, and require him to submit except when he is in the actual commission of the offence, or when he is arrested on pursuit immediately after its commission. *To state cause of arrest.*

§ 142. If the person to be arrested have committed a felony, and a private person, after notice of his intention to make the arrest, be refused admittance, he may break open any outer or inner door or window of a dwelling-house for the purpose of making the arrest. *May break doors, &c.*

§ 143. A private person who has arrested another for the commission of a public offence must, without unnecessary delay, take him before a Magistrate, or deliver him to a peace officer. *Duty, after making arrest.*

## CHAPTER VI.

### *Retaking after an Escape or Rescue.*

§ 144. If a person arrested escape or be rescued, the person from whose custody he escaped or was rescued, may immediately pursue and retake him at any time and at any place within the State. *Power of recapture.*

§ 145. To retake the person escaping or rescued the person pursuing may, after notice of his intention and refusal of admittance, break open any outer or inner door or window of a dwelling-house. *The like.*

## CHAPTER VII.

### *Examination of the Case and Discharge of the Defendant, or holding him to answer.*

§ 146. When the defendant is brought before the Magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offence, the Magistrate shall immediately inform him of *Defendant to be informed of the charge against him.*

the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and before any further proceedings are had.

**To be allowed time to procure counsel.** § 147. He shall also allow the defendant a reasonable time to send for counsel, and adjourn the examination for that purpose, and shall, upon the request of the defendant, require a peace officer to take a message to such counsel within the township or city as the defendant may name. The officers shall, without delay and without fee, perform that duty.

**Proceeding to hearing.** § 148. The Magistrate shall immediately after the appearance of counsel, or if defendant require the aid of counsel after waiting a reasonable time therefor, proceed to examine the case.

**Examination to be had at one session, unless, &c.** § 149. The examination must be completed at one session unless the Magistrate for good cause shown adjourn it. The adjournment cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant.

**Commitment for examination.** § 150. If an adjournment be had for any cause the Magistrate shall commit the defendant for examination, admit him to bail or discharge him from custody upon the deposit of money as provided in this Act, as security for his appearance at the time to which the examination is adjourned.

**Commitment, how made.** § 151. The commitment for examination shall be by an endorsement signed by the Magistrate on the warrant of arrest to the following effect :

"The within named, A. B., having been brought before me under this warrant, is committed for examination to the Sheriff of ————"
If the Sheriff be not present the defendant may be committed to the custody of a peace officer.

**Depositions to be read to the defendant.** § 152. At the examination the Magistrate shall in the first place read to the defendant the depositions of the witnesses examined on the taking **Subpœnas for witnesses.** of the information. He shall also issue subpœnas for any witnesses required by the prosecutor or the defendant, as provided in section five hundred and forty-eight.

**Witnesses, how to be examined.** § 153. The witnesses shall be examined in the presence of the defendant, and may be cross-examined in his behalf.

**Defendant to be informed of his rights.** § 154. When the examination of witnesses on the part of the people is closed, the Magistrate shall distinctly inform the defendant that it is his right to make a statement in relation to the charge against him (stating to him the nature thereof), that the statement is designed to enable him, if he see fit, to answer the charge and to explain the fact alleged against him, that he is at liberty to waive making a statement, and that his waiver cannot be used against him on the trial.

**Where defendant waives his right to make a statement.** § 155. If the defendant waive his right to make a statement, the Magistrate shall make a note thereof immediately following the depositions of the witnesses against the defendant, but the fact of his waiver shall not be used against the defendant on the trial.

**Proceedings** § 156. If the defendant choose to make a statement, the Magistrate

shall proceed to take the same in writing without oath, and shall put to the defendant the following questions only : " What is your name and age ? Where were you born ? Where do you reside, and how long have you resided there ? What is your business or profession ? Give any explanation you may think proper of the circumstances appearing in the testimony against you, and state any facts which you think will tend to your exculpation." <span style="float:right">where defendant makes a statement.</span>

§ 157. The answer of the defendant to each of the questions must be distinctly read to him as it is taken down. He may thereupon correct, or add to his answer, and it shall be corrected until it is made conformable to what he declares to be the truth. <span style="float:right">Defendant's answers to be read to him.</span>

§ 158. The statement must be reduced to writing by the Magistrate, or under his direction, and authenticated in the following form : <span style="float:right">Statement] to be reduced to writing.</span>

1st. It must set forth in detail that the defendant was informed of his rights as provided by section one hundred and fifty-four, and that after being so informed he made the statement.

2d. It must contain the questions put to him and his answers thereto, as provided in section one hundred and fifty-seven, and one hundred and fifty-six.

3d. It may be signed by the defendant, or he may refuse to sign it : but if he refuse to sign it his reason therefor must be stated as he gives it.

4th. It must be signed and certified by the Magistrate.

§ 159. After the waiver of the defendant to make a statement, or after he has made it, his witnesses, if he produce any, shall be sworn and examined. <span style="float:right">Defendant's witnesses.</span>

§ 160. The witnesses produced on the part either of the people or of the defendant, shall not be present at the examination of the defendant, and while a witness is under examination, the Magistrate may exclude all witnesses who have not been examined. He may also cause the witnesses to be kept separate and to be prevented from conversing with each other until they are all examined. <span style="float:right">Witnesses may be ordered out of court, &c.</span>

§ 161. The Magistrate shall also upon the request of the defendant exclude from the examination every person except his clerk, the prosecutor and his counsel, the Attorney General, the District Attorney of the County, the defendant and his counsel, and the officer having the defendant in custody. <span style="float:right">The like.</span>

§ 162. The testimony given by each witness must be reduced to writing as a deposition by the Magistrate, or under his direction : and <span style="float:right">Testimony to be reduced to writing.</span>

1st. It must contain the name of the witness, his place of residence, and his business, or profession.

2d. If required by the defendant, or by the District Attorney, or prosecutor, it must be taken by question and answer, and when so taken each answer must be distinctly read to the witness as it is taken down, and corrected or added to, until it is made conformable to what he declares to be the truth.

3d. If a question put be objected to on either side and overruled, or the witness decline answering it, that fact with the ground on which the question was overruled must be stated.

4th. It must be signed by the witness, or if he refuse to sign it, his reason for refusing must be stated as he gives it; and

5th. It must be signed and certified by the Magistrate.

**When defendant to be discharged.** § 163. After hearing the proofs and the statement of the defendant, if he have made one, if it appear either that a public offence has not been committed, or there is no sufficient cause to believe the defendant guilty thereof, the Magistrate shall order the defendant to be discharged, by an endorsement on the depositions and statement signed by him to the following effect: "There being no sufficient cause to believe the within named A. B. guilty of the offence within mentioned, I order him to be discharged."

**When to be held to answer** § 164. If, however, it appear from the examination that a public offence has been committed, and there is sufficient cause to believe the defendant guilty thereof, the Magistrate shall in like manner endorse on the depositions and statement an order signed by him to the following effect: "It appearing to me by the within depositions (and statement if any) that the offence therein mentioned (or any other offence according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within A. B. guilty thereof, I order that he be held to answer to the same."

**When offence not bailable.** § 165. If the offence be not bailable, the following words, or words to the same effect, shall be added to the endorsement, "and that he be committed to the Sheriff of the County of ——."

**When offence bailable.** § 166. If the offence be bailable and bail be taken by the Magistrate, the following words, or words to the same effect, shall be added to the endorsement, "and I have admitted him to bail to answer by the recognizance hereto annexed."

**Committal until bail given.** § 167. If the offence be bailable and the defendant be admitted to bail, but bail have not been taken, the following words, or words to the same effect, shall be added to the endorsement mentioned in section one hundred and sixty-four, "and that he be admitted to bail, in the sum of —— dollars, and be commited to the Sheriff of the County of ——, until he gives such bail."

**Commitment to be delivered to officer.** § 168. If the Magistrate order the defendant to be committed as provided in section one hundred and sixty-five and one hundred and sixty-seven, he shall make out a commitment signed by him with his name of office and deliver it, with the defendant, to the officer to whom he is committed, or if that officer be not present, to a peace officer who shall deliver the defendant into the proper custody, together with the commitment.

**Form of commitment** § 169. The commitment must be to the following effect, "County of —— (as the case may be). The people of the State of California to the Sheriff of the County of ——; An order having been this day made

by me that A. B. be held to answer upon a charge of (stating briefly, the nature of the offence, and as near as may be the time when, and the place where the same was committed) you are commanded to receive him into your custody, and detain him until he be legally discharged. Dated, this —— day of ——, 18—.

§ 170. On holding the defendant to answer, the Magistrate shall take from each of the material witnesses examined before him on the part of the people a written recognizance, to the effect that he will appear and testify at the court to which the depositions and statements are to be sent, or that he will forfeit the sum of Five Hundred Dollars. *Witnesses to be recognised.*

§ 171. Whenever the Magistrate shall be satisfied by proof on oath that there is reason to believe that any such witness will not fulfil his recognizances to appear and testify, unless security be required, he may order the witness to enter into a written recognizance with such sureties and in such sum as he may deem meet for his appearance as specified in the last section. *Witnesses to give security for attendance.*

§ 172. Infants and married women, who are material witnesses against the defendant, may in like manner be required to procure sureties for their appearance, as provided in the last section. *The like.*

§ 173. If a witness required to enter into recognizance to appear and testify either with or without sureties refuse compliance with the order for that purpose, the Magistrate shall commit him to prison until he comply or be legally discharged. *Or be committed.*

§ 174. When, however, it shall satisfactorily appear by the examination on oath of the witness, or any other person, that the witness is unable to procure sureties, he may be forthwith conditionally examined on behalf of the people; such examination shall be by question and answer, and shall be conducted in the same manner as the examination before a committing Magistrate is required by this act to be conducted, and the witness shall therefore be discharged. *Witnesses unable to give security for appearance, to be examined conditionally.*

§ 175. The last section shall not apply to the prosecutor or to an accomplice in the commission of the offence charged. *Exceptions.*

§ 176. When a Magistrate has discharged a defendant, or has held him to answer as provided in sections one hundred and sixty-four and one hundred and sixty-five, he shall return without delay to the Clerk of the Court at which the defendant as [is] required to appear, the warrant if any, the depositions, the statement of the defendant, if he have made one, and all recognizance of bail or for the appearance of witnesses taken by him. *Magistrate to return warrant, &c.*

## TITLE IV.

*Of Proceedings after Commitment and before Indictment.*

## CHAPTER I.

*Preliminary Proceedings.*

§ 177. All public offences prosecuted in the District Court and the *All prosecution*

to be by indictment.

Courts of Session, must be prosecuted by indictment, except as provided in the next section.

Accusations against certain officers.

§ 178. When the proceedings are had for the removal of District, County, or Township officers, they may be commenced by an accusation in writing, as provided in section seventy and eighty-three.

The like.

§ 179. All accusations against District, County, and Township officers, and all indictments must be found in the Court of Sessions.

## CHAPTER II.

### Formation of the Grand Jury.

Formation of Grand Jury. Challenge to jury.

§ 180. The formation of Grand Juries is prescribed by special statutes.

§ 181. A person held to answer to a charge for a public offence, may challenge the panel of the Grand Jury, or any individual Grand Juror.

Challenge to panel.

§ 182. A challenge to the panel may be interposed for one or more of the following causes only :

1st. That the requisite number of ballots was not drawn from the jury box of the County, as prescribed by law.

2d. The notice of the drawing of the Grand Jury was not given as prescribed by law.

3d. That the drawing was not had in the presence of the officers or officer designated by law.

Challenge to the polls.

§ 183. A challenge to an individual Grand Juror may be interposed for one or more of the following causes only :

1st. That he is a minor.

2d. That he is an alien.

3d. That he is insane.

4th. That he is prosecutor upon a charge against the defendant.

5th. That he is a witness on the part of the prosecution, and has been served with process or bound by an undertaking as such.

6th. That he has formed or expressed a decided opinion that the defendant is guilty of the offence for which he is held to answer.

Challenges, how made.

§ 184. The challenges mentioned in the three sections may be oral, and shall be entered upon the minutes, and tried by the Court in the same manner as challenges in the case of a Trial Jury, which are triable by the Court.

Decision on challenge.

§ 185. The Court shall allow or disallow the challenge, and the Clerk shall enter its decisions in the minutes.

Effect of allowing challenge.

§ 186. If a challenge to the panel be allowed, the Grand Jury are prohibited from inquiring into the charge against the defendant, by whom the challenge was interposed. If they should, notwithstanding, do so and find an indictment against him, the Court shall direct the indictment to be set aside.

The like.

§ 187. If a challenge to an individual Grand Juror be allowed, he shall not be present or take part in the consideration of the charge against the defendant who interposed the challenge or the deliberations of the Grand Jury thereon.

§ 188. The Grand Jury shall inform the Court of a violation of the last section, and it shall be punished by the Court as a contempt. *Violating preceding sections.*

§ 189. A person held to answer to a charge for a public offence, can take advantage of any objection to the panel or to an individual Grand Juror, in no other mode than that by challenge, as prescribed in the preceding section. *Objection to jury can only be by challenge.*

§ 190. From the persons summoned to serve as Grand Jurors, and appearing, the Court shall appoint a foreman. The Court shall also appoint a foreman, when the person already appointed is excused or discharged before the Grand Jury is dismissed. *Foreman of Grand Jury.*

§ 191. The following oath shall be administered to the foreman of the Grand Jury : "You, as foreman of the Grand Jury, shall diligently inquire into, and true presentment make, of all public offences against the people of this State, committed or triable within this County, of which you have or can obtain legal evidence. You shall present no person through malice, hatred, or ill-will, nor leave any unpresented through fear, favor, or affection, or for any reward, or the promise or hope thereof; but in all your presentments you shall present the truth, the whole truth, and nothing but the truth, according to the best of your skill and understanding, so help you God." *Oath to Foreman of Grand Jury.*

§ 192. The following oath shall be immediately thereupon administered to the other Grand Jurors present. "The same oath which your foreman has now taken before you on his part, you and each of you shall well and truly observe on your part, so help you God." *Oath to Grand Jurors.*

§ 193. The Grand Jury being empanelled and sworn, shall be charged by the Court. In doing so, the Court shall give them such information as it may deem proper, as to the nature of their duties, and any charges for public offences returned to the Court or likely to come before the Grand Jury. The Court need not, however, charge them respecting violations of any particular statute. *Grand Jury to be charged.*

§ 194. The Grand Jury shall then withdraw to a private room, and inquire into the offences cognizable by them. *To retire.*

§ 195. The Grand Jury on the completion of the business before them shall be discharged by the Court, but whether the business be completed or not, they shall be discharged by the final adjournment of the Court. *To be discharged.*

§ 196. If an offence be committed during the sitting of the Court, after the discharge of the Grand Jury, the Court may, in its discretion, direct an order to be entered that the Sheriff summon another Grand Jury. *When another Grand Jury may be summoned.*

§ 197. An order shall thereupon be made out by the Clerk and directed to the Sheriff, requiring him to summon twenty-four persons qualified to serve as Grand Jurors to appear forthwith, or at such time as may be appointed by the Court. *Order therefor.*

§ 198. The Sheriff shall execute the order, and return it with a list of the names of the persons summoned. *Sheriff to execute order.*

**List of jurors to be called.**

§ 199. At the time appointed the list shall be called over, and the names of those in attendance be written by the Clerk on separate ballots and put into a box, from which a Grand Jury shall be drawn.

**Grand Jury and trial jury, how formed.**

§ 200. At the first, and at all subsequent terms of the Court of Sessions, until an assessment roll in each county shall be made out and returned, so that a Jury list may be formed and a Jury drawn as required by law, the grand Jury and the Trial Jury shall be formed in the following manner.

**Order for jury.**

§ 201. On the first day of the term the Court shall, by an entry on the minutes, direct an order to be issued to the Sheriff of the county, to summon thirty-six persons from the citizens of the county, and not from the bystanders, to appear forthwith or at such time as may be named.

**Execution, and return of order.**

§ 202. The Clerk shall issue the order, and the Sheriff shall execute and return it at the time specified, with a list of the names of the persons so summoned. If he has been unable to summon the whole number in the time allowed, he shall return the order with the list of names summoned.

**Time for return enlarged.**

§ 203. The Court may, in its discretion, enlarge the time of the return, and direct the Sheriff to summon the whole number, or may proceed to empanel a Grand Jury from the number summoned.

**Jury to be empanelled.**

§ 204. Upon the return of the order, or upon the expiration of the further time allowed, the names of the persons summoned shall be called, and the Court shall proceed to empanel a Grand Jury and a Trial Jury in like manner as if such persons had been empanelled upon a regular drawing of a Jury.

# CHAPTER III.
### Powers and Duties of the Grand Jury.

**Power of Grand Jury.**

§ 205. The Grand Jury has the power, and it is their duty to inquire into all public offences committed or triable within the county, and to present them to the Court either by presentment or by indictment.

**Indictment defined.**

§ 206. An indictment is an accusation in writing, presented by the Grand Jury to a competent Court, charging a person with a public offence.

**Presentment defined.**

§ 207. A presentment is an informal statement in writing, by the Grand Jury, representing to the Court that a public offence has been committed, which is triable within the County, and that there is reasonable ground for believing that a particular individual named or described, has committed it.

**Oath to witnesses.**

§ 208. The foreman may administer an oath to any witness appearing before the Grand Jury.

**What evidence to be received.**

§ 209. In the investigation of a charge, for the purpose of either presentment or indictment, the Grand Jury shall receive no other evidence than such as is given by witnesses produced and sworn before

them, or furnished by legal documentary evidence, or the deposition of witnesses taken as provided in this Act.

§ 210. The Grand Jury shall receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence. *The like.*

§ 211. The Grand Jury is not bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced, and for that purpose may require the District Attorney to issue process for the witnesses. *Evidence for defendant, &c.*

§ 212. The Grand Jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial Jury. *When indictment should be found.*

§ 213. If a member of the Grand Jury know, or have reason to believe that a public offence has been committed, which is triable within the County, he must declare the same to his fellow Jurors, who shall thereupon investigate the same. *Information by Grand Juror.*

§ 214. The Grand Jury must inquire into the case of every person imprisoned in the jail of the County on a criminal charge and not indicted; into the condition and management of the public prisons within the County; and into the wilful and corrupt misconduct in office of public Officers of every description within the County. *Inquiries to be made by Grand Jury.*

§ 215. They are also entitled to free access, at all reasonable times, to the public prisons, and to the examination, without charge, of all public records within the County. *To have access to prisons.*

§ 216. The Grand Jury may, at all seasonable times, ask the advice of the Court, or any member thereof, and of the District Attorney. Unless his advice be asked, no member of the Court shall be permitted to be present during the sessions of the Grand Jury. The District Attorney of the County shall be allowed at all times to appear before the Grand Jury, on his request, for the purpose of giving information or advice relative to any matter cognizable by them; and may interrogate witnesses before them, when they shall deem it necessary. Except the District Attorney, no person shall be permitted to be present before the Grand Jury besides the witnesses actually under examination, and no person shall be permitted to be present during the expression of their opinions, or the giving of their votes upon any matter before them. *Advice of District Attorney* *Who may be present in Grand Jury room.*

§ 217. Every member of the Grand Jury shall keep secret whatever he himself or any other Grand Juror may have said, or in what manner he or any other Grand Juror may have voted on a matter before them. *Proceedings to be kept secret.*

§ 218. A member of the Grand Jury may, however, be required by any Court to disclose the testimony of a witness examined before the Grand Jury, for the purpose of ascertaining whether it is consistent with *When Grand Juror may be examined as a witness.*

that given by the witness before the Court, or to disclose the testimony given before them by any person, upon a charge against him for perjury in giving his testimony, or upon his trial therefor.

**Acts, &c., of Grand Jurors not to be questioned.** § 219. No Grand Juror shall be questioned for anything he may say, or any vote he may give in the Grand Jury, except for a perjury of which he may have been guilty in making an accusation or giving testimony to his fellow jurors.

## CHAPTER IV.

### Presentment and Proceedings thereon.

**Presentment, when found.** § 220. A presentment cannot be found without the concurrence of at least twelve Grand Jurors. When so formed it must be signed by the foreman.

**To be presented to Court.** § 221. The presentment when found must be presented by the foreman, in the presence of the Grand Jury, to the Court, and shall be filed by the Clerk.

**Fact of presentment not to be published.** § 222. No Grand Juror, District Attorney, Clerk, Judge, or other officer shall disclose the fact of a presentment having been made for a felony until the defendant shall have been arrested. But this prohibition shall not extend to disclosure by the issuing or in the execution of a warrant to arrest the defendant.

**Violation of last section, how punished.** § 223. A violation of the provisions of the last section shall be punished as a contempt and as a misdemeanor.

**Bench warrant may issue.** § 224. If the Court deem that the facts stated in the presentment constitute a public offence, triable within the county, it shall direct the Clerk to issue a bench warrant for the arrest of the defendant.

**The like.** § 225. The Clerk, on the application of the District Attorney, may accordingly, at any time after the order, whether the Court be sitting or not, issue a bench warrant under his signature and the Seal of the Court into one or more counties.

**Form of bench warrant.** § 226. The bench warrant upon presentment shall be substantially in the following form:

" County of

" The people of the State of California, to any Sheriff, Constable, Marshal, or Policeman in this State. A presentment having been made on the day of 18. to the Court of Sessions of the County of charging C. D. with the crime of (designating it generally) you are therefore commanded forthwith to arrest the above-named C. D. and take him before E. F. a Magistrate of this County, or in case of his absence or inability to act, before the nearest or most accessible Magistrate in this County. ——

" Given under my hand with the Seal of said Court affixed, this day of A.D., 18

" By order of the Court.

"G. H., CLERK."

§ 227. The bench warrant may be served in any county, and the <sub>How executed.</sub> officer serving it shall proceed thereon in all respects as upon a warrant of arrest on a complaint, except that when served in another county it need not be endorsed by a Magistrate of that county.

§ 228. The Magistrate, when the defendant is brought before him, <sub>Proceedings on arrest.</sub> shall proceed to examine the charges contained in the presentment, and hold the defendant to answer the same or discharge him therefrom, in the same manner in all respects as upon a warrant of arrest on complaint.·

## TITLE V.
### *Of the Indictment.*

## CHAPTER V.
### *Finding and Presentation of Indictment.*

§ 229. An indictment cannot be found without the concurrence of at <sub>Indictment, how found.</sub> least twelve Grand Jurors; when so found it shall be entitled " A true bill," and the endorsement shall be signed by the foreman of the Grand Jury.

§ 230. If twelve Grand Jurors do not concur in finding an indict- <sub>When deposition to be returned.</sub> ment against the defendant who has been held to answer, the deposition and statement, if any transmitted to them, shall be returned to the Court with an endorsement thereon signed by the foreman, to the effect that the charge is dismissed.

§ 231. The dismissal of the charge shall not, however, prevent the <sub>Effect of Grand Jury dismissing charge.</sub> charge from being again submitted to a Grand Jury, or as often as the Court shall so direct. But without such direction it shall not be again submitted.

§ 232. When an indictment is found the names of the witnesses <sub>Names of witnesses to be endorsed on indictment.</sub> examined before the Grand Jury shall be inserted at the foot of the indictment or endorsed thereon before it is presented to the Court.

§ 233. An indictment when found by the Grand Jury shall be pre- <sub>Indictments to be presented to Court.</sub> sented by their foreman in their presence to the Court, and shall be filed by the Clerk and remain in his office as a public record.

§ 234. When an indictment has been found against a defendant not <sub>Indictment against defendant not in custody.</sub> in custody, the same proceedings shall be had as are prescribed in section two hundred and sixty-eight, both inclusive, against a defendant who fails to appear for arraignment.

## CHAPTER II.
### *Form of Indictment.*

§ 235. All the forms of pleading in criminal actions, and the rules <sub>Forms of pleadings.</sub> by which the sufficiency of pleadings is to be determined, shall be those which are prescribed by this act.

§ 236. The first pleading on the part of the people is the indictment. <sub>Indictment.</sub>

§ 237. The indictment shall contain the title of the action specifying <sub>What to contain</sub>

the name of the Court to which the indictment is presented, and the names of the parties; a statement of the acts constituting the offence in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

**Form.** § 238. It may be substantially in the following form:

" The People of the State of California against A. B. in the Court of Sessions of the County of term A. D. 18
A. B. is accused by the Grand Jury of the County of
by this indictment, of the crime of (giving its legal appellation, such as murder, arson, manslaughter, or the like, as designating it as felony or misdemeanor) committed as follows:

The said A. B., on the day of A. D. 18
at the County of (stating the act or omission constituting the offence, in the manner prescribed in this chapter, according to the forms mentioned in the next section where they are applicable.)

§ 239. The indictment must be direct and contain as it regards:
1st. The party charged.
2d. The offence charged.
8d. The particular circumstances of the offence charged, when they are necessary to constitute a complete offence..

**Error in name of defendant.** § 240. When a defendant is indicted by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it shall be inserted in the subsequent proceedings, referring to the fact of his being indicted by the name mentioned in the indictment.

**Only one offence to be charged.** § 241. The indictment shall charge but one offence, but it may set forth that offence in different forms under different counts.

**Time of committing offence not material to be stated.** § 242. The precise time at which it was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding of the same, except when the time is a material ingredient of the offence.

**What errors not deemed material.** § 243. When an offence involves the commission, or an attempt to commit private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, shall not be deemed material.

**Construction of indictments.** § 244. The words used in an indictment shall be construed in the usual acceptance in common language, except such words and phrases as are defined by law, which are to be construed according to their legal meaning.

**Indictment need not follow words of statute.** § 245. Words used in a statute to define a public offence, need not be strictly pursued in the indictment, but other words conveying the same meaning may be used.

**When indictment sufficient.** § 246. The indictment shall be sufficient if it can be understood therefrom:
1st. That it is entitled in a Court having authority to receive it, though the name of the Court be not actually set forth.

2d. That it was found by a Grand Jury of the County in which the Court was held.

3d. That the defendant is named, or if his name cannot be discovered, that he be described by a fictitious name, with a statement that he has refused to discover his real name.

4th. That the offence was committed at some place within the jurisdiction of the Court, except where, as provided by sections eighty-five to ninety-three, both inclusive, and as in the case of treason, the act, though done without the local jurisdiction of the County, is triable therein.

5th. That the offence was committed at some time prior to the time of finding the indictment.

6th. That the act or omission charged as the offence is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

7th. That the act or omission charged as the offence is stated with such a degree of certainty as to enable the Court to pronounce judgment upon a conviction according to the right of the case.

§ 247. No indictment shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matters of form which shall not tend to the prejudice of the defendant. *Indictment not to be deemed insufficient.*

§ 248. Neither presumption of law, nor matters of which judicial notice is taken, need be stated in an indictment. *What need not be stated.*

§ 249. In pleading a judgment or other determination of, or proceeding before a Court or officer of special jurisdiction, the facts conferring jurisdiction need not be stated, but it may be stated that the judgment or determination was duly made or the proceedings duly had before such Court or officer. The facts constituting the jurisdiction, however, must be established on the trial. *Judgment, &c., how pleaded.*

§ 250. In pleading a private statute or a right derived therefrom, it shall be sufficient to refer to the Statute by its title and the day of its passage, and the Court thereupon shall take judicial notice thereof. *Private statute how pleaded.*

§ 251. An indictment for libel need not set forth any extrinsic facts, for the purpose of showing the application to the party libelled of the defamatory matter on which the indictment is founded, but it shall be sufficient to state generally, that the same was published concerning him, and the fact that it was so published must be established on the trial. *Indictment, for libel.*

§ 252. When an instrument which is the subject of an indictment for forgery has been destroyed or withheld by the act or the procurement of the defendant, and the fact of such destruction or withholding is alleged in the indictment and established on the trial, the misdescription of the instrument shall be deemed immaterial. *Misdescription of forged instrument, when immaterial.*

§ 253. In an indictment for perjury or subornation of perjury it shall *Indictment, for perjury.*

be sufficient to set forth the substance of the controversy, or matter in respect to which the offence was committed, and in what Court and before whom the oath alleged to be false was taken, and that the Court or the person before whom it was taken had authority to administer the same with proper allegations to the falsity of the matter on which the perjury is assigned; but the indictment need not set forth the pleadings, record, or proceedings with which the oath is connected, nor the commission, or the authority of the Court or person before whom the perjury was committed.

**Several defendants.** § 254. Upon an indictment against several defendants, any one or more may be convicted or acquitted.

**No distinction between principal and accessory.** § 255. No distinction shall exist between an accessory before the fact and a principal, or between principals in the first and second degree, in cases of felony, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offence, or aid and abet in its commission, though not present, shall hereafter be indicted, tried, and punished as principals.

**Accessory after fact.** § 256. An accessory after the fact to a commission of a felony, may be indicted and punished, though the principal felon may be neither tried nor indicted.

**Compounding offence.** § 257. A person may be indicted for having, with the knowledge of the commission of a public offence, taken money or property of another, or a gratuity or a reward or an agreement or understanding express or implied to compound or conceal the offence, or to abstain from a prosecution therefor, or to withhold any evidence thereof, though the persons guilty of the original offence have not been indicted or tried.

## CHAPTER III.

### Arraignment of the Defendant.

**Defendant to be arraigned.** § 258. When the indictment is filed the defendant shall be arraigned thereon, before the Court in which it is found, except in the cases mentioned in sections two hundred and seventy-nine and two hundred and eighty.

**When defendant must appear personally.** § 259. If the indictment be for a felony the defendant must be personally present, but if for a misdemeanor his personal appearance is unnecessary, and he may appear upon the arraignment by counsel.

**Defendant how arraigned.** § 260. When his personal appearance is necessary, if he be in custody the Court may direct the officer in whose custody he is to bring him before it to be arraigned, and the officer shall do so accordingly.

**Defendant failing to appear.** § 261. If the defendant has been discharged on bail, or has deposited money instead thereof, and do not appear to be arraigned, when his personal attendance is necessary, the Court in addition to the forfeiture of the recognizance, or of the money deposited, may direct the Clerk to issue a search warrant for his arrest.

**Warrant for his arrest.** § 262. The Clerk, on the application of the District Attorney, may

accordingly at any time after the order, whether the Court be sitting or not, issue a bench warrant into one or more Counties.

§ 263. The bench warrant upon the indictment shall, if the offence be a felony, be substantially in the following form: *Form of warrant.*

"County of ——, The People of the State of California to any Sheriff, Constable, Marshal, or Policeman in this State, An indictment having been found on the —— day of —— A. D. 18— in the Court of Sessions, in the County of ——, charging C. D. with the crime of —— (designating it generally). You are therefore commanded forthwith to arrest the above named C. D., and bring him before that Court to answer the indictment; or if the Court have adjourned for the term, that you deliver him into the custody of the Sheriff of the County of ——. Given under my hand with the seal of the Court affixed, this the —— day of ——, A. D. 18— Seal. By order of the Court. E. F. Clerk."

§ 264. The defendant, if the offence be punishable with death, when arrested under the warrant, shall be held in custody by the Sheriff of the County in which the indictment is found, unless admitted to bail, upon an examination upon a writ of Habeas Corpus. *Proceedings on arrest of defendant.*

§ 265. If the offence be not capital, the bench warrant shall be in a similar form, adding to the body thereof a direction to the following effect, " Or if he require it, that you take him before any Magistrate in that County, or in the County in which you arrested him, that he may give bail to answer to the indictment." *The like.*

§ 266. If the offence charged be not capital, the Court upon directing the bench warrant to issue shall fix the amount of bail, and an endorsement shall be made upon the bench warrant signed by the Clerk, to the following effect: "The defendant is to be admitted to bail in the sum of —— dollars." *The like.*

§ 267. The bench warrant may be served in any County, in the same manner as a warrant of arrest, except that when served in another County it need not be endorsed by the Magistrate of that County. *Warrant, how served.*

§ 268. If the defendant be brought before a Magistrate of another County for the purpose of giving bail, the Magistrate shall proceed in all respects thereto in the same manner as if the defendant had been brought before him upon a warrant of arrest, and the same proceedings may be had thereon, as provided in sections one hundred and fourteen to one hundred and seventeen, both inclusive. *Bail, in another county.*

§ 269. When the indictment is for a felony, and the defendant before the finding thereof has given bail for his appearance to answer the charge, the Court to which the indictment is presented, may order the defendant to be committed to actual custody, unless he give bail in an increased amount, to be specified in the order. *Defendant, on bail, may be ordered into custody.*

§ 270. If such order be made and the defendant be present, he shall be forthwith committed accordingly. If he be not present, a bench *Defendant to be committed.*

280

warrant shall be issued and proceeded upon in the manner provided for in this chapter.

**Defendant to be asked if he desires counsel.**

§ 271. If the defendant appear for arraignment without counsel, he shall be informed by the Court that it is his right to have counsel before being arraigned, and shall be asked if he desire the aid of counsel.

**Arraignment how made.**

§ 272. The arraignment must be made by the Court, or by the Clerk or District Attorney under its direction, and consists in reading the indictment to the defendant and delivering to him a copy thereof, and of the endorsements thereon, including the list of witnesses endorsed on it, and asking him whether he pleads guilty or not guilty to the indictment.

**Defendant to declare his name.**

§ 273. When the defendant is arraigned he shall be informed that if the name by which he is indicted be not his true name he must then declare his true name, or be proceeded against by the name in the indictment.

**No name given.**

§ 274. If he give no other name, the Court may proceed accordingly.

**Entry of name on minutes.**

§ 275. If he allege that another name is his true name, the Court shall direct an entry thereof in the minutes of the arraignment, and the subsequent proceedings on the indictment may be had against him by that name, referring also to the name by which he is indicted.

**Time to answer.**

§ 276. If on the arraignment the defendant require it, he shall be allowed until the next day, or such further time may be allowed him as the Court may deem reasonable, to answer the indictment.

**Answer, &c.**

§ 277. If the defendant do not require time as provided in the last section, or if he do, then on the next day, or at such future day as the Court may have allowed him, he may answer to the arraignment; either move the Court to set aside the indictment, or may demur or plead thereto.

## CHAPTER IV.

### Setting aside the Indictment.

**When indictment will be set aside.**

§ 278. The indictment shall be set aside by the Court in which the defendant is arraigned, and upon his motion in either of the following cases :

1st. Where it is not found, endorsed, and presented as prescribed in this Act.

2d. Where the names of the witnesses examined before the Grand Jury, or whose depositions may have been read before them, are not inserted at the foot of the indictment, or endorsed thereon.

3d. Where any person is permitted to be present during the Session of the Grand Jury, while the charge embraced in the indictment is under consideration, except as provided in section two hundred and sixteen.

**The like.**

§ 279. When the defendant had not been held to answer before the finding of the indictment, he may move to set it aside, on any ground which would have been good ground for challenge, either to the panel or to any individual Grand Juror.

§ 280. If the motion to set aside the indictment be not made, the <span style="float:right">When waive</span> defendant shall be precluded from afterwards taking the objections mentioned in the two last sections.

§ 281. The motion shall be heard when it is made, unless for good <span style="float:right">Hearing of motion to set aside.</span> cause the Court shall postpone the hearing to another time.

§ 282. If the motion be denied, the defendant must immediately <span style="float:right">Motion denied.</span> answer the indictment, either by demurring or pleading thereto.

§ 283. If the motion be granted, the Court shall order that the <span style="float:right">Motion granted.</span> defendant, if in custody, be discharged therefrom ; or if admitted to bail, that his bail be exonerated ; or if he have deposited money instead of bail, that the same shall be refunded to him, unless it direct that the case be submitted to the same or another Grand Jury.

§ 284. If the Court direct that the case be re-submitted, the defend- <span style="float:right">Case re-submitted.</span> ant, if already in custody, shall so remain, unless he be admitted to bail, or if already admitted to bail, or money have been deposited instead thereof, the bail or money shall be answerable for the appearance of the defendant to answer a new indictment.

§ 285. Unless a new indictment be found before the next Grand Jury <span style="float:right">Order for defendant's discharge.</span> of the County is discharged, the Court shall, on the discharge of such Grand Jury, make the order prescribed in section two hundred and eighty-three.

§ 286. An order to set aside an indictment, as provided in this <span style="float:right">Indictment set aside, no bar to future prosecution.</span> chapter, shall be no bar to a future prosecution for the same offence.

## CHAPTER V.

### *Demurrer.*

§ 287. The only pleading on the part of the defendant is either a <span style="float:right">Pleadings by defendant.</span> demurrer or a plea.

§ 288. Both the demurrer and the plea must be put in open Court <span style="float:right">Demurrer and plea, when to be put in.</span> either at the time of the arraignment, or at such other time as may be allowed to the defendant for that purpose.

§ 289. The defendant may demur to the indictment when it shall <span style="float:right">When defendant may demur.</span> appear upon the face thereof, either — First: That the Grand Jury by which it was found had no legal authority to inquire into the offence charged, by reason of its not being within the legal jurisdiction of the County. Second : That it does not substantially conform to the requirement of sections two hundred and thirty-seven and two hundred and thirty-eight. Third : That more than one offence has been charged in the indictment. Fourth: That the facts stated do not constitute a public offence. Fifth : That the indictment contains any matter which, if true, would constitute a legal justification or excuse of the offence charged, or other legal bar to the prosecution.

§ 290. The demurrer must be in writing, signed either by the <span style="float:right">Demurrer to be in writing. What to specify.</span> defendant or his council, and filed. It must distinctly specify the grounds of objection to the indictment, or it shall be disregarded.

§ 291. Upon the demurrer being filed, the argument of the objec- <span style="float:right">Argument on demurrer.</span>

tions presented thereby shall be had either immediately, or at such time as the Court may appoint.

**Judgment on demurrer.** § 292. Upon considering. the demurrer, the Court shall give judgment either allowing or disallowing it, and an order to that effect shall be entered on the minutes.

**Effect of allowance of demurrer.** § 293. If the demurrer be allowed, the judgment shall be final upon the indictment demurred to, and shall be a bar to another prosecution of the same offence, unless the Court being of opinion that the objection on which the demurrer is allowed may be avoided in a new indictment, direct the case to be re-submitted to the same or another Grand Jury.

**If case not re-submitted.** § 294. If the Court do not direct the case to be re-submitted, the defendant, if in custody, shall be discharged, or if admitted to bail, his bail shall be exonerated, or if he has deposited money instead of bail, the money shall be refunded to him.

**Where case re-submitted.** § 295. If the Court direct that the case be re-submitted anew, the same proceedings must be had thereon as are prescribed in sections two hundred and eighty-four and two hundred and eighty-five.

**Effect of disallowing demurrer.** § 296. If the demurrer be disallowed, the Court shall permit the defendant at his election to plead which he must do forthwith, or at such time as the Court may allow ; if he do not plead, judgment shall be pronounced against him.

**Objections, how must be taken.** § 297. When the objections mentioned in section two hundred and eighty-nine appear upon the face of the indictment, they can only be taken advantage of by demurrer, except that the objection to the jurisdiction of the Court over the subject of the indictment, or that the facts stated, do not constitute a public offence, may be taken at the trial under the plea of not guilty and in arrest of judgment.

## CHAPTER VI.

### *Pleas.*

**Kinds of pleas.** § 298. There are three kinds of pleas to an indictment. , A plea of — First : GUILTY. ' Second : NOT GUILTY. Third : A former judgment of conviction or acquittal of the offence charged, which may be pleaded, either with or without the plea of " not guilty."

**Plea to be oral.** § 299. Every plea shall be oral, and shall be entered upon the minutes of the Court.

**Form of entry of plea.** § 300. The plea shall be entered in substantially the following form : First : if the defendant plead guilty, " the defendant pleads that he is guilty of the offence charged in this indictment." Second : If he plead not guilty, " The defendant pleads that he is not guilty of the offence charged in this indictment." Third : If he plead a former acquittal or conviction, " the defendant pleads that he has already been convicted (or acquitted as the case may be) of the offences charged in this indictment by the judgment of the Court of —— (naming it) rendered at —— (naming the place) on the —— day of ——."

§ 301. A plea of guilty can in no place be put in, except by the defen- *Plea of guilty.* dant himself in open court, unless upon indictment against a corporation, in which case it may be put by counsel.

§ 302. The Court may at any time before judgment, upon a plea of *Withdrawing. plea.* guilty, permit it to be withdrawn, and a plea of not guilty substituted.

§ 303. The plea of not guilty shall be deemed a denial of every *Effect of plea of not guilty.* material allegation in the indictment.

§ 304. All matters of fact tending to establish a defence other than *What may be given in* that specified in the third subdivision of section two hundred and ninety- *evidence,* eight, may be given in evidence under the plea of not guilty. *under plea of not guilty.*

§ 305. If the defendant were formerly acquitted on the ground of a *What not a former* variance between the indictment and the proof, or upon an objection to *acquittal,* the form or substance of the indictment, it shall not be deemed an acquittal of the same offence.

§ 306. When, however, he shall have been acquitted on the merits, *What a former* he shall be deemed acquitted of the same offence, notwithstanding any *acquittal.* defect in form or substance in the indictment on which he was acquitted.

§ 307. When the defendant shall have been convicted or acquitted *Effect of former conviction* upon an indictment, the conviction or acquittal shall be a bar to another *or acquittal.* indictment for the offence charged in the former, or for an attempt to commit the same, or for an offence necessarily included therein, of which he might have been convicted under that indictment, as provided in section four hundred and twenty-four.

§ 308. If the defendant refuse to answer the indictment by demurrer *Defendant standing mute,* or plea, a plea of not guilty shall be entered.

## CHAPTER VII.

*Removal of certain indictments from the Court of Sessions to the District Court.*

§ 309. When an indictment is found in the Court of Sessions, for *Certain indictments* murder, manslaughter, or arson, it shall be transmitted by the Clerk to *to be transmitted* the District Court, sitting in the county for trial, except where the indict- *to District Court.* ment is found against a person holding the office of District Judge.

§ 310. All indictments found against a member of the Court of Ses- *The like.* sions, or against any Justice of the Peace, shall also be transmitted to the District Court sitting in the county for trial.

§ 311. Upon the filing with the District Court of an indictment *Proceedings* transmitted from the Court of Quarter Sessions, the defendant shall be *thereon.* arraigned and the same proceedings had in the District Court as are required by this act upon indictments tried in the Court of Sessions.

## CHAPTER VIII.

*Removal of the action to another County.*

§ 312. A criminal action prosecuted by indictment may be removed *Criminal action may be moved to* from the Court in which it is pending, on the application of the defen- *another county.*

dant, on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending.

**Application, how made.** § 313. The application must be made in the open Court, and in writing verified by the affidavit of the defendant, and a copy must be served on the District Attorney at least one day before the application is made to the Court.

**Court may make order.** § 314. If the Court be satisfied that the representation of the defendant is true, an order shall be made for the removal of the action to the Court of Sessions of a County which is free from the like objection, or if the indictment has been transmitted to the District Court of the County from the Court of Sessions, then the order for removal shall be made to the District Court of a county which is free from the like objection.

**Order to be entered on minutes.** § 315. The order of removal shall be entered on the minutes, and the clerk shall immediately make out and transmit a certified copy of the entry with a certified copy of the record, pleadings, and proceedings in the action, including the recognizances for the appearance of the defendant, and of the witnesses, to the Court to which the action is removed.

**Order, what to direct.** § 316. If the defendant be in custody the order shall direct his removal by the sheriff of the county where he is imprisoned to the custody of the sheriff of the county to which the action is removed, and he shall be forthwith removed accordingly.

**Proceedings, after removal.** § 317. The Court to which the action is removed shall proceed to trial and judgment therein, as if the action had been commenced in such Court. If it be necessary to have any of the original pleadings or other papers before such Court, the Court from which the action is removed shall at any time on application of the District Attorney, or the defendant, order such papers or pleadings to be transmitted by the clerk, a certified copy thereof being retained.

## TITLE VI.
### Of the Proceedings on the indictment before Trial.

### CHAPTER I.
#### The Mode of Trial.

**When issue of fact arises.** § 318. An issue of fact arises:

 1st. Upon a plea of not guilty; or,

 2d. Upon a plea of a former conviction or acquittal of the same offence.

**Issue of fact, how tried.** § 319. An issue of fact must be tried by a jury of the county in which the indictment was found, unless the action be removed by order of the court into some other county.

**Appearance on trial.** § 320. If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant; but if for a felony he must be personally present.

## CHAPTER II.

*Formation of the Trial Jury and the Criminal Docket.*

§ 321. Trial Juries for criminal actions shall be formed in the same manner as trial juries for civil actions. <span style="float:right">Trial juries, how formed.</span>

§ 322. The clerk shall keep a docket of all the criminal actions pending in the Court, in which he shall enter each indictment according to the date of the filing, specifying opposite the title of each action whether it be for a felony or a misdemeanor, and whether the defendant be in custody or on bail. <span style="float:right">Docket of criminal actions.</span>

§ 323. The issues on the docket shall be disposed of in the following order, unless upon the application of either party for good cause shown by affidavit, and upon two days' notice to the opposite party with a copy of the affidavit in support of the application, the Court shall direct an indictment to be tried out of its order: <span style="float:right">Issues on docket, how disposed of.</span>

1st. Indictment for felony when the defendant is in custody:

2d. Indictments for misdemeanor when the defendant is in custody.

3d. Indictments for felony when the defendant is on bail; and,

4th. Indictments for misdemeanor when the defendant is on bail.

§ 324. After his plea, the defendant shall have at least two days to prepare for his trial, if he require it. <span style="float:right">Time to prepare for trial.</span>

## CHAPTER IV.

*Postponement of Trial.*

§ 325. When an indictment is called for trial the Court may, upon sufficient cause shown by affidavit, direct the trial to be postponed to another day of the same term or the next term. <span style="float:right">Postponement of trial.</span>

## CHAPTER V.

*Challenging the Jury.*

§ 326. A challenge is an objection made to the trial jurors, and is of two kinds: <span style="float:right">Challenge defined.</span>

1st. To the panel:

2d. To an individual juror.

§ 327. When several defendants are tried together, they are not allowed to sever their challenges, but must join therein. <span style="float:right">Defendants must join in their challenges.</span>

§ 328. The panel is a list of jurors returned by a sheriff to serve at a particular Court or for the trial of a particular cause. <span style="float:right">Panel defined.</span>

§ 329. A challenge to the panel is an objection made to all the jurors returned, and may be taken by either party. <span style="float:right">Challenge to the panel.</span>

§ 330. A challenge to the panel can only be founded on a material departure from the forms prescribed by statute in respect to the drawing and return of the jury, or an intentional omission of the sheriff to summon one or more of the jurors drawn. <span style="float:right">On what founded.</span>

§ 331. A challenge to a panel must be taken before a juror is sworn, <span style="float:right">When to be taken.</span>

will and consent of such negro, mulatto, Indian or colored person, shall be, in any county in which the offence is committed or into or out of which the person upon whom the the offence was committed may, in the prosecution of the offence, have been brought, or in which an act shall be done by the offender in instigating, procuring, promoting, aiding in or being accessory to the commission of the offence, or in abetting the parties therein concerned.

SEC. 88. When the offence of bigamy or incest is committed in one county, and the defendant is apprehended in another, the jurisdiction shall be in either county.

SEC. 89. When property, feloniously taken in one county, by burglary, robbery, larceny, or embezzlement, has been brought into another, the jurisdiction of the offence shall be in either county. But if, at any time before the conviction of the defendant in the latter, he be indicted in the former county, the sheriff of the latter county shall, upon demand, deliver him to the sheriff of the former county, upon being served with a copy of the indictment, and upon receipt, indorsed thereon by the sheriff of the former county, of the body of the offender, and shall, on filing the copy of the indictment and receipt, be exonerated from all liability in respect to the custody of the offender.

SEC. 90. In the case of an accessory before or after the fact in the commission of a public offence, the jurisdiction shall be in the county where the offence of the accessory was committed, notwithstanding the principal offence was committed in another county.

SEC. 91. When an act charged as a public offence is within the jurisdiction of another state or territory, as well as of this territory, a conviction or acquittal thereof in such territory or state shall be a bar to the prosecution or indictment therefor in this territory.

SEC. 92. When an offence is within the jurisdiction of two or more counties, a conviction or acquittal thereof in one county shall be a bar to a prosecution or indictment therefor in another.

## II.—TIME OF COMMENCING CRIMINAL ACTIONS.

SEC. 93. Murder, no limit to prosecution.
 94. Felony, three years.

Sec. 95. Misdemeanor, one year.
 96. Time of absence of defendant from territory not included.
 97. Indictment, when deemed found.

SEC. 93. There shall be no limitation of time within which a prosecution for murder must be commenced. It may be commenced at any time after the death of the person killed.

SEC. 94. An indictment for any felony other than mur must be found within three years after its commission.

SEC. 95. An indictment for any misdemeanor must found within one year after its commission.

SEC. 96. If, when the offence is committed, the defenc be out of the territory, the indictment may be found wit the term herein limited after his coming within the territ and no time during which the defendant is not an inhabi of, or usually resident within the territory, shall be a par the limitation.

SEC. 97. An indictment is found, within the meaning this title, when it is duly presented by the grand jury, in o court, and there received and filed.

SEC. 98. In offences committed before the passage of act, indictments may be found at any time within the lim tion herein above provided, and the time of limitation s commence after the passage of this act.

## III.—COMPLAINT, AND PROCEEDINGS THEREON TO THE COMMITMENT, INCLUSIVE.

Sec. 99. Complaint, magistrate.
 101. Who are magistrates.
 102. Magistrate to examine complaint on oath.
 103. Deposition what to set forth.
 104. Warrant of arrest, when to issue, form of.
 106. Name of defendant, date and signature of warrant.
 107. How executed, peace officers.
 109. Warrant, to whom directed.
 110. When executed in another county, how indorsed.
 111. Proceedings on arrest for felony, same for misdemeanor.
 113. Bail to be certified on warrant.
 114. Defendant, when to be taken before magistrate.
 117. Same, other than the one who issued the warrant.
 118. Proceedings on complaint for offence, triable in other county.

Sec. 119. Duty of officer.
121. Arrest, by whom to be made.
124. At what time to be made, how made.
127. Officer to state authority.
128. Resistance of defendant, power of officers.
131. When may be made without warrant.
132. May break open doors, etc., at night.
134. Officer to state authority, bystanders.
136. Offence committed in presence of magistrate.
137. Private persons may make, to state cause.
139. May force entrance, etc.
140. Duty after arrest, escape and recapture.
143. Proceedings after arrest.
144. Time to procure counsel, examination.
146. Commitment of, form of.
149. Depositions to be read, subpœna.
150. How witness examined.
151. Right of defendant to make statement, right to waiver.
153. Proceedings when defendant choses to make statement, questions.
154. Answers, statement to be in writing, authentication of form of.
156. Defendant's witnesses, examination of, separately.
158. May be conducted with closed doors.
159. When defendant discharged, form of.
160. Order to hold defendant to answer, form of.
161. Offence not bailable, form of order.
162. Offences bailable, form of order.
164. Commitment, form of.
166. Witness to be recognized to appear.
169. Failing to recognize to be committed.
170. Conditional examination of witness unable to give security for appearance·
172. Magistrate to make return to court.

SEC. 99. The complaint is the allegation made to a magistrate that a person has been guilty of some public offence.

SEC. 100. A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offence.

SEC. 101. The following persons are magistrates: First. The justices of the supreme court. Second. The probate judges. Third. Justices of the peace, and others upon whom are conferred by law the powers of justices of the peace.

SEC. 102. When a complaint is laid before a magistrate, of the commission of a public offence, triable within the county, he must examine, on oath, the complainant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

SEC. 103. The deposition must set forth the facts stated by

the prosecutor and his witnesses, tending to establish the commission of the offence, and the guilt of the defendant.

SEC. 104. If the magistrate be satisfied therefrom that the offence complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he shall issue a warrant of arrest.

SEC. 105. A warrant of arrest is an order in writing in the name of the people of the United States and territory of Idaho, signed by a magistrate, commanding the arrest of the defendant, and may be substantially in the following form:

County of ——.

The people of the United States and territory of Idaho, to any sheriff, constable, or marshal, or policeman, in this territory or in the county of —— : A complaint, upon oath, has been this day laid before me, by A. B., that the crime of (designate it) has been committed, and accusing C. D. therof; you are therefore commanded forthwith to arrest the above named C. D.. and bring him before me, at (naming the place) or in case of my absence or inability to act, before the nearest or most accessible magistrate in this county.

Dated at ——, this —— day of ——, 18—.

SEC. 106. The warrant must specify the name of the defendant; if it be unknown to the magistrate, the defendant may be designated therein by any name. It must also state the time of issuing it, and the county, city, or town, where it was issued, and be signed by the magistrate, with his name of office.

SEC. 107. The warrant must be directed to, and executed by a peace officer.

SEC. 108. Peace officers are sheriffs of counties, and constables, marshals, and policemen of cities and towns respectively.

SEC. 109. If a warrant be issued by a justice of the supreme court, or probate judge, it may be directed generally to any sheriff, constable, marshal or policeman in this territory, and may be executed by any of those officers to whom it may be delivered.

SEC. 110. If it be issued by any other magistrate, it may be directed generally to any sheriff, constable, marshal or policeman in the county in which it is issued, and may be executed in that county; or if the defendant be in another county, it may be executed therein, upon the written direction of a magistrate of that county, indorsed upon the warrant, signed by him, with his name of office, and dated at the county, city, or town where it is made, to the following effect: "This

warrant may be executed in the county of ———," or as the case may be.

Sec. 111. If the offence charged in the warrant be a felony, the officer making the arrest must take the defendant before the magistrate who issued the warrant, or some other magistrate of the same county, as provided in section one hundred and fifteen.

Sec. 112. If the offence charged in the warrant be a misdemeanor, and the defendant be arrested in another county, the officer must, upon being so required by the defendant, bring him before a magistrate of such county, who shall admit the defendant to bail.

Sec. 113. On admitting the defendant to bail, the magistrate shall certify on the warrant the fact of his having done so, and deliver the warrant and recognizance to the officer having charge of the defendant. The officer shall forthwith discharge the defendant from arrest, and shall, without delay, deliver the warrant and recognizance to the clerk of the court at which the defendant is required to appear.

Sec. 114. If, on the admission of the defendant to bail, as provided in section one hundred and twelve, or if bail be not forthwith given, the officer shall take the defendant before the magistrate who issued the warrant, or some other magistrate of the same county, as provided in the next section.

Sec. 115. When by the preceding sections of this act, the defendant is required to be taken before the magistrate who issued the warrant, he may, if the magistrate be absent or unable to act, be taken before the nearest or most accessible magistrate in the same county. The officer shall, at the same time, deliver to the magistrate the warrant, with his return, endorsed and subscribed by him.

Sec. 116. The defendant must, in all cases, be taken before the magistrate without unnecessary delay.

Sec. 117. If the defendant be brought before a magistrate, in the same county, other than the one who issued the warrant, the affidavits on which the warrant was granted, if the defendant insist upon an examination, shall be sent to the magistrate, if they cannot be procured, the prosecutor and his witnesses shall be summoned to give their testimony anew.

Sec. 118. When a complaint is laid before the magistrate, of the commission of a public offence, triable within some other county of this territory, but showing that the defendant is in the county where the complaint is laid, the same proceedings shall be had as prescribed in this act, except that the warrant shall require the defendant to be taken before the nearest or most accessible magistrate of the county in which the offence

is triable, and the depositions of the complainant or prosecutor, and of the witnesses who may have been produced shall be delivered by the magistrate to the officer to whom the warrant is delivered.

SEC. 119. The officer who executes the warrant shall take the defendant before the nearest or most accessible magistrate of the county in which the offence is triable, and shall deliver to such magistrate the depositions and the warrant, with his return endorsed thereon; and such magistrate shall proceed in the same manner as upon a warrant issued by himself.

SEC. 120. If the offence charged in the warrant, issued pursuant to section one hundred and eighteen, be a misdemeanor, the officer shall, upon being so required by the defendant, take him before a magistrate of the county in which the said warrant is issued, who shall admit the defendant to bail, and immediately transmit the warrant, depositions and recognizance to the clerk of the court in which the defendant is required to appear.

SEC. 121. Arrest is the taking of a person into custody, that he may be held to answer for a public offence.

SEC. 122. An arrest may be either: First. By a peace officer, under a warrant. Second. By a peace officer, without a warrant; or, Third. By a private person.

SEC. 123. Every person shall aid an officer in the execution of a warrant, if the officer require his aid, and be present, and acting in its execution.

SEC. 124. If the offence charged be a felony, the arrest may be made on any day and at any time of the day or night. If it be a misdemeanor, the arrest shall not be made at night, unless upon the direction of the magistrate, endorsed upon the warrant.

SEC. 125. An arrest shall be made by an actual restraint of the person of the defendant, or by his submission to the custody of the officers.

SEC. 126. The defendant shall not be subjected to any more restraint than is necessary for his arrest and detention.

SEC. 127. The officer shall inform the defendant that he acts under the authority of the warrant, and shall also show the warrant, if required.

SEC. 128. If, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest.

SEC. 129. The officer may break open any outer or inner door or window of a dwelling-house to execute the warrant, if, after notice of his authority and purpose, he be refused admittance.

Sec. 130. An officer may break open any outer or inner door or window of a dwelling-house, for the purpose of liberating a person who, having entered for the purpose of making an arrest, is detained therein, or when necessary for his own liberation.

Sec. 131. A peace officer may, without a warrant, arrest a person : First. For a public offence, committed or attempted in his presence. Second. Where the person arrested has committed a felony, although not in his presence. Third. Where a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. Fourth. On a charge made upon a reasonable cause, of the commission of a felony by the party arrested.

Sec. 132. To make an arrest, as provided in the last section, the officer may break open any outer or inner door or window of a dwelling-house, if, after notice of his office and purpose, he be refused admittance.

Sec. 133. He may also, at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest, though it afterward appear that a felony had not been committed.

Sec. 134. When arresting a person without a warrant, the officer must inform him of his authority, and the cause of the arrest, except when he is in the actual commission of a public offence, or when he is pursued immediately after an escape.

Sec. 135. He may take before a magistrate any person, who, being engaged in a breach of the peace, is arrested by a by-stander and delivered to him.

Sec. 136. When a public offence is committed in the presence of a magistrate, he may, by a verbal order, command any person to arrest the offender, and may thereupon proceed as if the offender had been brought before him on a warrant of arrest.

Sec. 137. A private person may arrest another : First. For a public offence committed or attempted in his presence. Second. When the person arrested has committed a felony, although not in his pesence. Third. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

Sec. 138. He must, before making the arrest, inform the person to be arrested of the cause thereof, and require him to submit, except when he is in the actual commission of the offence, or when he is arrested on pursuit, immediately after its commission.

Sec. 139. If the person to be arrested have committed a felony, and a private person, after notice of his intention to

make the arrest, be refused admittance, he may break open any outer or inner door or window of a dwelling house, for the purpose of making the arrest.

Sec. 140. A private person who has arrested another for the commission of a public offence, must, without unnecessary delay, take him before a magistrate, or deliver him to a peace officer.

Sec. 141. If a person arrested escape, or be rescued, the person from whose custody he escaped or was rescued, may immediately pursue and retake him at any time and in any place within the territory.

Sec. 142. To retake the person escaping or rescued, the person pursuing may, after notice of his intention, and refusal of admittance, break open any outer or inner door or window of a dwelling house.

Sec. 143. When the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offence, the magistrate shall immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, and before any further proceedings are had.

Sec. 144. He shall also allow the defendant a reasonable time to send for counsel, and adjourn the examination for that purpose, and shall, upon the request of the defendant, require a peace officer to take a message to such counsel, within the township or city, as the defendant may name. The officer shall, without delay and without fee, perform that duty.

Sec. 145. The magistrate shall, immediately after the appearance of counsel, or if defendant require the aid of counsel after waiting a reasonable time therefor, proceed to examine the case.

Sec. 146. The examination must be completed at one session, unless the magistrate, for good cause shown, adjourn it. The adjournment cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant.

Sec. 147. If an adjournment be had for any cause, the magistrate shall commit the defendant for examination, admit him to bail, or discharge him from custody upon the deposit of money, as provided in this act, as security for his appearance at the time to which the examination is adjourned.

Sec. 148. The committee for examination shall be by an indorsement signed by the magistrate on the warrant of arrest, to the following effect: "The within named A. B., having been brought before me under this warrant, is committed for examination to the sheriff of the county of ——." If the

sheriff be not present, the defendant may be committed to the custody of a peace officer.

SEC. 149. At the examination the magistrate shall, in the first place, read to the defendant the depositions of the witnesses examined on the taking of the information. He shall issue subpoenas for any witnesses required by the prosecutor or the defendant as provided in section five hundred and thirty-five.

SEC. 150. The witnesses shall be examined in the presence of the defendant, and may be cross-examined in his behalf.

SEC. 151. When the examination of witnesses on the part of the people is closed, the magistrate shall distinctly inform the defendant that it is his right to make a statement in relation to the charge against him (stating to him the nature thereof); that the statement is designed to enable him if he see fit, to answer the charge and to explain the facts alleged against him; that he is at liberty to waive making a statement, and that his waiver cannot be used against him on the trial.

SEC. 152. If the defendant waive his right to make a statement, the magistrate shall make note thereof immediately following the depositions of the witnesses against the defendant, but the fact of his waiver shall not be used against the defendant on the trial.

SEC. 153. If the defendant choose to make a statement, the magistrate shall proceed to take the same in writing, without oath, and shall put to the defendant the following questions only: What is your name and age? Where were you born? Where do you reside, and how long have you resided there? What is your business or profession? Give any explantion you may think proper of the circumstances appearing in the testimony against you, and state any facts which you think will tend to your exculpation.

SEC. 154. The answer of the defendant to each of the questions must be distinctly read to him as it is taken down. He may thereupon correct or add to his answer, and it shall be corrected until it is made conformable to what he declares to be the truth.

SEC. 155. The statement must be reduced to writing by the magistrate, or under his direction, and authenticated in the following form: First. It must set forth in detail that the defendant was informed of his rights, as provided by section one hundred and fifty-one, and that, after being so informed, he made the statement. Second. It must contain the questions put to him and his answers thereto, as provided in sections one hundred and fifty-three and one hundred and fifty-four.

**Third.** It may be signed by the defendant, or he may refuse to sign it; but if he refuse to sign it, his reason therefor must be stated as he gives it. **Fourth.** It must be signed and certified by the magistrate.

SEC. 156. After the waiver of the defendant to make a statement, or after he has made it, his witnesses, if he produce any, shall be sworn and examined.

SEC. 157. The witnesses produced on the part either of the people or of the defendant, shall not be present at the examination of the defendant; and while a witness is under examination, the magistrate may exclude all witnesses who have not been examined. He may also cause the witnesses to be kept separate and to be prevented from conversing with each other until they are all examined.

SEC. 158. The magistrate shall also, upon the request of the defendant, exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney-general, the district attorney of the county, the defendant and his counsel and the officer having the defendant in custody.

SEC. 159. After hearing the proofs and the statement of the defendant, if he have made one, if it appear either that a public offence has not been committed, or there is no sufficient cause to believe the defendant guilty therof, the magistrate shall order the defendant to be discharged, by an endorsement on the depositions and statement signed by him, to the following effect: "There being no sufficient cause to believe the within named A. B. guilty of the offence within mentioned I ordered him to be discharged."

SEC. 160. If, however, it appears from the examination that a public offence has been committed, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate shall, in like manner, endorse on the depositions and statement an order signed by him to the following effect: "It appearing to me, by the within depositions and statement (if any), that the offence therein mentioned, (or any other offence according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A. B. guilty therof, I order that he be held to answer the same."

SEC. 161. If the offence be not bailable, the following words, or words to the same effect, shall be added to the indorsement: "And that he be committed to the sheriff of the county of ———."

SEC. 162. If the offence be bailable, and bail be taken by the magistrate, the following words, or words to the same effect, shall be added to the indorsement: "And I have

admitted him to bail to answer by the recognizance hereto annexed."

SEC. 163. If the offence be bailable, and the defendant be admitted to bail, but bail have not been taken, the following words, or words to the same effect, shall be added to the indorsement mentioned in section one hundred and sixty: " And that he be admitted to bail in the sum of —— dollars, and be committed to the sheriff of the county of ——, until he gives such bail."

SEC. 164. If the magistrate order the defendant to be committed, as provided in sections one hundred and sixty-one and one hundred and sixty-three, he shall make out a commitment signed by him, with his name of office, and deliver it, with the defendant, to the officer to whom he is committed; or, if that officer be not present, to a peace officer, who shall deliver the defendant into the proper custody, together with the commitment.

SEC. 165. The commitment must be to the following effect: " County of ——, (as the case may be). The people of the United States and territory of Idaho, to the sheriff of the county of ——: An order having been this day made by me, that A. B. be held to answer upon a charge of (stating briefly the nature of the offence, and as near as may be, the time when, and the place where the same was committed), you are commanded to receive him into your custody, and to detain him until he be legally discharged. Dated this —— day of ——, 18—."

SEC. 166. On holding the defendant to answer, the magistrate shall take from each of the material witnesses examined before him on the part of the people, a written recognizance, to the effect that he will appear and testify at the court to which the depositions and statements are to be sent, or that he will forfeit the sum of five hundred dollars.

SEC. 167. Whenever the magistrate shall be satisfied by proof, on oath, that there is reason to believe that any such witness will not fulfil his recognizance to appear and testify, unless security be required, he may order the witness to enter into a written recognizance, with such sureties and in such sum as he may deem meet, for his appearance, as specified in the last section.

SEC. 168. Infants and married women, who are material witnesses against the defendant, may in like manner be required to procure sureties for their appearance, as provided in the last section.

SEC. 169. If a witness required to enter into a recognizance to appear and testify, either with or without sure-

ties, refuse compliance with the order for that purpose, the magistrate shall commit him to prison until he comply or be legally discharged.

SEC. 170. When, however, it shall satisfactorily appear by the examination, on oath, of the witness, or any other person, that the witness is unable to procure sureties, he may be forthwith conditionally examined on behalf of the people; such examination shall be by question and answer, and shall be conducted in the same manner as the examination before a committing magistrate is required by this act to be conducted, and the witness shall thereupon be discharged.

SEC. 171. The last section shall not apply to the prosecutor, or to an accomplice in the commission of the offence charged.

SEC. 172. When a magistrate has discharged a defendant, or has held him to answer, as provided in sections one hundred and sixty, and one hundred and sixty-one, he shall return, without delay, to the clerk of the court at which the defendant is required to appear, the warrant, if any, the depositions, the statement of the defendant, if he has made one, and all recognizances of bail or for the appearance of witnesses taken by him.

## IV.—PROCEEDINGS AFTER COMMITMENT AND BEFORE INDICTMENT.

Sec. 173. Prosecution by indictment, accusation, where found.
176. Grand jury, formation of, challenge to.
178. To the panel, to the polls, how made and tried.
181. Decision on, effect of challenge to panel.
183. Effect of challenge to the polls.
184. Violation, a complaint.
185. Objection to jury only by challenge.
186. Foreman of grand jury, oath of.
188. Oath of others, charge to grand jury.
190. Sittings, discharge of.
192. Another grand jury, order for.
194. Duty of sheriff, how drawn.
196. Trial jurors, how formed.
201. Grand jury, powers and duties of.
202. Indictment, presentment.
204. Oath to witness, evidence to be received.
207. For defendant.

298

Sec. 209. Indictment when to be found, information by member of.
210. Inquiries to be made.
211. To have free access to prisons, etc.
212. Advice to, who allowed to be present.
213. Proceedings to be kept secret.
214. When may be witness.
215. Not to be questioned relative to facts.
216. Presentment, how found, not to be disclosed.
219. Disclosure, how punished.
220. Bench warrants, when to issue, form of.
223. How executed, proceedings on arrest.

SEC. 173. All public offences prosecuted in the district court must be prosecuted by indictment, except as provided in the next section.

SEC. 174. Where the proceedings are had for the removal of district, county, or township officers, they may be commenced by an accusation in writing, as provided in sections sixty-seven and eighty.

SEC. 175. All accusations against district, county, and township officers, and all indictments, must be found in the district court.

SEC. 176. The formation of grand juries is prescribed by special statutes.

SEC. 177. A challenge may be taken to the panel of the grand jury, or to any individual grand juror, in the cases hereinafter prescribed, by the people or by the defendant.

SEC. 178. A challenge to the panel may be interposed for one or more of the following causes: First. That the requisite number of ballots was not drawn from the jury box of the county as prescribed by law. Second. That the notice of the drawing of the grand jury was not given as prescribed by law. Third. That the drawing was not had in the presence of the officers designated by law.

SEC. 179. A challenge to an individual grand juror may be interposed for one or more of the following causes only: First. That he is a minor. Second. That he is an alien. Third. That he is insane. Fourth. That he is the prosecutor upon a charge against the defendant. Fifth. That he is a witness on the part of the prosecution, and has been served with process or bound by an undertaking as such. Sixth. That he has formed or expressed a decided opinion that the defendant is guilty of the offence for which he is held to answer.

SEC. 180. The challenges mentioned in the last three sections may be oral, and shall be entered upon the minutes, and tried by the court in the same manner as chal-

lenges in the case of a trial jury which are triable by the court.

SEC. 181. The court shall allow or disallow the challenge, and the clerk shall enter its decisions in the minutes.

SEC. 182. If a challenge to the panel be allowed, the grand jury are prohibited from inquiring into the charge against the defendant by whom the challenge was interposed. If they should, notwithstanding, do so, and find an indictment against him, the court shall direct the indictment to be set aside.

SEC. 183. If a challenge to an individual grand juror be allowed, he shall not be present at, or take part in, the consideration of the charge against the defendant who interposed the challenge, or the deliberations of the grand jury thereon.

SEC. 184. The grand jury shall inform the court of a violation of the last section, and it shall be punished by the court as a contempt.

SEC. 185. A person held to answer to a charge for a public offence, can take advantage of any objection to the panel or to an individual grand juror, in no other mode than that by challenge, as prescribed in the preceding section.

SEC. 186. From the persons summoned to serve as grand jurors, and appearing, the court shall appoint a foreman. The court shall also appoint a foreman when the person already appointed is discharged, or excused, before the grand jury is dismissed.

SEC. 187. The following oath shall be administered to the foreman of the grand jury: "You, as foreman of the grand jury, shall diligently inquire into, and true presentment make, of all public offences against the people of the United States in the Territory of Idaho, committed or triable within the jurisdiction of this court, of which you shall have or can obtain legal evidence. You shall present no person through malice, hatred, or ill will, nor leave any unpresented through fear, favor, or affection, or for any reward, or the promise or hope thereof; but in all your presentments you shall present the truth, the whole truth, and nothing but the truth, according to the best of your skill and understanding, so help you God."

SEC. 188. The following oath shall be immediately thereupon administered to the other grand jurors present: "The same oath which your foreman has now taken before you on his part, you, and each of you, shall well and truly observe on your part, so help you God."

SEC. 189. The grand jury being empaneled and sworn, shall be charged by the court. In doing so, the court shall

give them such information as it may deem proper, as to the nature of their duties, and any charges for public offences returned to the court, or likely to come before the grand jury. The court need not, however, charge them respecting violations of any particular statute.

SEC. 190. The grand jury shall then retire to a private room, and inquire into the offences cognizable by them.

SEC. 191. The grand jury, on the completion of the business before them, shall be discharged by the court; but whether the business be completed or not, they shall be discharged by the final adjournment of the court.

SEC. 192. If an offence be committed during the sitting of the court, after the discharge of the grand jury, the court may, in its discretion, direct an order to be entered that the sheriff summon another grand jury.

SEC. 193. An order shall thereupon be made out by the clerk, and directed to the sheriff, requiring him to summon twenty-four persons, qualified to serve as grand jurors, to appear forthwith, or at such time as may be named by the court.

SEC. 194. The sheriff shall execute the order, and return it with a list of the names of the persons summoned.

SEC. 195. At the time appointed the list shall be called over, and the names of those in attendance be written by the clerk on separate ballots, and put into a box, from which a grand jury shall be drawn.

SEC. 196. For the first, and for all subsequent terms of the district court, until an assessment roll in each county be made out and returned, so that a jury list may be formed and a jury drawn as required by law, the grand jury and the trial jury shall be formed in the following manner:

SEC. 197. On or before the first day of the term, the judge shall, by an order to be entered on the minutes, direct the sheriff of the county to summon thirty-six persons from the citizens of the county, to appear forthwith, or at such time as may be named in said order.

SEC. 198. The clerk shall issue the summons, and the sheriff shall execute and return it at the time specified, with a list of the names of the persons so summoned. If he has been unable to summon the whole number in the time allowed, he shall return the summons with the list of the names summoned.

SEC. 199. The court may, in its discretion, enlarge the time of the return, and direct the sheriff to summon the whole number, or may proceed to empanel a grand jury from the number summoned.

Sec. 200. Upon the return of the summons, or upon the expiration of the further time allowed, the names of the persons summoned shall be called, and the court shall proceed to empanel a grand jury and a trial jury, in like manner as if such persons had been empaneled upon a regular drawing of a jury.

Sec. 201. The grand jury has the power, and it is their duty, to inquire into all public offences committed or triable within the jurisdiction of the court, and to present them to the court, either by presentment or indictment.

Sec. 202. An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offence.

Sec. 203. A presentment is an informal statement in writing, by the grand jury, representing to the court that a public offence has been committed, which is triable within the county, and that there is reasonable grounds for believing that a particular individual, named or described, has committed it.

Sec. 204. The foreman may administer an oath to any witness appearing before the grand jury.

Sec. 205. In the investigation of a charge, for the purpose of either presentment or indictment, the grand jury shall receive no other evidence than such as is given by witnesses produced and sworn before them, or furnished by legal documentary evidence, or the deposition of witnesses taken as provided in this act.

Sec. 206. The grand jury shall receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence.

Sec. 207. The grand jury is not bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses.

Sec. 208. The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury.

Sec. 209. If a member of the grand jury knows, or have reason to believe, that a public offence has been committed, which is triable within the jurisdiction of the court, he must declare the same to his fellow-jurors, who shall thereupon investigate the same.

Sec. 210. The grand jury must inquire into the case of

every person imprisoned in the jail of the county, on a criminal charge, and not indicted; into the condition and management of the public prisons within the county; and into the wilful and corrupt misconduct in office of public officers of every description within the county.

Sec. 211. They are also entitled to free access, at all reasonable times, to the public prisons, and to the examinations, without charge, of all public records within the county.

Sec. 212. The grand jury may, at all reasonable times, ask the advice of the court, or any member thereof, and of the district attorney. Unless his advice be asked, no member of the court shall be permitted to be present during the session of the grand jury. The district attorney shall be allowed, at all times, to appear before the grand jury, on his request, for the purpose of giving information or advice relative to any matter cognizable by them, and may interrogate witnesses before them, when they shall deem it necessary. Except the district attorney, no person shall be permitted to be present before the grand jury, besides the witnesses actually under examination; and no person shall be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them.

Sec. 213. Every member of the grand jury shall keep secret whatever he himself, or any other grand juror, may have said, or in what manner he, or any other grand juror may have voted on a matter before them.

Sec. 214. A member of the grand jury may, however, be required by the court to disclose the testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before them by any person, upon a charge against him for perjury in giving his testimony, or upon his trial therefor.

Sec. 215. No grand juror shall be questioned for anything he may say, or any vote he may give in the grand jury, relative to a matter legally pending before the jury, except for a perjury of which he may have been guilty, in making an accusation or giving testimony to his fellow-jurors.

Sec. 216. A presentment cannot be found without the concurrence of at least twelve grand jurors. When so found, it must be signed by the foreman.

Sec. 217. The presentment, when found, must be presented by the foreman, in the presence of the grand jury, to the court, and shall be filed by the clerk.

Sec. 218. No grand juror, district attorney, clerk, judge or other officer shall disclose the fact of a presentment having

been made for a felony, until the defendant shall have been arrested. But this prohibition shall not extend to disclosure by the issuing or in the execution of a warrant to arrest the defendant.

SEC. 219. A violation of the provisions of the last section shall be punishable as a contempt.

SEC. 220. If the court deem that the facts stated in the presentment constitute a public offence, triable within the county, it shall direct the clerk to issue a bench warrant for the arrest of the defendant.

SEC. 221. The clerk, on the application of the district attorney, may accordingly, at any time after the order, whether the court be sitting or not, issue a bench warrant, under his signature and the seal of the court, into one or more counties.

SEC. 222. The bench warrant, upon presentment, shall be substantially in the following form:

County of ——.

The people of the United States, of the territory of Idaho, to any sheriff, constable, marshal or policeman in this territory: A presentment having been made, on the —— day of ——, 18——, to the district court of the district of ———, charging C. D. with the crime of ——— (designating it generally); you are therefore commanded forthwith to arrest the above named C. D., and take him before E. F., a magistrate of this county, or, in case of his absence or inability to act, before the nearest or most accessible magistrate in this county.

Given under my hand, with the seal of the said court affixed, this —— day of ——, A. D. 18——. By order of the court. G. H., Clerk.

SEC. 223. The bench warrant may be served in any county, and the officer serving it shall proceed thereon in all respects as upon a warrant of arrest on a complaint, except that when served in another county it need not be indorsed by a magistrate of that county.

SEC. 224. The magistrate; when the defendant is brought before him, shall proceed to examine the charge contained in the presentment, and hold the defendant to answer the same, or discharge him therefrom, in the same manner in all respects, as upon a warrant of arrest on complaint.

## V.—THE INDICTMENT.

SEC. 225. How found, dismissal of charge.

**304**

SEC. 227. Effect of, names of witnesses to be inserted.
229. To be presented to court, against defendant not in custody.
231. Pleadings, indictment, what to contain, form of.
236. Error in name of defendant.
237. To charge only one offence.
238. Manner of stating time of offence.
239. Erroneous allegations not material.
240. Construction of indictment.
241. Statute words not strictly followed.
242. Indictment, when sufficient.
243. Matters of form not vitiated, what need not be stated.
245. Judgment how pleaded, private statute, how pleaded.
247. Indictment for libel, what to set forth.
248. Misdescription of forged instruments when immaterial.
249. Perjury, indictment for, what to set forth.
250. Indictment against several defendants.
251. No distinction between principal and accessory.
252. Accessory after the fact.
253. Compounding offence, indictment for.
254. When defendant to be arraigned, when must appear personally.
256, How arraigned, defendant failing to appear.
258. Warrant for arrest, form of, proceedings on.
261. Form of warrant when offence not capital.
263. Warrant how served, bail in other county.
265. Defendant may be ordered in custody for further bail.
266. Defendant to be committed, counsel for defendant.
268. Arraignment, how made, defendant to declare true name.
270. Other name, entry of on minutes, time to answer.
273. Defendant may answer, demur or plead.
274. Indictment, setting aside.
276. Motion not made no objection, hearing of.
278. Motion denied, defendant to answer.
279. Motion granted, defendant to be discharged.
280. Case resubmitted, proceedings, order for discharge.
282. Indictment set aside no bar to future prosecution.
283. Pleadings by defendant.
284. Demurrer and plea, when to put in, for what cause, form of, etc.
287. Hearing of, judgment on demurrer.
288. Effect of allowance of demurrer.
290. Case not resubmitted, effect of, submitted, proceedings.
292. Effect of disallowing demurrer, objections to, how taken advantage of.
294. Pleas, kinds of, to be oral, entry of, form of.
597. Plea of guilty, how put in, may be withdrawn.
299. Plea of not guilty, effects of, evidence.
301. Former acquittal, what deemed, effect of, or conviction.
304. Defendant mute, plea of not guilty.
305. When criminal action may be removed to other county.
306. Application, how, when and to what court order made.
308. Order entered on minutes, copy of record transmitted.
309. Order to direct removal of defendant, proceedings after removal.

Sec. 311. Issue of fact arises, how tried, jury trial, how formed.
314. Docket of action, how kept, issues on docket how disposed of.
316. Time to prepare for trial, postponement of.
318. Challenging jury by several defendants, panel.
321. To the panel, on what founded, when and how to be taken.
324. Exception to, trial of.
326. Exception may be withdrawn, amending challenge.
327. Denial and trial of, witnesses and trial of.
329. An account of bias of officer summoning.
330. Effect of allowing, challenge to the polls, kinds of.
333. When to be taken, peremtory, how taken.
335. Number of, for cause, general cause of.
338. Particular causes of, challenge for implied bias.
340. Exemption not cause for, how taken.
342. Exceptions to and proceedings thereon, trial of.
344. Triers, who to be, oath of, juror challenged may be witness.
347. Other testimony, court to determine law and facts.
349. Instruction to triers, decision final.
351. Order of taking challenges, final peremptory challenge.

SEC. 225. An indictment cannot be found without the concurrence of at least twelve grand jurors; when so found, it shall be indorsed "a true bill," and the indorsement shall be signed by the foreman of the grand jury.

SEC. 226. If twelve grand jurors do not concur in finding an indictment against a defendant who has been held to answer, the deposition and statement, if any, transmitted to them, shall be returned to the court, with an indorsement thereon, signed by the foreman, to the effect that the charge is dismissed.

SEC. 227. The dismissal of the charge shall not, however, prevent the same charge from being again submitted to a grand jury, or as often as the court shall so direct. But without such direction, it shall not be again submitted.

SEC. 228. When an indictment is found, the names of the witnesses examined before the grand jury shall be inserted at the foot of the indictment, or indorsed thereon, before it is presented to the court.

SEC. 229. An indictment, when found by the grand jury, shall be presented by their foreman, in their presence, to the court, and shall be filed with the clerk, and remain in his office as a public record.

SEC. 230. When an indictment has been found against a defendant not in custody, the same proceedings shall be had as are prescribed in sections two hundred and fifty-seven and two hundred and sixty-four, both inclusive, against a defendant who fails to appear for arraignment.

SEC. 231. All the forms of pleading in criminal actions,

and the rules by which the sufficiency of pleadings is to be determined, shall be those which are prescribed by this act.

SEC. 232. The first pleading on the part of the people is the indictment.

SEC. 233. The indictment shall contain the title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties; a statement of the acts constituting the offence, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

SEC. 234. It may be substantially in the following form:

The people of the United States, of the territory of Idaho, against A. B., in the district court of the judicial district in the county of ———, —— term, A. D., 18—. A. B., is accused by the grand jury of the county of ———, by this indictment, of the crime of (giving its legal appellation such as murder, arson, manslaughter, or the like, or designating it as felony or misdemeanor), committed as follows:

The said A. B., on the —— day of ———, A. D., 18—, at the county of ———, (stating the act or omission constituting the offence, in the manner prescribed in this act, according to the forms mentioned in the next section, where they are applicable)."

SEC. 235. The indictment must be direct, and contain as it regards: First. The party charged. Second. The offence charged, when they are necessary to constitute a complete offence.

SEC. 236. When a defendant is indicted by a fictitious or erroneous name, and in any stage of the proceeding his true name is discovered, it shall be inserted in the subsequent proceedings, referring to the fact of his being indicted by the name mentioned in the indictment.

SEC. 237. The indictment shall charge but one offence, but it may set forth that offence in different forms under different courts.

SEC. 238. The precise time at which it was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding of the same, except when the time is a material ingredient of the offence.

SEC. 239. When an offence involves the commission, or an attempt to commit private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured shall not be deemed material.

SEC. 240. The words used in an indictment shall be construed in the usual acceptance in the common language, except

such words and phrases as are defined by law, which are to be construed according to their legal meaning.

SEC. 241. Words used in a statute to define a public offence, need not be strictly pursued in the indictment, but other words conveying the same meaning may be used.

SEC. 242. The indictment shall be sufficient if it can be understood therefrom: First. That it is entitled in a court having authority to receive it, though the name of the court be not accurately set forth. Second. That it was found by a grand jury of the county in which the court was held. Third. That the defendant is named, or if his name cannot be discovered, that he be described by a fictititious name, with a statement that he has refused to disclose his real name. Fourth. That the offence was committed at some place within the jurisdiction of the court. Fifth. That the offence was committed at some time prior to the time of finding the indictment. Sixth. That the act or omission charged as the offence is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. Seventh. That the act or omission charged as the offence is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case.

SEC. 243. No indictment shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matters of form which shall not tend to the prejudice of the defendant.

SEC. 244. Neither presumption of law, nor matters of which judicial notice is taken, need be stated in the indictment.

SEC. 245. In pleading a judgment or other determination of, or proceeding before a court or officer of special jurisdiction, the facts conferring jurisdiction need not be stated, but it may be stated that the judgment or determination was duly made, or the proceeding duly had before such court or officer. The facts constituting the jurisdiction, however, must be established on the trial.

SEC. 246. In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to the statute by its title and the day of its passage, and the court shall, thereupon take judicial notice thereof.

SEC. 247. An indictment for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the indictment is founded, but it shall be sufficient to state generally

that the same was published concerning him, and the fact that it was so published must be established on the trial.

SEC. 248. When an instrument which is the subject of an indictment for forgery has been destroyed or withheld by the act or procurement of the defendant, and the fact of such destruction or withholding is alleged in the indictment, and established on the trial, the misdescription of the instrument shall be deemed immaterial.

SEC. 249. In an indictment for perjury, or subornation of perjury, it shall be sufficient to set forth the substance of the controversy, or matter in respect to which the offence was committed, and in what court, or before whom, the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer the same, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment need not set forth the pleadings, record, or proceedings with which the oath is connected, nor the commission, or the authority of the court or person before whom the perjury was committed.

SEC. 250. Upon an indictment against several defendants, any one or more may be convicted or acquitted.

SEC. 251. No distinction shall exist between an accessory before the fact and a principal, or between principals in the first and second degree, in cases of felony; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offence, or aid or abet in its commission, though not present, shall hereafter be indicted, tried, and punished as principals.

SEC. 252. An accessory after the fact to the commission of a felony, may be indicted and punished, though the principal felon may be neither tried nor indicted.

SEC. 253. A person may be indicted for having, with the knowledge of the commission of a public offence, taken money or property of another, or a gratuity, or a reward, or an engagement, or understanding, express or implied, to compound or conceal the offence, or to abstain from the prosecution therefor, or to withhold any evidence thereof, though the person guilty of the original offence have not been indicted or tried.

SEC. 254. When the indictment is filed, the defendant must be arraigned thereon before the court in which it is found, except in the cases mentioned in sections two hundred and seventy-five and two hundred and seventy-six.

SEC. 255. If the indictment be for a felony, the defendant must be personally present; but for a misdemeanor, his per-

sonal appearance is unnecessary, and he may appear upon the argument by counsel.

SEC. 256. When his personal appearance is necessary, if he be in custody, the court may direct the officer in whose custody he is, to bring him before it to be arraigned, and the officer shall do so accordingly.

SEC. 257. If the defendant have been discharged on bail, or have deposited money instead thereof, and do not appear to be arraigned when his personal attendance is necessary, the court, in addition to the forfeiture of the recognizance or of the money deposited, may direct the clerk to issue a bench warrant for his arrest.

SEC. 258. The clerk, on the application of the district attorney, may accordingly, at any time after the order, whether the court be sitting or not, issue a bench warrant into one or more counties.

SEC. 259. The bench warrant upon the indictment shall, if the offence be a felony, be substantially in the following form:

County of ———. The people of the United States, of the territory of Idaho, to any sheriff, constable, marshal, or policeman in this territory: An indictment having been found on the ——— day of ———, A. D. 18—, in the district court of the judicial district of the county of ———, charging C. D. with the crime of ——— (designating it generally); you are therefore commanded forthwith to arrest the above named C. D., and bring him before that court, to answer the indictment; or if the court have adjourned for the term, that you deliver him into the custody of the sheriff of the county of ———. Given under my hand, with the seal of the court affixed, this the ——— day of ———, A. D. 18—. [Seal.] By order of the court. E. F., clerk.

SEC. 260. The defendant, if the offence be punishable with death, when arrested under the warrant, shall be held in custody by the sheriff of the county in which the indictment is found.

SEC. 261. If the offence be not capital, the bench warrant shall be in similar form, adding to the body thereof a direction to the following effect: "Or if he require it, that you take him before any magistrate in that county, or in the district in which you arrested him, that he may give bail to answer to the indictment."

SEC. 262. If the offence charged be not capital, the court, upon directing the bench warrant to issue, shall fix the amount of bail, and an indorsement shall be made upon the bench warrant, signed by the clerk, to the following effect: "The

defendant is to be admitted to bail in the sum of ——— dollars."

SEC. 263. The bench warrant may be served in any county in the same manner as a warrant of arrest, except that when served in another county, it need not be endorsed by a magistrate of the county.

SEC. 264. If the defendant be brought before a magistrate of another county for the purpose of giving bail, the magistrate shall proceed in all respects thereto in the same manner as if the defendant had been brought before him upon a warrant of arrest, and the same proceedings may be had thereon as provided in sections one hundred and eleven and one hundred and fourteen, both inclusive.

SEC. 265. When the indictment is for felony, and the defendant, before the finding thereof, has given bail for his appearance to answer the charge, the court to which the indictment is presented may order the defendant to be committed to actual custody, unless he give bail in an increased amount, to be specified in the order.

SEC. 266. If such order be made, and the defendant be present, he shall be forthwith committed accordingly. If he be not present, a bench warrant shall be issued and proceeded upon in the manner provided for in this act.

SEC. 267. If the defendant appear for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the aid of counsel.

SEC. 268. The arraignment must be made by the court, or by the clerk or district attorney, under its direction, and consists in reading the indictment to the defendant and delivering to him a copy thereof and of the indorsements thereon, including the list of witnesses endorsed on it, and in asking him whether he pleads guilty or not guilty to the indictment.

SEC. 269. When the defendant is arraigned he shall be informed that if the name by which he is indicted be not his true name, he must then declare his true name or be proceeded against by the name in the indictment.

SEC. 270. If he give no other name, the court may proceed accordingly.

SEC. 271. If he alleges that another name is his true name, the court shall direct an entry thereof in the minutes of the arraignment, and the subsequent proceedings on the indictment may be had against him by that name, refering, also, to the name by which he is indicted.

SEC. 272. If, on the arraignment, the defendant require it, he shall be allowed until the next day, or such further time

may be allowed him as the court may deem reasonable, to answer the indictment.

Sec. 273. If the defendant do not require time as provided in the last section, or if he do, then, on the next day, or at such further day as the court may have allowed him, he may answer to the arraignment, and either move the court to set aside the indictment or may demur or plead thereto.

Sec. 274. The indictment shall be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases: First. When it is not found, endorsed, and presented as prescribed in this act. Second. When the names of the witnesses examined before the grand jury, or whose depositions may have been read before them, are not inserted at the foot of the indictment, or endorsed thereon. Third. When any person is permitted to be present during the session of the grand jury, while the charge embraced in the indictment is under consideration, except as provided in section two hundred and twelve.

Sec. 275. When the defendant has not been held to answer before the finding of the indictment, he may move to set it aside on any ground which would have been good ground for challenge, either to the panel or any individual grand juror.

Sec. 276. If the motion to set aside the indictment be not made, the defendant shall be precluded from afterwards taking the objections mentioned in the last two sections.

Sec. 277. The motion shall be heard when it is made, unless for good cause the court shall postpone the hearing to another time.

Sec. 278. If the motion be denied, the defendant must immediately answer the indictment, either by demurring or pleading thereto.

Sec. 279. If the motion be granted, the court shall order that the defendant, if in custody, be discharged therefrom; or, if admitted to bail, that his bail be exonerated; or, if he have deposited money instead of bail, that the same shall be refunded to him, unless it direct that the case be re-submitted to the same or another grand jury.

Sec. 280. If the court direct that the case be re-submitted, the defendant, if already in custody, shall so remain, unless he be admitted to bail; or, if already admitted to bail, or money have been deposited instead thereof, the bail or money shall be answerable for the appearance of the defendant to answer a new indictment.

Sec. 281. Unless a new indictment be found before the next grand jury of the district is discharged, the court shall,

on the discharge of such grand jury, make the order prescribed in section two hundred and seventy-nine.

SEC. 282. An order to set aside an indictment, as provided in this act, shall be no bar to a future prosecution for the same offence.

SEC. 283. The only pleading on the part of the defendant is either a demurrer or a plea.

SEC. 284. Both the demurrer and the plea must be put in, in open court, either at the time of the arraignment, or at such other time as may be allowed to the defendant for that purpose.

SEC. 285. The defendant may demur to the indictment when it shall appear upon the face thereof, either: First. That the grand jury by which it was found had no legal authority to inquire into the offence charged, by reason of its not being within the local jurisdiction of the court. Second. That it does not substantially conform to the requirements of sections two hundred and thirty-three and two hundred and thirty-four. Third. That more than one offence has been charged in the indictment. Fourth. That the facts stated do not constitute a public offence. Fifth. That the indictment contains any matter which, if true, would constitute a legal justification, or excuse of the offence charged, or other bar to the prosecution.

SEC. 286. The demurrer must be in writing, signed either by the defendant or his counsel, and filed. It must distinctly specify the grounds of objection to the indictment, or it shall be disregarded.

SEC. 287. Upon the demurrer being filed, the objections presented thereby shall be heard either immediately, or at such time as the court may appoint.

SEC. 288. Upon considering the demurrer, the court shall give judgment, either allowing or disallowing it, and an order to that effect shall be entered on the minutes.

SEC. 289. If the demurrer be allowed, the judgment shall be final upon the indictment demurred to, and shall be a bar to another prosecution of the same offence, unless the court, being of opinion that the objection on which the demurrer is allowed may be avoided in a new indictment, direct the case to be resubmitted to the same or another grand jury.

SEC. 290. If the court do not direct the case to be resubmitted, the defendant, if in custody, shall be discharged, or if admitted to bail, his bail shall be exonerated, or if he has deposited money instead of bail, the money shall be refunded to him.

SEC. 291. If the court direct that the case be resubmitted anew, the same proceedings must be had thereon as are pre-

scribed in sections two hundred and eighty and two hundred and eighty-one.

SEC. 292. If the demurrer be disallowed, the court shall permit the defendant, at his election, to plead, which he must do forthwith, or at such time as the court may allow. If he do not plead, the court shall direct the plea of not guilty to be entered for him.

SEC. 293. When the objections mentioned in section two hundred and eighty-five appear upon the face of the indictment, they can only be taken advantage of by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment, or that the facts stated do not contitute a public offence, may be taken at the trial, under the plea of not guilty, and in arrest of judgment.

SEC. 294. There are three kinds of pleas to an indictment. A plea of—First. Guilty. Second. Not guilty. Third. A former judgment of conviction or acquittal of the offence charged, which may be pleaded either with or without the plea of "not guilty."

SEC. 295. Every plea shall be oral, and shall be entered upon the minutes of the court.

SEC. 296. The plea shall be entered in substantially the following form: First. If the defendant plead guilty, "the defendant pleads that he is guilty of the offence charged in this indictment." Second. If he plead not guilty, "the defendant pleads that he is not guilty of the offence charged in the indictment." Third. If he plead a former acquittal or conviction, "the defendant pleads that he has already been convicted (or acquitted, as the case may be) of the offence charged in the indictment, by the judgment of the court of ———, (naming it) rendered at ———, (naming the place) on the ——— day of ———."

SEC. 297. A plea of guilty can in no case be put in, except by the defendant himself, in open court, unless upon an indictment against a corporation, in which case it may be put in by counsel.

SEC. 298. The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted.

SEC. 299. The plea of not guilty shall be deemed a denial of every material allegation in the indictment.

SEC. 300. All matters of fact, tending to establish a defence, may be given in evidence, under the plea of not guilty.

SEC. 301. If the defendant were formerly acquitted, on the ground of a variance between the indictment and the proof, or upon an objection to the form or substance of the indict-

ment, it shall not be deemed an acquittal of the same offence.

SEC. 302. When, however, he shall have been acquitted on the merits, he shall be deemed acquitted of the offence, notwithstanding any defect, in form or substance, in the indictment on which he was acquitted.

SEC. 303. When the defendant shall have been convicted or acquitted upon an indictment, the conviction or acquittal shall be a bar to another indictment for the offence charged in the former, or for an attempt to commit the same, or for an offence necessarily included therein, of which he might have been convicted under that indictment, as provided in section four hundred and eleven.

SEC. 304. If the defendant refuse to answer the indictment by demurrer or plea, a plea of not guilty shall be entered.

SEC. 305. A criminal action, prosecuted by indictment, may be removed from the court in which it is pending, on the application of the defendant, on the ground that a fair and impartial trial cannot be had in the county where the indictment is pending.

SEC. 306. The application must be made in open court, and in writing, verified by the affidavit of the defendant, and a copy of said affidavit must be served on the district attorney, at least one day before the application is made to the court.

SEC. 307. If the court be satisfied that the representation of the defendant is true, an order shall be made for the removal of the action to the district court of a county which is free from the like objection.

SEC. 308. The order of removal shall be entered on the minutes, and the clerk shall immediately make out and transmit a certified copy of the entry, with a certified copy of the record, pleadings, and proceedings in the action, including the recognizances for the appearance of the defendant, and of the witnesses, to the court to which the action is removed.

SEC. 309. If the defendant be in custody, the order shall direct his removal by the sheriff of the county where he is imprisoned, to the custody of the sheriff of the county to which the action is removed, and he shall be forthwith removed accordingly.

SEC. 310. The court to which the action is removed shall proceed to trial and judgment therein, as if the action had been commenced in such court. If it be necessary to have any of the original pleadings or other papers before such court, the court from which the action is removed shall, at any time, on application of the district attorney, or the de-

fendant, order such papers or pleadings to be transmitted by the clerk, a certified copy thereof being retained.

Sec. 311. An issue of fact arises—First. Upon a plea of not guilty; or Second. Upon a plea of a former conviction or acquittal of the same offence.

Sec. 312. An issue of fact must be tried by a jury of the county in which the indictment was found, unless the action be removed by order of the court into some other county.

Sec. 313. Trial juries for criminal actions shall be formed in the same manner as trial juries in civil actions.

Sec. 314. The clerk shall keep a docket of all the criminal actions pending in the court, in which he shall enter each indictment, according to the date of filing, specifying opposite the title of each action, whether it be for a felony or misdemeanor, and whether the defendant be in custody or on bail.

Sec. 315. The issues on the docket shall be disposed of in the following order, unless upon the application of either party, for good cause shown by affidavit, and upon two days' notice to the opposite party, with a copy of the affidavit in support of the application, the court shall direct an indictment to be tried out of its order—First. Indictments for felony when the defendant is in custody. Second. Indictments for misdemeanor when the defendant is in custody. Third. Indictments for felony when the defendant is on bail. and, Fourth, Indictments for misdemeanor when the defendant is on bail.

Sec. 316. After his plea, the defendant shall have at least two days to prepare for his trial if he require it.

Sec. 317. When an indictment is called for trial, the court may, upon sufficient cause shown by affidavit, direct the trial to be postponed to another day of the same term, or the next term.

Sec. 318. A challenge is an objection made to the trial jurors, and is of two kinds—First. To the panel. Second. To an individual juror.

Sec. 319. When several defendants are tried together, they are not allowed to sever their challenges, but must join therein.

Sec. 320. A panel is a list of jurors returned by a sheriff to serve at a particular court, or for the trial of a particular cause.

Sec. 321. A challenge to the panel is an objection made to all the jurors returned, and may be taken by either party.

Sec. 322. A challenge to the panel can only be found on a material departure from the forms described by statute in

respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn.

Sec. 323. A challenge to the panel must be taken before a juror is sworn, and must be in writing, specifying plainly and distinctly the facts constituting the grounds of challenge.

Sec. 324. If the sufficiency of the facts alleged as a ground of challenge be denied, the adverse party may except to the challenge. The exception need not be in writing, but shall be entered on the minutes of the court.

Sec. 325. Upon the exception, the court shall proceed to try the sufficiency of the challenge, assuming the facts alleged therein to be true.

Sec. 326. If, on the exception, the court deem the challenge sufficient, it may, if justice require it, permit the party excepting to withdraw his exception, and to deny the facts alleged in the challenge. If the exception be allowed, the court may, in like manner, permit an amendment of the challenge.

Sec. 327. If the challenge be denied, the denial may, in like manner, be oral, and shall be entered on the minutes of the court, and the court shall proceed to try the question of fact.

Sec. 328. Upon such trial, the officers, whether judicial or ministerial, whose irregularity is complained of, as well as any other persons, may be examined to prove or disprove the facts alleged as the grounds of challenge.

Sec. 329. When the panel is formed from persons whose names are not drawn from the grand jury box, a challenge may be made to the panel on account of any bias of the officer who summoned the jury, which would be good grounds of challenge to a juror. Such objection shall be made in the same form and determined in the same manner as when made to a juror.

Sec. 330. If, either upon an exception to the challenge or a denial of the fact, the challenge be allowed, the court shall discharge the jury, so far as the trial of the indictment in question is concerned. If it be disallowed, the court shall direct the jury to be empaneled.

Sec. 331. Before a juror is called, the defendant must be informed by the court, or under its direction, that if he intend to challenge any individual juror, he must do so when the juror appears, and before he is sworn.

Sec. 332. A challenge to an individual juror is either— First. Peremptory; or Second. For cause.

Sec. 333. It must be taken when the juror appears, and

before he is sworn, but the court may, for good cause, permit it to be taken after the juror is sworn, and before the jury is completed.

SEC. 334. A peremptory challenge may be taken by either party, and may be oral. It is not an objection to a juror, for which no reason need be given, but upon which the court shall exclude him,

SEC. 335. If the offence charged be punishable with death, or with imprisonment in the territorial prison for life, the defendant is entitled to twenty, and the territory to five, peremptory challenges. On a trial for any other offence, the defendant is entitled to ten, and the territory to three peremptory challenges.

SEC. 336. A challenge for cause may be taken by either party. It is an objection to a particular juror, and is either—First. General, that the juror is disqualified from serving in any case; or, Second. Particular, that he is disqualified from serving in the case on trial.

SEC. 337. General cases of challenges are—First. A conviction for felony. Second. A want of any of the qualifications prescribed by statute to render a person a competent juror. Third. Unsoundness of mind, or such defect in the faculties of the mind, or organs of the body as renders him incapable of performing the duties of a juror.

SEC. 338. Particular cases of challenge are of two kinds: First. For such a bias as, when the existance of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this act as implied bias. Second. For the existance of a state of mind on the part of the juror in reference to the case which, in the excercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality, and which is known in this act as actual bias.

SEC. 339. A challenge for implied bias may be taken for all or any of the following causes, and for no other: First. Consanguinity or affinity within the fourth degree to the person alleged to be injured by the offence charged, or on whose complaint the prosecution was instituted, or to the defendant. Second. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family of the defendant or of the person alleged to be injured by the offence charged, or on whose complaint the prosecution was instituted, or in his employment on wages. Third. Being a party adverse to the defendant in a civil action, or having complained against, or been accused by him in a criminal prosecution. Fourth.

Having served on the jury which found the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment. Fifth. Having served on a trial jury which has tried another person for the offence charged in the indictment. Sixth. Having been one of a jury formerly sworn to try the same indictment, and whose verdict was set aside, or which was discharged without a verdict, after the case was submitted to it. Seventh. Having served as a juror in a civil action brought against the defendant for the act charged as an offence. Eighth. Having formed or expressed an unqualified opinion or belief that the prisoner is guilty of the offence charged. Ninth. If the offence charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he shall neither be permitted nor compelled to serve as a juror.

Sec. 340. An exemption from service on a jury is not a cause of challenge, but the privilege of the person exempted.

Sec. 341. In a challenge for implied bias, one or more of the causes stated in section three hundred and thirty-nine must be alleged. In a challenge for actual bias, it must be alleged that the juror is biased against the party challenging. In either case the challenge may be oral, but must be entered on the minutes of the court.

Sec. 342. The adverse party may except to the challenge in the same manner as to a challenge to the panel, and the same proceedings shall be had thereon as prescribed in sections three hundred and twenty-four and three hundred and twenty-five, except that if the exception be allowed, the juror shall be excluded. He may orally deny the facts alleged as the ground of challenge.

Sec. 343. If the facts be denied, the challenge shall be tried as follows: First. If it be for implied bias, by the court. Second. If it be for actual bias, by triers.

Sec. 344. The triers shall be three impartial persons, not on the jury panel, appointed by the court. All challenges for actual bias shall be tried by three triers thus appointed, a majority of whom may decide.

Sec. 345. The triers shall be sworn generally to inquire whether or not the several persons who may be challenged, and in respect to whom the challenges shall be given to them in charge, are biased against the challenged party, and to decide the same truly, according to the evidence.

Sec. 346. Upon the trial of a challenge to an individual juror, the juror challenged may be examined as a witness to

prove or disprove the challenge, and shall be compelled to answer every question pertinent to the inquiry therein.

SEC. 347. Other witnesses may also be examined on either side, and the rules of evidence applicable to the trial of other issues shall govern the admission or exclusion of testimony, on the trial of the challenge.

SEC. 348. On the trial of a challenge for implied bias, the court shall determine the law and the facts, and shall either allow or disallow, the challenge and direct an entry accordingly on the minutes.

SEC. 349. On the trial of a challenge for actual bias, when the evidence is concluded, the court shall instruct the triers that it is their duty to find the challenge true, if, in their opinion, the evidence warrants the conclusion that the juror has such a bias against the party challenging him as to render him not impartial, and that if, from the evidence, they believe him free from such a bias, they must find the challenge not true. The court shall give them no other instructions.

SEC. 350. The triers must thereupon find the challenge either true or not true, and their decision is final. If they find it true, the juror shall be excluded.

SEC. 351. All challenges to an individual juror, except peremptory, must be first taken by the defendant and then by the people, and each party must exhaust all his challenges to each juror as he is called, before the other begins.

SEC. 352. The challenges of either party need not all be taken at once, but they must be taken separately in the following order, including in each challenge all the causes of challenge belonging to the same class: First. To the panel. Second. To an individual juror for a general disqualification. Third. To an individual juror for implied bias. Fourth. To an individual juror for actual bias.

SEC. 353. If all the challenges on both sides be disallowed, either party may still take a peremptory challenge, unless the peremptory challenges be exhausted.

## ҰI.—TRIAL.

SEC. 354. Trial, order of.
355. When prescribed may be departed from.
356. Counsel, number of, innocence presumed.
358. Reasonable doubt of guilt, degrees of.
359. When defendant may be tried separately.

320

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting.

The Court denies the petition for a rehearing without any comment. The supporting brief of the appellant's is more deserving. Courteously and politely written, it opens with the accurate observation that this case, one of first impression, has presented this Court with a unique opportunity to guide the bench and bar for years to come through the intricacies of the grand jury process, looking toward a properly balanced interposition of the judiciary between the prosecuting authorities and the citizenry. This the appellant pursues not just for the defendant Edmonson. It is therein said, and rightfully so, that this Court has eschewed the opportunity.

A strong point is made that if the Court continues in its ruling that the county prosecutors are blessed with unfettered charging discretion, then, at the least in this case Mr. Edmonson should be allowed a preliminary hearing. This is an entirely reasonable stance; common sense and common courtesy on the part of the Court should require close consideration before brushing the request aside. The opinion for the Court, as it presently stands tells the reader at p. 233, 743 P.2d at 462 that Edmonson's appeal is doomed because of his "failure to request a preliminary hearing ...," which is said to be "dispositive of this case." In the same paragraph the statement is made that a "substantive difference in the indictment and information procedures is the right to a preliminary hearing when an information is used." That is true, and it is well and good. It has been so forever. As appellant has pointed out in the supporting brief, the Court's opinion is stating that if an indicted defendant does not request a preliminary hearing, he has waived that right. But a defendant cannot waive a right unless he in the first place had that right.

Once again I may be remiss in my reading abilities, because I am unable to find in the code of criminal procedure or in the Court's own promulgated Idaho Criminal Rules any language which states that an indicted accused must request a preliminary in order to obtain one. Nor, is there any Idaho case-law so holding. And, entirely to the contrary, Criminal Rule 5 provides that when a defendant accused by complaint of a felony is taken before a magistrate for his initial appearance, along with other advice which he must be given, he shall be advised of "His right to a preliminary hearing ... the nature of a preliminary hearing, and the effect of a waiver thereof." Rule 5(f)(5). The defendant does not have to *request* a preliminary hearing. He will be given a preliminary hearing unless he elects to waive it. It is not a matter treated lightly by defense counsel, and by the magistrates who will ordinarily ascertain for certain if a defendant is making a knowing and intelligent waiver.

How, then, is it that the Court's opinion concedes that there is in an indicted defendant a right to a preliminary hearing, but he will receive it if only he thinks to make the request. How, in the name of common sense can such a person be held to a procedural requirement which has never found its way into a statute or into a court rule or by case precedent?

Judge Bengston in his considered decisions did make the observation that the defendants *Hawkins* and *Freeland* did request of the court an order granting a post-indictment preliminary hearing. Truly enough, such requests were made in those two cases. But, what those cases *do not hold* is that failure to make a request amounts to a waiver. Such a holding is yet to come from either of the Supreme Courts of those two states. What comes out of *Hawkins* and *Freeland* is simply that motions were made to obtain a right which was being asserted—the right of an indicted defendant to have a preliminary hearing, and thus be on an equal footing with defendants who are charged by a felony complaint. When the motion was made in *Freeland,* counsel had before them two earlier companion Oregon cases, *State v. Clark,* 291 Or. 231, 630 P.2d 810 (1981), and *State v. Hector Victor Edmonson,* 291 Or. 251, 630 P.2d 822 (1981). The indicted de-

fendant in *State v. Clark*, 291 Or. 231, 630 P.2d 810 (1981) did not move for an order granting him in a preliminary hearing, but moved for a dismissal based on the "failure to accord defendant a preliminary hearing after his indictment ..." 630 P.2d at p. 812—exactly like the situation before us. In that case there had been a denial of defendant's request for a preliminary hearing after indictment. 630 P.2d at 823. Both *Clark* and *Edmonson* were authored by Justice Linde who, with his colleagues, saw the same issue squarely before them in both cases, although an actual request for preliminary hearing was not made in *Clark*. Clark was the lead opinion of the two and fully discussed the issue. *Edmonson* merely applied *Clark*. The indicted defendants in both of those cases relied on *Hawkins*, of which counsel had gained knowledge.

Defendant's principal argument, however, was predicated on *Hawkins v. Superior Court*, 22 Cal.3d 584, 150 Cal. Rptr. 435, 586 P.2d 916 (1978), a decision based entirely on state rather than federal grounds. In any event, he could not have excluded issues of state law by pitching his attack on 14th amendment grounds. Cf. *State v. Spada*, 286 Or. 305, 594 P.2d 815 (1979). The case was argued together with *State v. Edmonson*, also decided today, which presented the same issue of equal rights, based in part on art. I, § 20, and there can be no claim that examination of that issue under the Oregon Constitution before the 14th amendment took respondent by surprise.

*Clark*, 630 P.2d at p. 812, f.n. 1.

The *Hawkins* decision held that indicted defendants must be afforded preliminary hearings equally with defendants charged by an information in order to meet the equality guarantee of California's constitution. Before turning to the *Hawkins* court's analysis, therefore, it is necessary to review the comparable Oregon guarantee.

Clark, 630 P.2d at p. 814.

The Oregon Supreme Court at length reviewed its prior case law which involved art. I, Sec. 20 of the Oregon Constitution,[1] and saw that the issue presented was within the scope of the Oregon constitutional provision, and agreed with the California court that:

> There is no question that the opportunity of a preliminary hearing is a "privilege" within the meaning of the constitutional guarantee, and potentially one of great practical importance. The grant or denial of this privilege is controlled by the state's choice, acting through the district attorney, to proceed by indictment or by information.

> \* \* \* \* \* \*

> In the present case, we agree with the California court in *Hawkins* that the opportunity of a preliminary hearing, with the procedural rights described above, offers important advantages over prosecution upon an indictment without a preliminary hearing.

But, the Oregon Court continued to adhere to an earlier opinion, *City of Klamath Falls v. Winters*, 289 Or. 757, 619 P.2d 217 (1980), which case was not at all in point on the issue presented in *Clark*, and in *Edmonson*, and in this case:

We do not follow the *Hawkins* court to the conclusion, however, that this difference between two available procedures necessarily represents a denial of equal protection of the laws, regardless of showing which defendants receive one or the other procedure. *Hawkins* reached this conclusion in "classification" terms, by defining as two classes those who are indicted and those who are charged by information. But we think this is an example of the "circular" use of the concept of "class" mentioned above. The distinction to be tested is the use or nonuse of preliminary hearings. The "classes" said to fail the test of equal protection are the "class" of those defendants who receive prelimi-

---

1. Article I, section 20 provides:
No law shall be passed granting to any citizen or class of citizens privileges, or immunities,

which, upon the same terms, shall not equally belong to all citizens.

nary hearings (because charged by information) and the "class" of those who do not (because indicted). But these defendants do not exist as categories or as classes with distinguishing characteristics before and apart from a prosecutor's decision how to charge one, or some, or all defendants. Aside from the manner in which the decision is made, *see City of Klamath Falls, supra,* 289 Or. at 784–785, 619 P.2d 217 (Lent, J., dissenting), defendants charged under either procedure are "classes" only as an effect of the dual procedural scheme itself. As in *City of Klamath Falls, supra,* "these defendants [i.e. those who do not receive a preliminary hearing] are not denied such a 'privilege' as individual persons, but only because the are members of a 'class' of persons who are prosecuted [by indictment] as distinct from persons prosecuted [on an information]." 289 Or. at 776, 619 P.2d 217.

 Each of the two procedures, however, is expressly authorized by the constitution itself. *Properly administered,* each satisfies the fourteenth amendment.... As stated above, the administration of laws and procedures provided in the constitution nonetheless must meet other constitutional standards, but the mere coexistence of the two procedures so as to limit preliminary hearings to one of them does not constitute forbidden class legislation. Without a showing that the administration of Or. Const. art. VII, § 5 and ORS 135.070–135.185 in fact denied defendant individually, or a class to which be [sic] belongs, the equal privilege of a preliminary hearing with other citizens of the state similarly situated, the circuit court did not err in denying the motion to dismiss the indictment.

\* \* \* \* \* \*

However, as with respect to his motion to dismiss the indictment for lack of a preliminary hearing, defendant has made no effort to show that the handling of his case violated those principles. Rather, he attacks the range of the prosecutor's discretion without previously stated standards as a denial of equal protection on its face. *We do not believe equal protection goes so far as to require previously stated standards as long as no discriminatory practice or illegitimate motive is shown and the use of discretion has a defensible explanation.*

\* \* \* \* \* \*

*The Court of Appeals found that there was such an explanation in this case.*

> The evidence showed that a number of persons were involved in the criminal activities for which defendant was indicted. Several of those individuals pleaded guilty to one or two charges and were granted immunity from further prosecution in exchange for their testimony against defendant before the grand jury and at his several trials. The prosecutor in charge of the cases testified that he treated defendant differently because the investigation showed that defendant was the instigator of many of the crimes and had demonstrated that he was a greater threat to society than the other individuals.

47 Or.App. [389] at 392, 615 P.2d 1043. We agree with the Court of Appeals that it was not error to reject the motion to dismiss the indictment.

*Clark,* 630 P.2d at pp. 817–819 (emphasis added).

Two words, "Properly administered," plus differently worded provisions of the California and Oregon constitutions, explain how the Oregon court could embrace much of what was written in *Hawkins,* and yet reach an opposite result.

The quality of being "properly administered" was found fatally missing two years later in *Freeland,* a graceful flip-flop from *Clark,* and bringing into Oregon criminal procedure the right of an indicted defendant to a preliminary hearing. Even dissenting Justice Jones opined that "the goal of the majority opinion is desirable." *Freeland,* 667 P.2d at p. 521.

The Supreme Court agreed with the trial court's holding that where the choice between prosecution by information—with

right of preliminary hearing—or by indictment:

is made primarily at the discretion of the prosecution [sic, prosecutor] who makes his decision upon 'logistical' and 'tactical' criteria, the choice of procedure is administered purely haphazardly or otherwise on terms that have no satisfactory explanation under art. I, Sec. 20....

and, "... defendant has been denied an equal privilege and equal protection ..." 667 P.2d at 519.

Whereas the trial court had dismissed the indictment for failure to accord the indicted defendant a preliminary hearing, the Supreme Court did not, as a generality, approve of the dismissal of the indictment as a remedy for not according a preliminary hearing:

There remains the question whether the court's order dismissing the indictment was a correct remedy for what the court found to be an unconstitutional denial of a preliminary hearing.

Defendant does not claim that there is any flaw in the indictment or that it was not found by proper grand jury procedure. What is challenged here on grounds of constitutionally unequal administration is not that the prosecution obtained an indictment but that it refused a preliminary hearing. The two steps are not intrinsically incompatible. *See,* Model Code of Pre-Arraignment Procedure, *supra* n. 3. What defendant requested, first in the district court and then in the circuit court, was a preliminary hearing. He moved for dismissal of the indictment only as an alternative in case the preliminary hearing was not provided. The circuit court first signed an order on September 28, 1981 "that the state must schedule and hold a preliminary hearing within thirty (30) days of this date or the indictment will be dismissed." Upon a further motion of the defendant stating that by October 28, 1981, no preliminary hearing had been held, the court ordered the indictment dismissed.

There was considerable discussion of this procedure between the prosecutor and the circuit court. As the indictment itself was not challenged, *the correct procedure,* rather than dismissing the indictment, *would have been to stay further proceedings under it until the state proceeded with a preliminary hearing or the defendant waived such a hearing.* Dismissal then would be governed by the standards of ORS 135.747 and 135.750. In the circuit court, the prosecutor expressly stated at the beginning of the hearing that dismissal would be proper if the court agreed with defendant's position and the state decided not to proceed with a preliminary hearing. The court followed the suggestion of the parties, and the question was not pursued on appeal. It therefore is not before us for decision.

667 P.2d at p. 520. (Emphasis added).

Unlike *Freeland,* where the Supreme Court noted that there were no claims of error or impropriety in the proceedings leading to the indictment, the record here is replete with such. This, of course, was well displayed in my earlier opinion, and the claims defended against in the majority opinion by agreeing that there were violations of statutory provisions, and other improprieties—but nothing to get excited about.

That ground was well-plowed, and won't now be disked. It is only fitting to mention the dismay caused to able counsel who, notwithstanding, nicely tell it like it is:

"Prosecutor Hamlett has been casually censured by Judge Bengtson and by this Court for his improprieties before the Grand Jury, yet heads have simply turned away. This Court has thus far missed an opportunity to provide a stable framework for the Idaho grand jury system, which, although in its infancy, has now become very attractive as a *prosecutor's vehicle.*

"The third circuit case of *United States v. Serubo,* 604 F.2d 807, speaks to prosecutor abuses by finding:

'We recognize that dismissal of an indictment may impose important costs upon the prosecution and the public. At a minimum, the government will be re-

quired to present its evidence to a grand jury unaffected by bias or prejudice. But the costs of continued unchecked prosecutorial misconduct are also substantial. This is particularly so before the grand jury, where the prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants as well. For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened. *We suspect that dismissal of an indictment may be virtually the only effective way to encourage compliance with these ethical standards, and to protect defendants from abuse of the grand jury process'*. (Emphasis mine)

*United States v. Serubo*
604 F.2d 807, at 817

"The prosecutor abuses involved in this case are varied, numerous and pervasive throughout each issue presented on appeal.

"Mr. Hamlett utilized a magnitude of hearsay before the grand jury, the same including newspaper articles, letters, unsworn statements taken by State investigators, transcribed testimony from earlier hearings (Magistrate's Inquiry), and his own arguments.

"Federal Courts, having previously and ineffectively admonished prosecutors, are taking notice and pursuing corrective measures which are presently available to this Court. The Court in *United States v. Estepa*, 471 F.2d 1132, held:

'The many opinions in which we have affirmed convictions despite the Government's needless reliance on hearsay before the grand jury show how loathe we have been to open up a new road for attacking convictions on grounds unrelated to the merits. We have been willing to allow ample, many doubtless think too ample, latitude in the needless use of hearsay, subject to only two provisos—that the prosecutor does not deceive grand jurors as to "the shoddy merchandise they are getting so they can seek something better if they wish." '

*United States v. Estepa*,
471 F.2d at 1137.

"*Estepa* continued:

'Here the Assistant United States Attorney, whether wittingly or unwittingly—we prefer to think the latter, clearly violated the first of these provisos. We cannot, with proper respect for the discharge of our duties, content ourselves with yet another admonition; a reversal with instructions to dismiss the indictment may help to translate the assurances of the United States Attorneys into consistent performance by their assistants.'

*United States v. Estepa*,
Supra at 1137

"In summarizing *Estepa*, supra, the Court, in *United States v. Gallo*, 394 F.Supp. 310, stated:

'Disturbed at the apparent disregard of its warnings to prosecutors in this Circuit concerning the widespread use of hearsay evidence before grand juries, the Court of Appeals felt compelled in *Estepa* to reverse the judgments of conviction because in the proper exercise of its judicial duties, it could not content itself with "yet another admonition". *United States v. Estepa*, supra at 1137.'

*United States v. Gallo*,
394 F.Supp. at 309–310 [315]

"This Court recognized that much hearsay was presented to the 'Edmonson' Grand Jury, yet has apparently chosen to ignore, and thus allow the Prosecutor to ignore, the clear dictates of ICR 6(f) and Idaho Code 19–1105. It is a concern to this writer that prosecutors have been 'turned loose' to pursue their own ends. This

Court is perpetuating such eventuality by recognizing the problem and simply giving Mr. Hamlett and others similarly situated a slight tap on the wrist. Footnote 1 on Page 236, 743 P.2d page 465 of this Court's majority opinion in this case states: 'Despite the rule we announce today, prosecutors should endeavor to preclude any hearsay evidence from grand jury proceedings.' Such an admonition seems hollow following this Court's tacit approval of the material Mr. Hamlett presented to the Latah County Grand Jury.

"In addition to hearsay, Mr. Hamlett presented the Grand Jury with his instructions, his arguments, his recollection and view of the evidence, his opinion on how many of them should always be present, and his view on witnesses credibility. The majority opinion agrees with Edmonson that some of Mr. Hamlett's statements are impermissible. Notwithstanding this Court's statement that: '... he (Mr. Hamlett) overstepped the bounds of permissible conduct', the Court ratified such impermissible conduct by concluding such conduct did not act to prejudice the Grand Jury in any way or infringe upon their independent thought process. It is difficult to grasp the continuity of such thought; the Court tells Hamlett to keep his hand out of the cookie jar as it hands him a cookie.

"The question of unauthorized persons being present before the Grand Jury also ties itself to Mr. Hamlett's conduct. As noted in this Court's opinion in the case at bar, 'the purpose of Idaho Code § 19–1111 and I.C.R. 6(d), is quite clear. It is designed to guard the secrecy of the Grand Jury proceedings and to assure that the jurors are free from undue influence and intimidation thereby allowing them to make an independent determination of probable cause'. 1987 Opinion #59, p. 16. By analogy, the case of *United States v. Pignatiello*, 582 F.Supp. 251 provides a good discussion on a Rule 6(d) violation for which the Court dismissed an indictment. In *Pignatiello*, an SEC attorney attended a grand jury proceeding as a special assistant to the United States Attorney. Although Federal statutes were involved, the similar circumstances to the case at bar are obvious. The Court found that because the

government SEC lawyer was not properly sworn in as a government Attorney General Assistant, her presence was violative of (ICR) Rule 6(d), and warranted application of a per se rule mandating indictment dismissal.

"Notwithstanding ICR 6(d) and Idaho Code § 19–1111, Mr. Hamlett brought Mr. Brian Donesley, a Department of Law Enforcement Attorney, before the Grand Jury to testify and/or advise and/or argue the applicability of Idaho RICO statutes.

"Either as indicating additional prosecutor misconduct or as simply violative of ICR 6(d) and Idaho Code § 19–1111, Mr. Donesley's presence further removed the Grand Jury from its intended purpose of an independent, unprejudiced body. See also, *United States v. Hogan*, 712 F.2d 757.

"The *Hogan* case, supra, provides an excellent discussion on balancing the actions of a prosecutor before a Grand Jury and the rights of an accused. The *Hogan* Court stated:

'Interposing a grand jury between the individual and the government serves the intended purpose of limiting indictments for higher crimes to those offenses charged by a group of one's fellow citizens acting independently of the prosecution and the court. See *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). In this independent position, a grand jury performs two distinct roles. It serves as an accuser sworn to investigate and present for trial persons suspected of wrongdoing. At the same time—and equally important—it functions as a shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution'.

*United States v. Hogan*, 712 F.2d 757

"In conclusion, it is submitted that by allowing and tacitly approving the actions of Prosecutor Hamlett this Court threatens to remove the independent status of Grand Juries in Idaho and effectively destroy their intended purpose as shields of individ-

uals like Mr. Edmonson and similar persons with the misfortune of facing a prosecutor and his/her 'personal indictment panel'.

"By reconsidering the majority opinion and holding prosecutors to constitutionally mandated standards, values and actions, this Court can present Idaho with a Grand Jury system which is well conceived, well guided and capable of providing justice which preserves and protects the rights of individuals and the citizenry."

In conclusion, it is urged upon those members of this court who might be inclined to brush this petition aside, that as a Court we have accomplished nothing by the disposition of this appeal which is contained in our opinion for the Court. What substance is there in it which will serve to guide the trial bench? Little that I can find. There is a discussion of the Oregon cases of *Clark, Edmonson,* and *Freeland,* followed by a conclusion that Oregon's Supreme Court has ruled that that state's equal protection clause requires a prosecutor to treat similarly situated defendants equally. The discussion is immediately rendered meaningless by the majority's *ipse dixit* that *we refuse to adopt the reasoning of the Oregon Supreme Court.*

There follows an equally vapid discussion as to equal rights in general, which concludes that in Idaho we do have "two alternative charging procedures," either of which can be used, but "subject to an equal protection analysis." (p. 234, 743 P.2d p. 463). The opinion mentions Edmonson's challenge to being subjected to a secret grand jury proceeding resulting in an indictment, whereas other co-defendants were charged by information (probably following felony criminal complaint filed in a magistrate court), and Edmonson's systematic exclusion from the right to a preliminary hearing. (p. 234, 743 P.2d p. 463). Then the majority jumps to the *Lem Woon v. Oregon* case, a 1913 case from the High Court in Washington, D.C. The holding of that case, as set forth in the majority opinion (p. 234, 743 P.2d p. 463) is less than meaningless. It is a nothing. We are involved with a state of Idaho criminal prosecution, state of Idaho criminal procedure,

and the right to a preliminary hearing under Idaho law. As I stated at the outset, where the majority decrees that Edmonson has waived his right to a preliminary hearing—which it declares dispositive—impliedly the majority has recognized such a right—a first in Idaho, except for Judge Bengston actually being first in time.

Probably the most outstanding statement by the majority is that "any advantage that a preliminary hearing affords a defendant is *purely incidental* to that purpose." (p. 234, 743 P.2d p. 463). If you can bring me two hundred lawyers who will accept that premise, I will show you two hundred lawyers who are entirely unversed in the criminal practice. That statement in the majority opinion shows that those in the majority have either not read the Oregon cases of *Clark* and *Freeland,* or the California *Hawkins* case, or perhaps see the opinions of those courts as being ill-advised, incompetent, and of no persuasion. *Clark,* quoted *supra,* at 233–234, 743 P.2d at 462–463.

In concluding its Part I, the Court demonstrates that, while acknowledging that the prosecutor elected to differentiate between the charging procedures against Edmonson as against the other defendants, he has produced insufficient "evidence of a deliberate and intentional plan to discriminate ..." (p. 235, 743 P.2d p. 464). Exactly what evidence the majority expects and wants is an unknown. In actuality it is a pure case of *res ipsa loquitur,* and the prosecutor should be made to assume and bear the burden of explaining away the facial differentiation in handling persons accused jointly of the same criminal conduct.

My May 29, 1987, opinion contained a paragraph which, on denial of petition for rehearing is needful of repeating. Four months have elapsed since I wrote that passage. The case against Ray Edmonson passed out of district court jurisdiction January 15, 1987, now almost nine months ago. Presumably the state of Idaho wants to take Roy Edmonson to trial, convict him, and jail him. And, perhaps he has been in jail all of this time.

In the paragraph above alluded to, this is what was written, short, and to the point:

As mentioned earlier, reason and practicality dictate that the district court be directed to allow the defendants the preliminary hearing which they seek. For the life of me I cannot understand the solicitor-general's objection. The preliminary hearing could have been held and over months ago, and the case pursued in district court.

Judge Bengston, from what he wrote, in all likelihood would have granted Edmonson a preliminary hearing had one been requested. Perhaps had he had the benefit of having it drawn specifically to his attention that in the *Clark* case there was no specific motion for a preliminary hearing, a preliminary hearing would have been given Edmonson, a trial would have shortly thereafter taken place, and this Court would not have concerned itself with an appeal which, insofar as it will guide the trial bench and bar, is a futile gesture.

Judge Bengston also favored us with a view that the legislature or the court should come up with a rule allowing an indicted felony defendant the right of a preliminary hearing, specifically.

This case served to provide the vehicle for doing so. Unfortunately as has been earlier noted, other than in the *Minich*[2] case, this Court has fallen into the notion that rule by case-law is outmoded. Instead committees have to be formed, chaired by an interested member of the Court, gathered together from all parts of Idaho into Boise, and thereafter the Court gives birth to another rule.

Particularly, though, as was mentioned back in May of this year, I cited another much earlier case-law rule which Justice Bakes used to an advantage in *Odenwalt v. Irving*, all of which is found in my May Opinion, p. 244, 743 P.2d p. 473.

Continuing to be the most perplexing problem is the majority's absolute abstention from observing the *Hawkins* case from California. Even now on rehearing it obdurately does not deign to discuss it and is equally oblivious to Judge Bengston's discussion of and near persuasion to it. The trial bench and bar will be at a loss to accept such as responsible appellate practice. Justice Bakes was undoubtedly sincere when he cited prior authority from Wisconsin as the backbone of his *Odenwalt* decision. But where is he now, when the same principles necessarily require that we adopt and/or utilize the California court's *Hawkins* decision?

As a final comment, since our May opinion was released, a grand jury was convened in Twin Falls County. It indicted a number of defendants after considerable hearings. Thereafter, District Judge Hurlbutt and District Judge Meehl dismissed the indictments because of irregularities in the process—probably not an inexpensive loss of time and money and judicial resources.

Where we are today, so far as is readily discernible, is no better educated in grand jury proceedings than we were a year go, or five years ago. Before the turn of the century it was otherwise.

As of now the Solicitor-General may know the distinction between an indictment and a presentment. But if he does, he learned from the May 1987 opinions, not including the majority. If grand jury proceedings are going to be the wave of the future (apparently the intention of the Twin Falls prosecutor) this Court in disposing of the *Edmonson* appeal has done little to be of any assistance, and nothing in the way of guidance.

---

2. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979).